1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)

2

dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)

3

msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310

4

Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

5

**LAW OFFICES OF GRECH & PACKER**

6

Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com

7

7095 Indiana Ave Ste 200
Riverside, CA 92506

8

Phone: (951) 682-9311

9

*Attorneys for Plaintiff* EDGAR SOLIS

10

11

### UNITED STATES DISTRICT COURT

12

### CENTRAL DISTRICT OF CALIFORNIA

13

14

EDGAR SOLIS,

        Plaintiff,

15

16

    v.

17

STATE OF CALIFORNIA; and
MICHAEL BELL,

18

19

        Defendants.

20

21

22

23

24

25

26

27

28

Case No.: 5:23−cv−00515−HDV−JPR

[*Honorable Hernán D. Vera*]
Magistrate Judge Jean P. Rosenbluth

**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* No. 2 TO EXCLUDE SPECULATIVE AND PREJUDICIAL INFORMATION**

[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]

**Hearing on Motions *in Limine***:
October 1, 2024 at 09:00 a.m.
**Final Pretrial Conference**:
October 8, 2024 at 10:00 a.m.
**Jury Trial**
October 29, 2024 at 09:00 a.m.
Ctrm: 10D

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiff EDGAR SOLIS hereby moves *in limine* for an order excluding any evidence, testimony, argument, or reference at trial to information unknown regarding speculative and prejudicial information, including the following:

1. <u>Any inference that Plaintiff shot at Defendant Bell</u>. This is an egregious abuse of attempting to utilize information unknown to create a post-incident theory to justify unreasonable force. Immediately after the incident and during his statement to investigators, Defendant Bell made no reference at all to Plaintiff pointing a gun at him let alone asserted Plaintiff "probably" fired a weapon at Bell. Defendants discovered post-incident that the subject gun was loaded and had an expended round therein, then for the first time at Bell's deposition stated that Plaintiff fired a weapon at Bell.

2. <u>Defense video expert</u>, Parris Ward's, opinion that "It is possible that he may have fired one of the shots heard in the synchronized videos"; Opinion No. 9; and information unknown related to subject gun

3. <u>Gang Task Force Information</u>, including the following:

   a) General tasks, mission, unrelated incidents, and unrelated subjects.

   b) Reference to the unit as "Gang Task Force."

   c) Kidnapping investigations/calls.

   d) Dealings with a lot of high-risk people.

   e) Dealing with "the bad of the bad guys."

   f) "[P]ursuing people to take a hostage."

4. <u>Unrelated use of force incidents where officers were shot</u>.

Plaintiff will suffers specific and extreme prejudice if this Motion *in Limine* is not granted because admission of the above information was not just unknown but

unknowable to Defendant Bell, pure speculation, or has such minimal probative value it substantially risks unfair prejudice, will confuse the jury, will present cumulative evidence, will unnecessarily consume time and mislead the jury in their task of determining whether the Defendant Bell is liable and the nature and extent of Plaintiff's damages in this matter; and importantly, includes impermissible character evidence. Plaintiff makes this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 404, 602, 701, 702.

Plaintiff bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiff's Motions *in Limine* Nos. 1-5 and Exhibits attached thereto, Plaintiff's [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on August 29, 2024 and September 5, 2024, during which Plaintiff understood a partial resolution was reached. Present at the conference were Dale K. Galipo (in the earlier) and Marcel F. Sincich for the Plaintiff and David Klehm for the Defendants. The conference took place over Zoom and telephonically. Defendants plan on presenting the information identified herein; Defendants do not agree to exclude the information identified; and Defendants will be opposing Plaintiff's motion. (Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶¶2, 3.)


Respectfully submitted,

Dated: September 10, 2024,          **LAW OFFICE OF DALE K. GALIPO**
                                    **LAW OFFICES OF GRECH & PACKER**

                                    By _____/s/_____ *Marcel F. Sincich*_____
                                        Dale K. Galipo
                                        Trenton C. Packer
                                        Marcel F. Sincich. *Attorneys for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a §1983 civil rights and state tort case arising from the use of excessive and unreasonable force against Plaintiff Edgar Solis by California Highway Patrol Officer Michael Bell. By this Motion *in Limine*, Plaintiff moves to exclude from testimony, exhibits, and argument at trial as to information that is obviously irrelevant to liability and damages, obviously unknown and irrelevant, because it is information that Bell was not confronted with; based on pure speculation, improper opinion, and information that is unfairly prejudicial; and testimony based on speculation or improper opinion. This is not a case where the officer was shot at and returned fire. Solis did not fire a gun at Bell during this incident. Argument during testimony that it is "possible" or "probable" that Solis fired a gun a Bell is unduly prejudicial, speculative, and lacks foundation where there is no video of Solis shooting at Bell; no audio of Solis shooting at Bell; no person saw Solis shooting at Bell (including Bell); no person heard Solis shooting at Bell (including Bell); there was no bullet found on scene that would match the subject revolver; Defendants have no evidence as to which direction the bullet was shot; thus, cannot even testify that a bullet was shot *at* Bell; and to the extent that they argue a bullet was shot generally, Defendants do not have gunshot residue results to even prove that Solis fired a weapon even within days of the incident. These facts are not in dispute.

First, Bell made no statement to any of the officers on scene that Solis shot at him. During the Public Safety Statement – where Bell was specifically charged with informing superiors of the direction of fire of all bullets shot so that officers could check to ensure that innocent civilians were not harmed or get them medical attention – Bell never stated to anyone that Solis shot at him, could have shot at him, or even possibly shot at him. In fact, Bell never even stated that Solis pointed a gun at him.

> Q.    Did you speak with any members of your team within that 30-minute time frame?

1   A.   Yes.
2   Q.   Who did you speak with?
    A.   All three of them.
3   Q.   What did Officer Bell tell you?
4   A.   I had inquired whether -- who my shooting guys were. Once I
         determined who they were, then I asked public safety statement
5        questions.
6   Q.   What public safety statement questions did you ask?
    A.   Number of rounds fired, direction, any suspects outstanding. I
7        believe I had a card that I read it from.
8   Q.   Do you recall any other questions?
    A.   Direction, rounds and I believe I asked if they were okay as well.
9   Q.   Did you learn that all of the officers were okay?
10  A.   Yes. (Sincich Decl ¶6, Exh. C, Paez Depo 32:17-33:11.)
    Q.   Is the purpose of that to ascertain whether or not any innocent
11       civilians could have been struck by that gunfire?
12  A.   Yes.
    Q.   Which direction -- well, when he was describing the direction
13       that he fired, did he also tell you where he was and where Mr.
14       Solis was during each volley?
    A.   I believe so.
15  Q.   Did Officer Bell ever tell you that Mr. Solis tried to shoot him?
16  A.   I don't recall him making that statement to me, no.
    Q.   Did Officer Bell ever tell you that Mr. Solis pointed a gun at
17       him?
18  A.   I don't recall obtaining that statement from him. (Exh. C, Paez
         Depo 36:19-37:10.)
19       During his interview with investigators from the Riverside County District
20  Attorney's office just six days from the incident – where Bell was specifically
21  required to provide a statement as to what occurred during the incident and describe
22  why he used deadly force – Bell never mentioned to anyone that Solis shot at his,
23  could have shot at him, or even possibly shot at him.
24       Thus, there was no investigation into whether Solis shot at Bell. It was not
25  necessary under the facts of the case because it did not happen. The only reason cited
26  in the investigation records as to why Bell initially used deadly force against Solis is
27  his (erroneous) description that Solis was "slouched down" "facing me, behind that
28  concealment fence. With a firearm in front of him that I can't - - I can't make - -

1    couldn't make out." (Exh. B, Bell Statement 27:2-6.) Bell could not even see the gun

2    by his own statement but believed Solis "was waiting for me." (*Id*. at 27:13.) No

3    mention of Solis ever shooting a gun at Bell or even pointing a weapon at Bell

4    whatsoever appears in any records produced by the defense. Hence, the CHP

5    investigation Summary of Incident accurately described the incident based on Bell's

6    statement, reporting "Because Solis was crouched down, appearing to be lying in wait

7    and armed with a firearm, … and, at 16:10:03 hours, fired several successive shots

8    from his primary duty weapon at Solis." (Exh. E, Summary of Incident at 3.)

9           Nevertheless, for the first time in the case, over two years after the incident,

10   Bell decided to testify that "It's probable" when asked if Solis ever shot at him. (Exh.

11   A, Bell Depo 80:11-81:2.) To be clear, the only evidence that Defendants will attempt

12   to use to merely infer that Solis shot at Bell is from post-incident investigation

13   documents that is clearly information unknown to Bell. (*See* Plaintiff's MIL No. 1.)

14   Specifically, Bell did not know that the gun was loaded, and Bell did not know that

15   there was an expended cartridge in the cylinder of the revolver. Thus, presumably

16   after discovering this information, Bell added to his defense with a speculative theory,

17   not grounded in any information known to him at the time, that Solis *might* have shot

18   at him. Defense counsel's own objections that the information calls for speculation

19   and lacks foundation are telling, yet Defendants refuse to agree to exclude it:

20        Q.    Prior to firing your first shot, did you hear any other shots being
                fired?
21        A.    No.
22        Q.    Is it fair to say that Mr. Solis never fired a weapon at you?
          MR. KLEHM:        Objection. Calls for speculation. Lacks foundation.
23        THE WITNESS:    No.
24        Q.    BY MR. SINCICH: Did you form the impression that Mr. Solis
                fired a weapon at you?
25        A.    It's simply probable in my opinion.
26        Q.    Okay. Did you ever see him pull the trigger of a gun?
27        A.    No.
          Q.    Did you ever hear the sound of a gunshot coming from his
28              direction?

PLAINTIFF'S MOTION *IN LIMINE* NO. 2 – TO EXCLUDE SPECULATIVE AND PREJUDICIAL INFORMATION

1   MR. KLEHM: Objection. Argumentative. Calls for speculation. Lacks
2        foundation.
   THE WITNESS: No.
3   Q.    BY MR. SINCICH: Did you hear or see the impact of a round
4        anywhere near your body?
   A.    No.
5   Q.    Were you injured at all during the incident?
6   A.    No. (Exh. A, Bell Depo 14:12-15:10.)
   Q.    BY MR. SINCICH: Did Mr. Solis ever shoot the gun at you?
7   MR. KLEHM:    It calls for speculation. Lacks foundation.
8   THE WITNESS:    It's probable. (Exh. A, Bell Depo 80:23-81:2.)
   Q.    Okay. And did he fire the weapon at you at that time?
9   A.    I didn't see him fire the weapon.
10  Q.    Did you hear him fire the weapon?
11  A.    I didn't hear my weapon or his weapon. (Exh. A, Bell Depo
     84:24-85:3.)

12       Likewise, Defense expert Parris Ward should be precluded from testifying as to

13  what may be possible without foundation. He opines, "It is *possible* that he *may* have

14  fired one of the shots heard in the synchronized videos. It is also *possible* that

15  additional shot sounds were not captured due to the limitations of the security camera

16  recordings." (Exh. H, Ward Report at 13, emphasis added.) Many things *may* be

17  *possible*. But it is not the standard that must be met for an expert to opine on a matter.

18  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993).

19       Finally, information about the Gang Task Force ("GTF"), even the name itself,

20  brings a substantial risk of unfair prejudice. Allowing Defendants to improperly color

21  the incident with testimony regarding how GTF members face the worst of the worst

22  criminals. The implied character of kidnappers, rapists, gang and cartel members, and

23  murderers will wrongfully be imparted on Solis – not even guilty by association, with

24  no evidence that Solis has ever been involved in any of these worst of the worst

25  crimes. Even the name "Gang Task Force" wrongfully implies that Solis is a member

26  of a dangerous gang needing an entire task force to apprehend and engage with. Yet,

27  Defendants cannot produce evidence that Solis was a member of a gang. Plaintiff

28  suggested a reasonable alternative – refer to them an "Interagency Team."

1    This evidence and speculative testimony, without foundation or factual support,

2  would bring extremely unfair prejudicial, produce improper opinions, and be an

3  attempt to introduce impermissible character evidence designed to taint the jury's

4  perspective of Plaintiff and deprive him of a fair trial. Thus, Plaintiff respectfully

5  requests the Court issue an order excluding the above reference information.

6  **II.    IRRELEVANT AND SPECULATIVE INFORMATION IS PROHIBITED**

7    "Evidence is relevant [only] if: (a) it has a tendency to make a fact more or less

8  probable than it would be without the evidence; and (b) the fact is of consequence in

9  determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible."

10  Fed. R. Evid. 402.

11    Whether Defendants were on part of a "Gang Task Force" is irrelevant to the

12  circumstances Bell was confronted with during this incident; whether the GTF was

13  first en route to a investigate a possible kidnapping, irrelevant; whether the GTF has

14  dealings with high-risk people, irrelevant; whether Bell has pursued unrelated people

15  who were intending on using a firearm against him, irrelevant; whether Bell has

16  pursued unrelated people who took a hostage, irrelevant. This information is clearly

17  inadmissible because it has no tendency to make a liability fact any more or less

18  probable, and none are a fact of consequence in determining this action.

19    Further, whether any inference or argument that Solis fired a shot is Bell is not

20  relevant to this matter. Bell admitted that Solis did not shoot at him prior to firing his

21  first shot. This is not a return fire case. Bell's initial excuse for shooting Solis was

22  because he was "lying in wait." Bell's modified excuse for shooting Solis was

23  because he pointed a gun. The facts of consequence for the jury to decide is if Solis

24  was ever "lying in wait" or if Solis ever pointed a gun at Bell, and even if so, whether

25  the use of deadly force was unreasonable. Solis did not fire a weapon at Bell or

26  anyone. Whether he fired a weapon is a distraction from the relevant inquiry.

27    Even Defendants' own police practices expert testified:

28    Q    For the purposes of your opinion, do you believe that Mr. Solis

| 1 | | attempted to shoot Officer Bell? |
|---|---|---|
| 2 | A | I do not know. |
| | Q | Does that matter to your analysis at all? |
| 3 | A | No. |
| 4 | Q | For the purposes of your opinions, do you believe, based on your review of the facts, that Mr. Solis pointed a gun at Officer Bell? |
| 5 | A | That's a question of fact that has to do with Officer Bell's |
| 6 | | credibility that the jury will have to decide if Officer Bell in various formats articulated threat in different ways. (Sincich Decl |
| 7 | | ¶14, Exh. K, Meyer Depo 60:23-61:9.) |

Pursuant to Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Instead of testifying as to personal knowledge of circumstances seen or heard on scene, Defendants will attempt to leap from fact to speculation. In other words, instead of limiting their own testimony to describing what Bell observed, Defendants insist on Bell and experts testifying as to what might have been possible even though no one heard or saw it occur, i.e., Solis shooting at Bell. Defendants cannot identify where Solis was when "possibly" shooting at Bell; where Bell was when Solis "possibly" shot at him; when Solis "possibly" shot at him; cannot describe which direction Solis fired the gun; and cannot describe what the bullet impacted or landed. Finally, The Supreme Court has made clear, in Justice Scalia's Opinion delivered for a unanimous Court, that an arresting officer's state of mind (except for the facts that he knows) is irrelevant. *See Whren v. United States*, 517 U. S. 806, 812-13 (1996) (reviewing cases). The evaluation should remain focused on whether the circumstances known, viewed objectively, justify the officer's conduct. *Id.* at 813.

Thus, Plaintiff requests GTF information and speculative testimony regarding whether Plaintiff ever shot a round at Defendant, be excluded from trial.

## III.    THIS EVIDENCE IS IMPERMISSIBLE CHARACTER EVIDENCE

Under Rule 404, any evidence of (a) unrelated kidnapping calls; (b) unrelated pursuits including those where persons took a hostage; (c) unrelated calls for service where persons were considered "the bad of the bad guys"; (d) the name "Gang Task

1  Force"; and (e) whether Plaintiff "possibly" fired a gun at some unknown location,

2  time, and direction, is irrelevant and inadmissible cannot be used to prove that Solis

3  did or would have acted in some general "bad character" either during the incident or

4  if the incident had not occurred. Rule 404(a)(1) specifically prohibits character

5  evidence, stating that "[e]vidence of a person's character or character trait is not

6  admissible to prove that on a particular occasion the person acted in accordance with

7  the character or trait." *See also Palmerin*, 794 F.2d at 1414 ("The federal rules bar the

8  use of any circumstantial evidence that requires an inference of a person's character to

9  make it relevant...."). Further, character evidence is normally not admissible in a civil

10  rights case. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in

11  issue," i.e., an essential element of a charge, claim, or defense, for character evidence

12  to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v.*

13  *Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002).

14      Thus, impermissible character evidence should be excluded.

15  **IV.   THIS INFORMATION UNKNOWN IS UNDULY PREJUDICIAL**

16      Even if information related to the GTF, whether it was possible that Solis fired

17  a weapon during the incident, and unrelated incidents where officers were shot have a

18  slight probative value (Plaintiff contends that they does not), its use substantially risks

19  unfair prejudice. Accordingly, this evidence should be excluded under Federal Rules

20  of Evidence 403, requiring exclusion "if its probative value is substantially

21  outweighed by the danger of the unfair prejudice, confusion of the issues, or

22  misleading the jury, or by considerations of undue delay, waste of time, or needless

23  presentation of cumulative evidence." "Unfair prejudice" means "undue tendency to

24  suggest decision on an improper basis, commonly, though not necessarily, an

25  emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez*

26  *v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is

27  likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

28  Plaintiff contends that inferences from other GTF missions and subjects, whether is

possible round was fired by Solis without foundation for factual support, and unrelated incidents where an officer was shot, will create several mini trials and will risk such an emotional response in the jury that it will deprive Plaintiff of a fair trial. Unrelated GTF incidents are not this incident, just as Solis shooting a gun is not part of this incident. Defendants specifically wish to exclude other shooting incident's Bell has been involved in, knowing that it is irrelevant and would harm his character, yet wish to use his past unrelated incidents to color Plaintiff's character in a bad light.

Further, any testimony that Solis *possibly* shot a gun during the incident is so speculative, lacks foundation, a product of irrational subjective fear, and comes with it an extreme danger of unfair prejudice and misleading the jury. Bell's attempt to prejudice the jury against Solis by statements of his subjective fears without any foundation is inadmissible. *See Deorle, v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) ("a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern.")

In fact, Plaintiff contends that it is impossible that a shot came from the subject gun during the incident based on the forensic evidence. The subject weapon was a Colt Detective Special, .38SPCL, revolver. (Sincich Dec; ¶9, Exh. F, Clark Report at 33.) The subject weapon was tested for DNA and fingerprints. (*Id.*) The results, "No latent prints were observed." (*Id.*) The swab from the handgun, "Does not meet minimum requirements to be entered and searched in the FAIRS database." (*Id.*) The swab of Solis: "DNA ID Result: Low. Does not meet minimum requirements to be entered and searched in the FAIRS database." (*Id.*) Plaintiff's police practices expert opines that this evidence suggests that Solis did not fire the gun during the incident and did not have the gun in his hand. (*Id.* at 33-34.)

Further, when a revolver is fired, the expended shell casing remains in the cylinder of the gun as opposed to being ejected from the gun in magazine-loaded pistols. On revolvers, there is a teardrop on the cylinder indicating the direction in which the cylinder turns when the hammer is cocked to the rear (which is necessary

for firing the weapon). The Colt Detective Special turns clockwise (from the perspective of the shooter) when the hammer is cocked to the rear. If this revolver is loaded and a shot is fired, the expended shell casing will remain in the top position in line with the barrel. If after a shot is fired the hammer is cocked, the cylinder will rotate, and the expended casing would be to the immediate right of the barrel. The Riverside Sheriff Armory inspected, conducted a function test on, and test fired the subject weapon. It was functional and working. (*Id.*) The subject weapon was recovered with one fired casing. (*Id.*) The revolver was photographed on scene after the shooting and secured in a police unit. Then an officer opened the cylinder to check if a round had been fired. (*Id.*) "Prior to opening the revolver, [the officer] marked the cylinder on both sides of the frame at the upper position that would note which round was located in the barrel position. Once the cylinder was opened, [the officer] noted the fired casing appeared at one position to the left the barrel. This cylinder rotates in a clockwise direction when fired." (*Id.*) If that the expended round was fired during the incident, that cartridge would have been in the position of the barrel or to the right. Instead, it was to the left – highly improbable, Plaintiff believes impossible from the forensic evidence.

Finally, Defendants have no expert to opine under any professional standard that Solis fired a weapon at Bell during the incident. Instead, Defendants' guesswork and speculative statements of fantastical possibilities should be excluded from trial. A lay witness may not provide an opinion based on speculation, hearsay, interpretation of unambiguous statements. *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015); Fed. R. Evid. 602, 701. An expert may not provide an opinion without specialized knowledge. *Id.* at 1155; Fed. R. Evid. 702; *Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1179, 1184 (D. Alaska 2022) (excluding "opinions [that] are impermissibly based on 'subjective belief or unsupported speculation.'").

The jury should not be misled to believe that Solis was a gang member who fired a shot at Bell. From Bell and his experts, the jury should only learn what Bell

saw and heard – the circumstances he was presented with – not to mislead the jury to render a verdict based on speculation. The jury should properly remain focused on Bell's conduct and the actual circumstances he was presented with. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1021 (9th Cir. 2014), cert. denied, 135 S. Ct. 1482 (2015) (the issue is the conduct of the police, evidence regarding what a witness at the scene of the incident thought was irrelevant and unfairly prejudicial, when the witness never disclosed the thought to the police). Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992). The central factual dispute in this case is whether Bell used excessive deadly force by shooting Solis including to the back. Refuting the inferences about gangs, kidnappings, hostages, and shootings—none from Plaintiff— will necessitate several mini trials on collateral issues that have nothing to do with the central factual dispute, depriving Plaintiff of a fair trial. *Blancha*, 972 F.2d at 516. Accordingly, Plaintiff respectfully requests that the Court also exclude evidence and testimony at trial pursuant to Rule 403.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order excluding any evidence, witness, or testimony at trial as to (A) <u>Speculative Statements as to Whether Plaintiff Fired a Weapon During the Incident</u>; (B) <u>Gang Task Force Information</u>; and (C) <u>Unrelated use of force incidents where officers were shot</u>.

Respectfully submitted,

Dated: September 10, 2024,    **LAW OFFICE OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By _____ */s/* ___ *Marcel F. Sincich* _____
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich, *Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff certify that this brief contains 3,553 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

Dated: September 10, 2024,    **LAW OFFICE OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By _____ */s/* _____ *Marcel F. Sincich* _____
       Dale K. Galipo
       Trenton C. Packer
       Marcel F. Sincich
       *Attorneys for Plaintiff* EDGAR SOLIS