# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR SOLIS,<br><br>        Plaintiff,<br><br>  vs.<br><br>STATE OF CALIFORNIA; and MICHAEL BELL,<br><br>        Defendants. | Case No.: 5:23−cv−00515−HDV−JPR<br><br>[*Honorable Hernán D. Vera*]<br>Magistrate Judge Jean P. Rosenbluth<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION *IN LIMINE* No. 4 TO EXCLUDE DEFENDANTS' TOXICOLOGY EXPERT MICHAEL RITTER, M.D.**<br><br>**Hearing on Motions *in Limine***:<br>October 1, 2024 at 09:00 a.m.<br>**Final Pretrial Conference**:<br>October 8, 2024 at 10:00 a.m.<br>**Jury Trial**<br>October 29, 2024 at 09:00 a.m.<br>Ctrm: 10D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Having reviewed Plaintiffs' Motion *in Limine* No. 4 to Exclude Opinions of Defendants' Toxicology Expert Michael Bell, M.D., and GOOD CAUSE appearing therein, Plaintiff's Motion is HEREBY GRANTED that it is excluded excluding the testimony of Defendants' retained toxicology expert Michael Bell, M.D. for the following reasons and pertaining to the following opinions:

1. <u>Failure to comply with Federal Rule of Civil Procedure 26</u>: Dr. Ritter failed to provide his fee schedule and failed to list all the documents he relied upon in forming his opinions as required with his Rule 26 Report.

2. <u>Dr. Ritter's Methodology is Unreliable, and his Opinions are Based on Speculation</u>:

    a. The only video Defendants provided to Dr. Ritter does not show Mr. Solis in the video despite video being available.

    b. Dr. Ritter had never been retained on an officer-involved shooting case before and had never been retained to opine on the effects of PCP or methamphetamine in a case involving law enforcement before.

    c. For medical purposes in the emergency room, Dr. Ritter stated that generally doctors only perform a qualitative measure of drugs like PCP and methamphetamine, making it medically irrelevant to Plaintiff's care and treatment. Thus, being positive for PCP and methamphetamine is irrelevant to the medical procedures performed on Mr. Solis.

    d. Dr. Ritter admits that drugs effect everyone differently.

    e. Dr. Ritter admits that a person can be in pain and ask for water while in the ER.

    f. Dr. Ritter admits that Mr. Solis was given Ketamine, which reduces pain and cannot rule out whether EMS gave Mr. Solis pain medication.

   g. Dr. Ritter admits that a person can be in pain in the ER and that pain not be annotated in the records.

   h. Of the 100,000 patents Dr. Ritter has evaluated, about 1% were under the influence of PCP.

  3. <u>Dr. Ritter's Opinions are Confusing, Misleading, Not Helpful to the Jury and Not Based on Sufficient Facts and Data.</u>

   a. Dr. Ritter was retained by the defense "to look at the medical records and" explain "if the effects of the drugs that were detected played any role in [Mr. Solis'] behavior and the number of shots required to immobilize him." Yet, Dr. Ritter does not know how many shots were required to immobilize Mr. Solis and does not even know how many times Mr. Solis was shot during the incident.

   b. Dr. Ritter only reviewed less than 2,700 pages of the over 8,800 total pages of medical records produced to Defendants.

   c. Dr. Ritter did not review the deposition of Mr. Solis.

   d. Dr. Ritter does not know the threshold of detection of PCP and methamphetamine that Biotox Laboratory uses.

   e. Dr. Ritter admits that he cannot determine the effects of PCP and methamphetamine on Mr. Solis based on quantitative level of PCP and methamphetamine in his plasma.

Therefore, the following opinions of Dr. Ritter shall be excluded:

1. "The results of the Bio Tox lab analysis would yield a lower level that what was in his[] system at the time of the shooting due to blood serum dilution…. The combined volume of this Resuscitation is approximately 60-70% of his blood total volume that was replaced. This means that the true value of the PCP and Amphetamine blood levels before his blood loss and replacement would be double

to triple those actually obtained from the post-resuscitation blood draw from the effects of dilution."

2.  "The reason that opioids are present in the urine sample collected at RUHS and not the Bio Tox sample is that the urine was not obtained until 2237 PM, and he had already been given intravenous opioid pain medication while at RUHS."

3.  PCP can have dissociative effects and Methamphetamine is a stimulant, "Thus, the PCP and methamphetamine in Mr Solis's system had an additive effect on inhibiting his pain perception."

4.  "Mr. Solis had an extremely high pain tolerance [as] a result of the drugs in his system, including PCP and methamphetamine."

5.  "Evidence of disassociated behavior… Rather than asking for pain medication, he was asking for a glass of water when he arrived at the trauma room."

The basis for this order is that the above referenced opinions are not helpful to the jury, have an unsupported basis without sufficient facts and data, unreliable methodology, and based on speculative theory, ipse dixit, and not facts relevant to this matter. Fed. R. Evid. 402, 403, 404, 702, 703; Fed. R. Civ. P. 26(a)(2).

**IT IS SO ORDERED.**

DATED:_____                    _____
                                                Honorable Hernán D. Vera
                                                United States District Judge