**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* EDGAR SOLIS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR SOLIS,<br><br>              Plaintiff,<br><br>      v.<br><br>STATE OF CALIFORNIA; and<br>MICHAEL BELL,<br><br>              Defendants. | Case No.: 5:23-cv-00515-HDV-JPR<br><br>[*Honorable Hernán D. Vera*]<br>Magistrate Judge Jean P. Rosenbluth<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Final Pretrial Conference:**<br>Date:    October 8, 2024<br>Time:    10:00 a.m.<br>**Trial:**<br>Date:    October 29, 2024<br>Time:    09:00 a.m.<br>Place:   Courtroom 10D |

# **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION: ........................................................................................ 1

II.     CONTENTIONS OF FACT: ....................................................................... 2

III.    PLAINTIFF'S CLAIMS: ........................................................................... 6

    A.      Elements and Legal Contentions ..................................................... 6

        1.      Claim 1: Excessive Force (42 U.S.C. §1983) ............................ 6

        2.      Claim 2: Battery by a Peace Officer (Deadly Force). ............... 10

        3.      Claim 3: Negligent Use of Deadly Force by a Peace Officer. .................................................................................... 11

        4.      Claim 4: Violation of the Bane Act (Cal. Civ. Code §52.1). ....................................................................................... 12

    B.      Plaintiff's Key Evidence to Support Their Claims ............................. 14

IV.     ANTICIPATED EVIDENTIARY ISSUES: .................................................. 14

V.      BIFURCATION OF ISSUES: ........................................................................ 15

VI.     THE TRIAL IS BY JURY: .............................................................................. 16

VII.    ATTORNEYS' FEES ....................................................................................... 16

VIII.   ABANDONMENT OF ISSUES: ..................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

4 *Bender v. Cnty. of Los Angeles*,
     217 Cal. App. 4th 968 (2013) ............................................................ 11

5 *Brown v. Ransweiler*,
     171 Cal.App.4th 516 (2009) .................................................................. 9

6

7 *Bryan v. McPherson*,
     630 F.3d 805 (9th Cir. 2010) ............................................................ 6, 7

8 *Cameron v. Craig*,
     713 F.3d 1012 (9th Cir. 2013) ............................................................ 11

9

10 *Chaudhry v. City of Los Angeles*,
     751 F.3d 1096 (9th Cir. 2014) ............................................................ 11

11 *City of Los Angeles, Cal. v. Chaudhry*,
     135 S. Ct. 295 (2014) ........................................................................... 11

12

13 *Cornell v. City and County of San Francisco*,
     17 Cal. App. 5th 766 (2017) ............................................................... 12

14 *George v. Morris*,
     736 F.3d 829 (9th Cir. 2013) ................................................................ 8

15

16 *Glenn v. Washington*,
     673 F.3d 864 (9th Cir. 2011) ................................................................ 8

17 *Graham v. Connor*,
     490 U.S. 386 (1989) .................................................................... 6, 7, 9

18

19 *Grundt v. City of Los Angeles*,
     2 Cal.3d 575 (1970) ............................................................................. 10

20 *Harris v. Roderick*,
     126 F.3d 1189 (9th Cir. 1997) ........................................................... 6, 8

21

22 *Hayes v. Cnty. of San Diego*,
     57 Cal. 4th 622 (Cal. 2013) ................................................................. 10

23 *Hayes v. County of San Diego*,
     736 F.3d 1223 (9th Cir. 2013) ............................................................... 8

24

25 *Headwaters v. County of Humboldt*,
     240 F.3d 1185 (9th Cir. 2000) ............................................................... 7

26 *John R. v. Oakland Unified School Dist.*,
     48 Cal. 3d 438 (1998) .......................................................................... 10

27

28 *Knapps v. City of Oakland*,
     647 F. Supp. 2d 1129 (N.D. Cal. 2009) .............................................. 11

*LaLonde v. County of Riverside,*
    204 F.3d 947 (9th Cir. 2000) ...................................................................8

*Mattos v. Agarano,*
    661 F.3d 433 (9th Cir. 2011) ...................................................................9

*Meredith v. Erath,*
    342 F.3d 1057 (9th Cir. 2003) .................................................................6

*Munoz v. City of Union City,*
    120 Cal. App. 4th 1077 (2004) ...............................................................9

*Munoz v. Olin,*
    24 Cal.3d 629 (1979) .............................................................................10

*N.E.M. v. City of Salinas,*
    761 F. App'x 698 (9th Cir. 2019) ...........................................................8

*Nelson v. City of Davis,*
    685 F.3d 867 (9th Cir. 2012) ...................................................................7

*Porter v. Osborn,*
    546 F.3d 1131 (9th Cir. 2008) .................................................................6

*Reese v. County of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018) ..........................................................11, 12

*S.B. v. Cnty. of San Diego,*
    864 F.3d 1010 (9th Cir. 2017) .................................................................8

*Santos v. Gates,*
    287 F.3d 846 (9th Cir. 2002) ...................................................................7

*Scott v. Harris,*
    550 U.S. 372 (2007) .................................................................................6

*Simmons v. Superior Court,*
    7 Cal. App. 5th 1113 (2017) ..................................................................11

*Smith v. City of Hemet,*
    394 F.3d 689 (9th Cir. 2005) ...................................................................7

*Tan Lam v. City of Los Banos,*
    976 F.3d 986 (9th Cir. 2020) ...................................................................8

*Tennessee v. Garner,*
    471 U.S. 1 (1985) .................................................................................6, 8

*Ting v. United States,*
    927 F.2d 1504 (9th Cir. 1991) .................................................................6

*United States v. Reese,*
    2 F.3d 870 (9th Cir. 1993) .....................................................................12

iv

*Vos v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018) .......................................................................... 8

*Yount v. City of Sacramento*,
    43 Cal. 4th 885 (2008) .................................................................................... 9

*Zion v. County of Orange*,
    874 F.3d 1072 (9th Cir. 2017) ......................................................................... 8

<u>Statutes</u>

42 U.S.C. §1983 ..................................................................................................... 1

42 U.S.C. §1988 ............................................................................................. 1, 14

Cal. Civ. Code §52(b) ......................................................................................... 14

Cal. Civ. Code §52.1 ........................................................................................... 11

Cal. Code Civ. Proc. §1021.5 ............................................................................ 14

Cal. Gov. Code §815.2(a) ................................................................................... 10

Cal. Gov. Code §820(a) ...................................................................................... 10

Cal. Pen. Code §835a............................................................................................ 7

Judicial Council of California Civil Jury Instruction No. 1305B............................ 10

Judicial Council of California Civil Jury Instruction No. 3066 ............................... 12

Judicial Council of California Civil Jury Instruction No. 441 ................................. 11

Local Rule 16-4 ..................................................................................................... 1

Ninth Circuit Manual of Model Civil Jury Instruction No. 9.25................................ 9

**TO THIS HONORABLE COURT, AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:**

Pursuant to Local Rule 16-4 and this Court's Scheduling and Case Management Order, Plaintiff hereby submits the following Memorandum of Contentions of Fact and Law.

This memorandum may be modified as necessary pursuant to this Court's pending rulings on the parties' various motions *in limine*.

## I.    INTRODUCTION:

This is a 42 U.S.C. §1983 civil rights and state tort case arising from the officer-involved shooting of Edgar Solis by State of California Highway Patrol ("CHP") Officer Michael Bell ("Bell") on March 2, 2022. Three officers aggressively approached Mr. Solis sitting in his car. Officer Bell reached into the car as Mr. Solis complied with commands and had his hands raised, while Deputy Waltermire struck the windshield of the car. Out of fear, Plaintiff slowly revered away from the assaulting officers, then ran away on foot. While running for his life, Officer Bell intentionally fired 8 rounds at Mr. Solis, knowing it could kill him, striking Mr. Solis several times, including to the back, followed by the contagious fire of Deputy Waltermire while Mr. Solis was on the ground with his visibly empty hands up. Officer Bell failed to de-escalate the situation and failed to attempt less-intrusive alternatives. Mr. Solis was not an imminent threat of death or serious bodily injury at to any person at all times during the incident. Plaintiff brings this action against Officer Bell for excessive and unreasonable force under 42 U.S.C. §1983, battery, negligence, and Cal. Civ. Code §52.1. Plaintiff contends that Defendants State is vicariously liable. Plaintiff seeks compensatory damages for his injuries, including punitive damages against Bell only, reasonable costs, attorney's fees under 42 U.S.C. §1988, and any other relief that this Court deems appropriate.

## II.    CONTENTIONS OF FACT:

This civil rights action arises out of the excessive and unreasonable use of deadly force against Edgar Solis, from which he miraculously survived but is left severely injured. On March 2, 2022, Hemet Police Department Sergeant Arthur Paez received a "Be on the Look Out" (BOLO) for Mr. Solis and his green 2005 Ford Mustang, stating that he was possibly armed with three felony warrants. Sergeant Paez entered the Mustang's license plate information into the Safety License Plate Reader Camera System. Shortly after entering the information, Sgt. Paez received notice that the Mustang was last seen traveling westbound on Menlo Ave. at North State St., in the City of Hemet. Sergeant Paez forwarded this information via text message to CHP Officer Bell, and Riverside County Sheriff's Department Detective Patrick Sobaszek and Deputy Salvador Waltermire.

At approximately 4:07 p.m., Detective Sobaszek was driving westbound on Menlo Ave. from State St., with Officer Bell seated in the right front passenger seat of a stealth patrol vehicle. As they passed North Taschner Dr., both Detective Sobaszek and Officer Bell observed a green Ford Mustang matching the description of the vehicle on the BOLO. The Mustang was stopped, facing north, on the west side of North Taschner Dr., south of Menlo Ave. Detective Sobaszek made a U-turn, and turned south onto North Taschner Dr. to further investigate. As Detective Sobaszek drove closer to the Mustang, he and Officer Bell recognized the driver as Mr. Solis, the suspect depicted on the BOLO. Detective Sobaszek stated that he activated the patrol vehicle's emergency lights and stopped facing the front of the Mustang.

Officer Bell quickly exited the patrol vehicle and drew his duty weapon. Officer Bell made his way to his right, toward the driver's side of the Mustang, keeping distance between himself and Mr. Solis while ordering him to show his hands. Detective Sobaszek exited the patrol vehicle and made his way to his left, near the passenger side of the Mustang. Detective Sobaszek drew his duty weapon and also began giving Mr. Solis commands. Mr. Solis did not reach for anything and was

1  not attempting to retrieve anything.

2      As Officer Bell and Detective Sobaszek were approaching the Mustang,

3  Deputy Waltermire arrived on scene and stopped behind and to the left of Detective

4  Sobaszek's patrol vehicle. Deputy Waltermire exited his patrol vehicle and

5  approached the Mustang on the passenger side, stopping near the "A" pillar. Officer

6  Bell also reached into the driver's side window of the Mustang and Deputy

7  Waltermire, who had already drawn his baton, struck the Mustang's windshield. Mr.

8  Solis shifted into reverse as a result of the attack. When Deputy Waltermire struck

9  the Mustang's windshield, the violent sound and splintering of the window caused

10  Mr. Solis to believe the Defendant Officers started to shoot at him. In fear for his life,

11  Mr. Solis slowly drove backwards away from the officers in order to preserve his life.

12  Deputy Waltermire did not start his BWC until after he struck the Mustang's

13  windshield. No officer was in danger when the car moved in reverse.

14      Mr. Solis drove in reverse, traveling south on North Taschner Dr. toward the

15  end of the cul-de-sac. After following the Mustang on foot for a short distance,

16  Officer Bell yelled for Detective Sobaszek and Deputy Waltermire to move their

17  respective patrol vehicles closer to provide cover. Mr. Solis stopped the Mustang

18  momentarily before moving forward and turning right into the driveway of 632 North

19  Taschner Dr. The Mustang continued east from the driveway until it stopped in the

20  backyard of the residence.

21      Officer Bell and Detective Sobaszek pursued the Mustang on foot while

22  Deputy Waltermire reentered his vehicle and dove around the block in pursuit. As

23  Officer Bell entered the backyard, he observed Mr. Solis running in an easterly

24  direction. Mr. Solis climbed over a block wall at the rear of 632 North Taschner Dr.

25  and entered the backyard of 643 North Hillmer Dr. Officer Bell pursued Mr. Solis

26  over the block wall.

27      During the foot pursuit, and at all times prior to any use of deadly force: Mr.

28  Solis never pointed the gun at Officer Bell or any other person; never fired any shots

3

at Officer Bell or any other person; never made a furtive movement with a gun indicating any willingness to use a gun; never attempted to punch, kick, grab, or harm in any way Officer Bell or any other person; never attempted to take a hostage, go into any window or door; never attempted to ambush or lie in wait for Officer Bell or any other person; never verbally threatened Officer Bell or any other person; Mr. Solis was never an imminent threat of death or serious bodily harm to any person and was never a threat of death or serious bodily harm to any person is not immediately apprehended. Further, at all times prior to any use of deadly force, there were reasonable alternative, less-intrusive, methods of apprehending Mr. Solis available to Officer Bell and his partner officers. However, no reasonable alternatives were attempted by Officer Bell and the reasonable alternatives were not exhausted.

Mr. Solis continued through the yard of the residence and onto North Hillmer Dr. Mr. Solis continued south on North Hillmer Dr. with Officer Bell in close pursuit and gaining ground. Mr. Solis entered the driveway of 614 North Hillmer Dr. and circled counterclockwise around the house. In the backyard, Mr. Solis was approximately at the south-east corner of the house of the residence and Officer Bell was at the south-west corner of the residence. Between them was a 5' fence eclosing pool equipment with privacy slats concealing Officer Bell's view of Mr. Solis. As Mr. Solis was moving away from Officer Bell, and while Officer Bell could only see Mr. Solis' silhouette through the privacy slates, Officer Bell opened fire with approximately four shots on the south side of the residence. There is evidence that shot(s) from this volley struck Mr. Solis based on the trajectory of the rounds fired, bullet strike marks and the location of impacts on Mr. Solis' body.

Immediately following Officer Bell's first volley of shots, Mr. Solis continued north around the residence in fear for his life. Officer Bell pursued Mr. Solis and stopped behind the cover of the residence on the south-east corner of the house. Again, as Mr. Solis was moving away from Officer Bell, Officer Bell opened fire with approximately four additional shots on the east side of the residence, just as

Detective Sobaszek arrived in support. Mr. Solis was struck including in the back, to the back of his thigh, and to the back of his lower leg. All shots to Mr. Solis's back consistent with being shot by Officer Bell.

After the second volley of shots fired by Officer Bell, Mr. Solis fell to the ground near steps leading to a door of the residence. Officer Bell could see back-up officers approaching from the front yard. Both Officer Bell and Detective Sobaszek had their firearms trained down the side of the house in Mr. Solis's direction and right at the closed gate to the front yard. Without any attempt to communicate, coordinate, or plan, Deputy Waltermire burst through the gate with such haste that he entered the yard from the north in a careless stride past Mr. Solis. The sight of two officer's weapons pointed right at Deputy Waltermire followed by their yelling and pointing at Mr. Solis, after just hearing Officer Bell discharge 8 rounds but without knowing why, caused Deputy Waltermire to panic. Deputy Waltermire turned away from Mr. Solis, flagging officers with his gun, and dove to the ground to face Mr. Solis. Without warning, and without any justification, Deputy Waltermire proceeded to unload his entire magazine on Mr. Solis, firing 11 times from within 10 feet of Solis. If not for Officer Bell's use of excessive force and tactical failures, Deputy Waltermire would not have opened fired on the unarmed and injured Mr. Solis.

Body worn camera recordings of the incident show Deputy Waltermire firing 11 times, indiscriminately at Mr. Solis. Deputy Waltermire admitted he did not give any commands or warnings before he opened fire on Mr. Solis and assessed after each shot. Yet, Mr. Solis was in a seated position with his hands up in submission prior to and when Deputy Waltermire used deadly force. Illuminating is the body-worn camera video of Sgt. Paez, who followed behind Deputy Waltermire towards the front gate. Unlike Deputy Waltermire, Sgt. Paez kept his composure, saw Mr. Solis with his hands up, and stopped at the entrance of the gate. Seargent Paez immediately instructed Deputy Waltermire, "I got him." With no situational awareness, after Sgt. Paez's instruction, Deputy Waltermire still opened fire. When

5

Deputy Waltermire opened fire, it put Sgt. Paez in danger as he was standing only a few feet from Mr. Solis. Backing away from the gunfire, Sgt. Paez was forced to yell at Deputy Waltermire, "I got it, stop, stop, stop!" until Deputy Waltermire finally stopped shooting.

In total, law enforcement personnel fired 19 times at Mr. Solis; Officer Bell fired a total of eight (8) rounds between the two shooting volleys, and Deputy Waltermire fired a total of eleven (11) rounds. Each of the officers' rounds fired either struck Mr. Solis or greatly risked gravely endangering innocent bystanders.

As a result of being shot several times during the incident, Mr. Solis suffered and continues to suffer great bodily injury, pain and mental and emotional suffering, disability, disfigurement, inconvenience, grief, anxiety, and humiliation.

## III.    PLAINTIFF'S CLAIMS:

### A.    Elements and Legal Contentions

1.    Claim 1: Excessive Force (42 U.S.C. §1983).

Plaintiff contends that Defendant Officer Bell used excessive force when he shot Mr. Solis including in the back while Mr. Solis was not an immediate threat of death or serious bodily injury to any person, and no reasonable alternatives were attempted despite it being reasonable to do so. Mr. Solis had not verbally threatened any officer or person and was not threatening to harm any person at the time he was shot. There was no reason to believe that if Mr. Solis was not immediately apprehended, he would cause death or serious bodily injury to any person. Defendant Officer Bell acted under the color of state law and within the course and scope of his employment during the incident. Further, Officer Bell was an integral participator and failed to intervene in the use of excessive and unreasonable force against Mr. Solis by Deputy Waltermire. Plaintiff contends that but for Officer Bell's use of excessive and unreasonable force, including his failure to use proper

tactics, communication, and alternatives, Deputy Waltermire engaged in contagious fire, for which Officer Bell is a substantial factor in causing.

The law governing the use of deadly force is well established. "[A] Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The reasonableness of any seizure is determined by "'careful[ly] balancing ... the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) ("Whether an otherwise valid search or seizure was carried out in an unreasonable manner is determined under an objective test, on the basis of the facts and circumstances confronting the officers"). As the Ninth Circuit stated in *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997):

> Certain principles are clearly established ... that implement the fundamental rules regarding the use of deadly force. Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officers or others, or is fleeing and his escape will result in serious threat of injury to persons.

*See also Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) (noting reasonableness test is "tempered by the special constitutional rules governing deadly force"); *Ting v. United States*, 927 F.2d 1504, 1513 (9th Cir. 1991) (noting that under *Garner* "an officer may not use deadly force unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others").

The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). "[A]ll force—lethal and non-lethal—must be justified by the need for the specific level of force employed."

7

*Id.* at 825. Even where some force is justified, the amount actually used may be excessive. *Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight" *Graham*, 490 U.S. at 396, (4) the availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), and (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). The "most important" factor is whether the plaintiff posed an immediate threat to the safety of the officers or others. *Bryan*, 630 F.3d at 826. Here, Mr. Solis was not an immediate threat of death or serious bodily injury to any person at the time of the shot.

Another factor that must be emphasized is the availability of alternative methods to effectuate an arrest or overcome resistance. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). In January 2020, recognizing "respect for human rights and dignity and for the sanctity of human life," the California Legislature restricted peace officer use of deadly force to only situations when it is "necessary in defense of human life." Cal. Pen. Code §835a. "[O]fficers shall evaluate each situation … and shall use other available resources that techniques if safe and feasible…." *Id*. The California Legislature essentially summarized the longstanding and existing state of the law. "[P]olice are 'required to consider what other tactics if any were available to effect the arrest.'" *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000). Here, Officer Bell failed to attempt any less-lethal alternatives, even though they were available, safe, and feasible to employ.

Because Defendant Officer Bell's conduct with respect to Mr. Solis constitutes deadly force, this conduct requires the highest justification, as follows:

The intrusiveness of a seizure by means of deadly force is unmatched.
The suspect's fundamental interest in his own life need not be elaborated
upon. The use of deadly force also frustrates the interest of the individual,
and of society, in judicial determination of guilt and punishment.

*Garner*, 471 U.S. at 9. "A desire to resolve quickly a potentially dangerous
situation" does not justify the use of force. *Deorle*, 272 F.3d at 1281.

Further, the Ninth Circuit recently affirmed the long-standing principle that
even if force was reasonable at one point, once the subject is no longer a threat,
additional force is unreasonable. *See generally Tan Lam v. City of Los Banos*, 976
F.3d 986, 1001 (9th Cir. 2020) (holding, a suspect's possession of a weapon at some
point does not provide officers carte blanche to use deadly force); *LaLonde v.
County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000); *Zion v. County of Orange*,
874 F.3d 1072, 1076 (9th Cir. 2017).

Additionally, the fact that a suspect has a deadly weapon does not render the
use of deadly force reasonable. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013);
*Glenn v. Washington*, 673 F.3d 864, 872-73 (9th Cir. 2011); *see also Harris v.
Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997) ("Law enforcement officials may not
kill suspects who do not pose an immediate threat to their safety or to the safety of
others simply because they are armed."). "An imminent harm is not merely a fear of
future harm, no matter how great the fear and no matter how great the likelihood of
the harm, but is one that, from appearances, must be instantly confronted and
addressed." Pen. Code. §835a(e)(2). The mere presence of a gun, even with a fleeing
subject with a felony history, does not render him an imminent threat nor a threat to
some other person if not immediately apprehended.

Finally, the law was clearly established at the time of the incident that the use
of deadly force under these circumstances violates the Constitutional rights of Mr.
Solis. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1033-34 (9th Cir. 2018);
*S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017); *Hayes v. County of*

9

*San Diego*, 736 F.3d 1223, 1227-28, 1233-35 (9th Cir. 2013); *Glenn v. Washington*, 673 F.3d 864, 872-73 (9th Cir. 2011); *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019).

Plaintiff seeks compensatory damages for the nature and extent of his injuries, disability, impairment, disfigurement, loss of enjoyment of life, physical and mental pain and suffering, inconvenience, grief, anxiety, and humiliation. Plaintiff seeks damages for future medical care, treatment, and services. Plaintiff seeks the future value of household help and services. Plaintiff seeks punitive damages, costs, and reasonable attorneys' fees under this claim.

Elements of Excessive Force:

1.    Defendant Bell used excessive force against Mr. Solis.

2.    The excessive force caused harm, injury, or damage to Mr. Solis.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2017 Edition, *Last Updated June 2024*), Nos. 9.3, 9.25 (*modified*); *Mattos v. Agarano*, 661 F.3d 433, 441-42 (9th Cir. 2011) (prioritizing the factors of *Graham v. Connor*, 490 U.S. 386 (1989)).

2.    Claim 2: Battery by a Peace Officer (Deadly Force).

Plaintiff contends that Defendant Bell, while acting in the course and scope of his employment as a State of California employee, used unreasonable force against Plaintiff when he shot Mr. Solis including in the back. At all times relevant, Mr. Solis was not an immediate threat of death or serious bodily injury to any officer or person, the use of deadly force was not necessary to defend human life, and there were reasonable less-intrusive alternatives available and reasonably safe and feasible to employ but where were not attempted. State law battery claims that police officers used excessive force in the course of an arrest, investigatory stop or other "seizure" of a free citizen, are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. *See Yount v. City of*

1   *Sacramento*, 43 Cal. 4th 885, 902 (2008); *Munoz v. City of Union City*, 120 Cal.

2   App. 4th 1077, 1102 n.6 (2004); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527

3   (2009); CACI 1305B (Battery by Peace Officer). Defendant Bell was acting in the

4   course and scope of his employment during this incident. "'[A]n employer's liability

5   extends to torts of an employee committed within the scope of his employment.'"

6   *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 447 (1998) (internal

7   citations omitted). The State is vicariously liable pursuant to Cal. Gov. Code

8   §§815.2(a); 820(a).

9        Plaintiff seeks compensatory damages and punitive damages under this claim

10  as described above. Where California and federal law conflict and where California

11  law is more prohibitive of recovery, federal law governs given the remedial

12  purposes of civil rights claims.

13       Elements for Battery by a Peace Officer (Deadly Force):

14  1.     Defendant Bell's use of deadly force was not necessary to defend

15         human life; and

16  2.     Defendant Bell's use of deadly force was a substantial factor in causing

17         Mr. Solis' harm, injury, or damages.

18  Source: CACI No. 1305B, (2024 Edition) (*modified*).

19

20       3.    Claim 3: Negligent Use of Deadly Force by a Peace Officer.

21       Plaintiff contends that Defendant Bell, while acting in the course and scope of

22  his employment as a State of California police officer, was negligent in his pre-

23  shooting tactics and in using deadly force. Under California negligence law, police

24  officers have a duty to act reasonably when using force. *See Hayes v. Cnty. of San*

25  *Diego*, 57 Cal. 4th 622, 635-8 (Cal. 2013); *Munoz v. Olin*, 24 Cal.3d 629, 634

26  (1979); *Grundt v. City of Los Angeles*, 2 Cal.3d 575, 587 (1970). Plaintiff's

27  negligence claim comprehends Defendant Bell's negligent pre-shooting tactics

28  including his failure to have an adequate tactical plan; failure to communicate with

Mr. Solis properly; failure to communicate with other officers properly; failure to de-escalate the situation; and failure to attempt less intrusive alternatives without unnecessarily escalating to deadly force.

The State is vicariously liable pursuant to Cal. Gov. Code §815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").

Plaintiff seeks compensatory damages under this claim.

Elements for Negligent Use of Deadly Force by a Peace Officer:

1.  Defendant Bell's use of deadly force was not necessary to defend human life; and

2.  Defendant Bell's use of deadly force was a substantial factor in causing Mr. Solis' harm, injury, or damages.

Source: CACI No. 441, (2024 Edition).

4.   Claim 4: Violation of the Bane Act (Cal. Civ. Code §52.1).

Plaintiff contends that Defendant Bell deprived Mr. Solis of his constitutional rights when he used excessive force. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) cert. denied sub nom; *City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013); *Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 977 (2013); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009). The State is vicariously liable pursuant to Cal. Gov. Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").

The California Court of Appeals has held that intentional conduct that is separate and independent from an arrest gives rise to a Bane Act claim. *Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125-27 (2017). The Ninth Circuit in *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) stated, "it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" 888 F.3d 1030 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993). Here, there are a number of facts that establish that Defendant Bell acted with reckless disregard for Mr. Solis' constitutional rights. Defendant Bell used deadly force against Mr. Solis while less-lethal force was safe and available to employ, and when Mr. Solis was moving away from officers with no other person around and was not an immediate threat of death or serious bodily injury to any person. Defendant Bell had time to deliberate, plan, analyze, and determine the appropriate level of force to use, if any, and intentionally decided to shoot Mr. Solis including to the back.

Plaintiff seeks compensatory damages, costs, and attorneys' fees under this claim, including treble damages or a multiplier.

Elements of Violation of the Bane Act:

1.    Defendant Bell used excessive force against Mr. Solis.

2.    Defendant Bell intended to violate Mr. Solis' right to be free from excessive force by acting with a reckless disregard for Mr. Solis' constitutional rights.

3.    Defendant Bell's use of excessive force was a substantial factor in causing Mr. Solis' harm, injury, or damages.

Source: CACI No. 3066 (2024 Edition) (*modified*); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018); *see also Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 798-99 (2017), as modified (Nov. 17, 2017).

**B.    Plaintiff's Key Evidence to Support His Claims**

1.    Testimony of Edgar Solis

2.    Testimony of Michael Bell

3.    Testimony of Salvador Waltermire

4.    Testimony of Patrick Sobaszek

5.    Testimony of Arthur Paez

6.    Testimony of Gary Adams, Plaintiff's investigator

7.    Testimony of Roger Clark, Plaintiff's police practices expert

8.    Testimony of Dr. Ryan O'Connor, Plaintiff's medical expert

9.    Testimony of physicians who evaluated and treated Plaintiff for his injuries related to this incident

10.    Videos of the Incident and screenshots of videos

11.    Scene Photographs

12.    Photographs of Involved Officers

13.    Relevant portions of Plaintiff's Medical Records

14.    Photographs of Plaintiff

**IV.    ANTICIPATED EVIDENTIARY ISSUES:**

Plaintiff's Motions *in Limine* for an order excluding any evidence, testimony, argument, or reference at trial to the following:

1.    Information Unknown to Defendant Officer Michael Bell.

a)    Substance Use History (unknown)

b)    Criminal History (unknown)

c)    Other Wrongs or "Bad Acts" character evidence

d)    After-Acquired Investigatory Reports and Information

e)    Speculative Statements of Plaintiff's Intent and Thoughts

2.    Speculative and Prejudicial Information.

a)    Any inference that Plaintiff shot at Defendant Bell

14

b)      Defense expert, Parris Ward's, opinion that "It is possible that he may have fired one of the shots heard in the synchronized videos"

c)      Gang Task Force Information

d)      Unrelated use of force incidents where officers were shot.

3.      <u>Speculative Beliefs and Unreasonable Subjective Fears</u>.

a)      Whether Plaintiff was fleeing from a felony that threatened death or serious bodily injury

b)      Whether some unknown bystander in some unknown location would potentially be threatened at some unknown time in the future

4.      <u>Defendants retained Toxicology expert Michael Ritter, M.D.</u> for failing to comply with Rule 26; and for providing opinions with an Unreliable Methodology, Speculative Opinions, Confusing and Misleading Opinions, Not Helpful to the Jury, and Not Based on Sufficient Facts and Data

5.      <u>Defendants' retained police practices expert Greg Meyer</u> for providing opinions with No and an Unreliable Methodology, Speculative Opinion, Opinion Inconsistent with the Law, and Opinions that are not Helpful and Not Based on Sufficient Facts and Data.

It is Plaintiff's position that any of this evidence is information unknown to the Defendant Bell is therefore inapplicable and irrelevant to the analysis, and nevertheless, unduly prejudicial, improper character evidence, and hearsay. Thus, they should be excluded from trial.

## V.    <u>BIFURCATION OF ISSUES</u>:

Other than bifurcating the amount of punitive damages, Plaintiff is not requesting any bifurcation and contends that liability and compensatory damages should be tried together.

/ / /

## VI.  <u>THE TRIAL IS BY JURY</u>:

The issues herein are triable to a jury as a matter of right. The parties made a timely demand for trial by jury.

## VII.  <u>ATTORNEYS' FEES</u>.

If Plaintiff prevails on a federal claim, reasonable attorney fees are recoverable pursuant to 42 U.S.C. §1988 and Cal. Code Civ. Proc. §1021.5. Under the provisions of Cal. Civ. Code §52(b), Defendants are also liable for reasonable attorney's fees and a civil penalty of $25,000 on Plaintiff's Bane Act claim.

## VIII.  <u>ABANDONMENT OF ISSUES</u>:

Plaintiff does not abandon any claims at this time.

Respectfully Submitted,

DATED:  September 10, 2024

**LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF GRECH & PACKER**

By: _____ */s/      Marcel F. Sincich* ___
Dale K. Galipo
Marcel F. Sincich
Trent C. Packer
*Attorney for Plaintiff*

16