ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
DAVID KLEHM, State Bar No. 165302
Deputy Attorney General
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 738-9733
  Fax: (619) 645-2581
  E-mail: David.Klehm@doj.ca.gov
*Attorneys for Defendants*
*California Highway Patrol and Officer Bell*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **EDGAR SOLIS,**<br><br>                          Plaintiff,<br><br>v.<br><br>**COUNTY OF RIVERSIDE; STATE OF CALIFORNIA; SALVADOR WALTERMIRE; and DOES 1-10, inclusive,**<br><br>                          Defendants. | 5:23-cv-00515-HDV-JPR<br><br>**MEMORANDUM OF CONTENTIONS OF FACT AND LAW BY DEFENDANTS CALIFORNIA HIGHWAY PATROL AND OFFICER BELL**<br><br>Judge:        The Honorable Hernan D. Vera<br>**Final Pretrial Conference:**<br>Date:    October 8, 2024<br>Time:    10:00 a.m.<br>**Trial:**<br>Date:    October 29, 2024<br>Time:    09:00 a.m.<br>Place:   Courtroom 10D<br><br>Action Filed:  February 2, 2023 |

# TABLE OF CONTENTS

**Page**

I.  PLAINTIFFS' CLAIMS ...................................................................................... 1
    A.   Legal Theories .............................................................................. 1
    B.   Elements of Plaintiffs' Claims ..................................................... 2
    C.   Defendants' Evidence in Opposition .......................................... 10

II.  DEFENDANTS' AFFIRMATIVE DEFENSES ................................................ 10
    A.   Legal Theories ............................................................................ 10
    B.   Elements of Affirmative Defenses ............................................. 11
    C.   Defendants' Evidence in Support of Affirmative Defenses .............. 13

III.  THIRD PARTIES ............................................................................................. 13

IV.  ANTICIPATED EVIDENTIARY ISSUES ..................................................... 13

V.  OTHER GERMANE ISSUES OF LAW ......................................................... 14

VI.  BIFURCATION OF ISSUES ........................................................................... 14

VII.  JURY TRIAL .................................................................................................... 15

VIII.  ATTORNEYS' FEES ....................................................................................... 15

IX.  ABANDONMENT OF ISSUES ....................................................................... 15

# TABLE OF AUTHORITIES

**Page**

CASES

*A.D. v. Cal. Highway Patrol*
712 F.3d 446 (9th Cir. 2013) ..................................................................... 5

*Anderson v. Creighton*
483 U.S. ................................................................................................... 14

*County of Sacramento v. Lewis*
523 U.S. 833 (1998) ................................................................................... 4

*Earley v. Pacific Elec. Ry. Co.*
176 Cal. 79 (1917) ..................................................................................... 7

*Gantt v. City of Los Angeles*
717 F.3d 702 (9th Cir. 2013) ..................................................................... 4

*Graham v. Connor*
490 U.S. 386 (1989) ............................................................................ 2, 3, 6

*Hayes v. County of San Diego*
57 Cal. 4th 622 ...................................................................................... 8, 9

*Hernandez v. City of Pomona*
46 Cal. 4th. 501 (2009) .............................................................................. 6

*Johnson v. Breeden*
280 F.3d 1308 (11th Cir. 2002) ............................................................... 14

*Justus v. Atchison*
19 Cal.3d 564 (1977) ................................................................................. 7

*Lampkins v. Thompson*
337 F.3d 1009 (8th Cir. 2003) ................................................................. 14

*Nehad v. Browder*
929 F.3d 1125 (9th Cir. 2019) ............................................................... 3, 4

*Orn v. City of Tacoma*
949 F.3d 1167 (9th Cir. 2020) ................................................................... 4

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

4

*Ortiz v. Jordan*
    562 U.S. 180 (2011) ....................................................... 11

5

6

*Porter v. Osborn*
    546 F.3d 1131 (9th Cir. 2008) ....................................... 4

7

8

*Reese v. Cty. of Sacramento*
    888 F.3d 1030 (9th Cir. 2018) ....................................... 9

9

10

*S.B. v. Cty. of San Diego*
    864 F.3d 1010 (9th Cir. 2017) ....................................... 4

11

*Sandoval v. Cty. of Sonoma*
    912 F.3d 509 (9th Cir. 2018) ......................................... 9

12

13

*Saucier v. Katz*
    533 U.S. 194 (2001) ..................................................... 14

14

15

*Scott v. Harris*
    550 U.S. 372 (2007) ....................................................... 3

16

17

*Stephenson v. Doe*
    332 F.3d 68 (2d Cir. 2003) ........................................... 14

18

19

*Tatum v. City & Cty. of San Francisco*
    441 F.3d 1090 (9th Cir. 2006) ....................................... 2

20

21

*Tennessee v. Garner*
    471 U.S. 1 (1985) ...................................................... 3, 4

22

*Tuuamalemalo v. Greene*
    946 F.3d 471 (9th Cir. 2019) ......................................... 4

23

24

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010) ......................................... 4

25

STATUTES

26

42 U.S.C.
    § 1983 ............................................................... 1, 2, 10

27

28

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Civil Code
§ 52.1 ........................................................................................................ 1

California Civil Procedure Code
§ 377.22 .................................................................................................... 7
§ 377.32 .................................................................................................... 6
§ 377.60 .................................................................................................... 7

California Government Code
§ 815.2(b) ............................................................................................ 11, 12
§ 820.2 ................................................................................................. 10, 11
§ 820.4 ................................................................................................. 10, 11
§ 845.8(b)(3) ........................................................................................ 10, 12

California Penal Code
§ 196(b) ................................................................................................ 11, 12
§ 835 ..................................................................................................... 10, 12

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ........................................................................................ *passim*

Fourteenth Amendment ................................................................................ 1, 4

iv

1    Defendants State of California and California Highway Patrol Officer

2   Detective Michael Bell submit the following Memorandum of Contentions of Fact

3   and Law, pursuant to L.R. 16-4.

4   **I.    PLAINTIFF'S CLAIMS and FACTUAL SUMMARY**

5    The First Amended Complaint (FAC) is the operative pleading. Plaintiff,

6   Edgar Solis is pursuing Federal and State law claims relating to the reasonableness

7   of Officer Bell's use of force against plaintiff on March 2, 2022, under different

8   legal theories with additional elements and differing potential recoveries.

9    On March 2, 2022, law enforcement officers on the Riverside County

10   Regional Gang Task Force (Task Force) were searching for Plaintiff Edgar

11   Alejandro Solis and his 2005 green Ford Mustang pursuant to a "Be on the Look

12   Out" (BOLO) notice. Solis was wanted on three active felony warrants for

13   carjacking, robbery and drug charges. Additionally, CHP Officer Bell was advised

14   that Solis may be armed and dangerous.  Reliable information from the vehicle

15   monitoring system placed Solis and his vehicle in the City of Hemet.

16    When the uniformed members of the Task Force located Solis in his

17   parked vehicle on North Taschner Driver, they placed their unmarked Ford

18   Explorer with emergency blue and red lights activated in front of and facing Solis'

19   vehicle approximately 10 feet away and then attempted a felony approach to Solis'

20   vehicle while giving commands for Solis to show his hands. Instead, Solis put his

21   vehicle in reverse and fled until being trapped at the end of a cul-de-sac. He then

22   accelerated his vehicle forward at high-speed, crashing into a parked vehicle in a

23   nearby driveway and getting his vehicle stuck in a homeowner's backyard.

24    Solis then exited the vehicle and fled on foot through a residential

25   neighborhood, pursued by members of the Task Force. During the foot pursuit,

26   Solis was openly carrying a handgun and presented a life-threatening risk to

27   officers and nearby residents in the neighborhood. Solis ignored Officer Bell's

28

1    multiple shouted commands heard by neighbors inside their homes and also
2    captured on doorbell surveillance video cameras to, "Drop the gun or I'll shoot!"

3    During the foot pursuit, Solis partially crouched down behind a chain link
4    fence in what CHP Officer Bell described as an "ambush position". Solis pointed
5    his loaded  gun towards CHP Officer Bell immediately before Bell discharged his
6    weapon for the first volley of 4 shots and then fired a second similar volley of shots
7    further along the fence in the same residential backyard after Solis continued
8    engaging Officer Bell by turning his body while still holding the gun towards
9    Officer Bell.

10    Former co-defendant, Riverside County Sheriff Deputy Waltermire then fired
11    11 rounds from his service weapon towards Solis from a very short distance of
12    approximately 10 feet. Solis was wounded in his arms, legs buttocks and back, but
13    no vital organs were hit.

14

15    **A.    Legal Theories**
16    Claim 1: Plaintiff, Edgar Solis, claims pursuant to 42 U.S.C. § 1983 that
17    Officer Bell's use of force against plaintiff violated his Fourth Amendment rights.
18    (1st Cause of Action in the FAC);

19    Claim 2: Plaintiff claims that Officer Bell's use of force constituted a battery
20    under state law. (5th Cause of Action in the FAC);

21    Claim 3: Plaintiff claims that Officer Bell was negligent under state law.
22    (6th Cause of Action in the FAC);

23    Claim 4: Plaintiff claims Officer Bell violated plaintiff's rights pursuant to
24    the Bane Act (Cal. Civ. Code § 52.1). (7th Cause of Action in the FAC.)

25    **B.    Elements of Plaintiffs' Claims**
26    **Claim 1**: The elements of a section 1983 excessive force claim arising under
27    the Fourth Amendment are:

28    1. Officer Bell acted under color of state law;

1    2. Officer Bell intentionally seized decedent's person;

2    3. The use of force was objectively unreasonable under all of the

3    circumstances;

4    4. The use of force caused decedent harm; and

5    5. The defendant's conduct was an actual cause of the claimed injury.

6    *See* Ninth Circuit Model Civil Jury Instrs. 9.3, 9.20, 9.25; *Graham v. Connor,* 490

7    U.S. 386, 395 (1989).

8    In determining whether the officer used excessive force, all of the

9    circumstances known to the officer on the scene must be considered, including:

10    (1) the nature of the crime or other circumstances known to the officer at the

11    time force was applied;

12    (2) whether the decedent posed an immediate threat to the safety of the officers

13    or to others;

14    (3) whether the decedent was actively resisting arrest or attempting to evade

15    arrest by flight;

16    (4) the amount of time the officer had to determine the type and amount of

17    force that reasonably appeared necessary, and any changing circumstances

18    during that period;

19    (5) the type and amount of force used;

20    (6) the availability of alternative methods to take the decedent into custody;

21    (7) the number of lives at risk (motorists, pedestrians, police officers) and the

22    parties' relative culpability; i.e., which party created the dangerous situation,

23    and which party is more innocent; and

24    (8) whether it was practical for the officer to give warning of the imminent use

25    of force, and whether such warning was given.

26    (9) whether a reasonable officer would have or should have accurately

27    perceived a mistaken fact; and

28    (10) whether there was probable cause for a reasonable officer to believe that

1  the suspect had committed a crime involving the infliction or threatened

2  infliction of serious physical harm.

3  Ninth Circuit Model Civil Jury Inst. 9.25.

4  In general, all claims of excessive force, whether deadly or not, should be

5  analyzed under the objective reasonableness standard of the Fourth Amendment as

6  applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490

7  U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v.*

8  *Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

9  In assessing reasonableness, the fact-finder should give "careful attention to

10 the facts and circumstances of each particular case, including the severity of the

11 crime at issue, whether the suspect poses an immediate threat to the safety of the

12 officers or others, and whether he is actively resisting arrest or attempting to evade

13 arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular

14 use of force must be judged from the perspective of a reasonable officer on the

15 scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In

16 addition, "[t]he calculus of reasonableness must embody allowance for the fact that

17 police officers are often forced to make split-second judgments-in circumstances

18 that are tense, uncertain, and rapidly evolving-about the amount of force that is

19 necessary in a particular situation." *Id*. at 396-97.

20 The Ninth Circuit has repeatedly emphasized that the most important factor is

21 "whether the suspect posed an immediate threat to the safety of the officers or

22 others." *See, e.g.*, *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017)

23 (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir.

24 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-

25 established that where a suspect threatens an officer with a weapon or where the

26 officer has probable cause to believe that the suspect poses a threat of death or

27 serious physical harm to the officer or others, the officer is justified in using deadly

28

force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres,* 610 F.3d 546, 546 (9th Cir. 2010).

**Claim 2**: The elements of a claim for battery claim by a peace officer are: A peace officer may use deadly force only when necessary in defense of human life. Plaintiff claims that Officer Bell unnecessarily used deadly force on Edgar Solis. To establish this claim, plaintiffs must prove all of the following:

1. That Officer Bell intentionally touched Edgar Solis;

[or caused Edgar Solis to be touched];

2. That Officer Bell used unreasonable force on Edgar Solis;

3. That Edgar Solis did not consent to the use of that force;

4. That Edgar Solis was harmed; and

5. That Officer Bell's use of unreasonable force was a

substantial factor in causing Edgar Solis's harm

Officer Bell's use of force is reasonable only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Bell at the time, that the force was reasonable.

A person being arrested/detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"In deciding whether Officer Bell used unreasonable force, you

must consider the totality of the circumstances and determine what amount of

force a reasonable Officer on the Regional Gang Task Force in Officer Bell's

position would have used under the same or similar circumstances."

"Totality of the circumstances" means all facts known to the officer at the time, including the conduct of Officer Bell and Edgar Solis leading up to the use of force. You should consider, among other factors, the following:

(a) Whether Edgar Solis reasonably appeared to pose an immediate threat to the safety of [name of defendant] or others;

(b) The seriousness of the crime at issue; and

5

1    (c) Whether Edgar Solis was actively resisting arrest

2    or attempting to evade arrest.

3        "Totality of the circumstances" also includes all facts known to the peace

4    officer at the time, including the conduct of Officer Bell and Edgar Solis leading up

5    to the use of force. In determining whether Officer Bell's use of force was

6    necessary, you must consider Officer Bell's tactical conduct and decisions before

7    using force on Edgar Solis and whether Officer Bell used other available resources

8    and techniques as an alternative to force, if it was reasonably safe and feasible to do

9    so.

10       A peace officer who makes or attempts to make an arrest does not have to

11   retreat or stop because the person being arrested is resisting or threatening to resist.

12   Tactical repositioning or other de-escalation tactics are not retreat. A peace officer

13   does not lose the right to self-defense by use of objectively reasonable force to

14   effect the arrest or to prevent escape or to overcome resistance. A peace officer

15   does, however, have a duty to use reasonable tactical repositioning or other de-

16   escalation tactics.

17   CACI 1305A.

18       The same *Graham* factors apply to the reasonableness of the use of force as

19   under a Fourth Amendment claim. *Hernandez v. City of Pomona*, 46 Cal. 4th. 501,

20   514 (2009). As with Fourth Amendment claims, a claim for battery is a personal

21   right that may not be vicariously asserted. See, Cal. Civ. Proc. Code § 377.32.

22       **Claim 3:**  The elements of a negligence claim against a peace officer for use of

23   deadly force are:

24       "1. Officer Bell was negligent;

25       2. Officer Bell used deadly force on Edgar Solis;

26       3. Officer Bell's use of deadly force was not necessary to defend human life;

27       4. Edgar Solis was harmed; and

28

5. Officer Bell's use of force was a substantial factor in causing Edgar Solis's harm."

Officer Bell's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Bell at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Bell.

"A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force."

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Officer Bell and Edgar Solis leading up to the use of deadly force. In determining whether Officer Bell's use of deadly force was necessary in defense of human life, you must consider Officer Bell's tactical conduct and decisions before using deadly force on Edgar Solis and whether Officer Bell used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer

does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

CACI 441.

Plaintiffs contend that defendants are liable for negligence based on alleged tactical mistakes prior to the shooting. Under California law negligence liability "can arise if the tactical conduct and decisions leading up to the use of deadly force [by law enforcement] show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 626 (2013). The California, Supreme Court has held that:

> [Where the pre-shooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, the reasonableness of the officers' pre-shooting conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable.

*Hayes*, 57 Cal. 4th at 632.

**Claim 4**: The elements of plaintiffs' Bane Act claim are:

1. Officer Bell acted violently against Edgar Solis to prevent him from exercising his right to be free from unreasonable seizure;

2. Edgar Solis was unreasonably seized under the Fourth Amendment, i.e., the use of force was objectively unreasonable under all of the circumstances;

3. Edgar Solis was harmed;

4. Officer Bell's conduct was a substantial factor in causing plaintiff's harm. *See* CACI 3066.

Officer Bell must have intentionally "acted to prevent" Edgar Solis from exercising some right. CACI 3066. To prove a Bane Act claim based on excessive force, a plaintiff must prove not only a constitutional violation, but also "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City*

8

*and County of San Francisco*, 17 Cal.App.4th 766, 801-802 (2017)); *see also*, *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519-520 (9th Cir. 2018). A mere intention to use force that a jury may ultimately find unreasonable is insufficient. *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). Rather, a plaintiff must prove that the defendant "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'".

### C.   Defendants' Evidence in Opposition

The key relevant evidence in opposition to plaintiffs' claims will be:

1.   The prior statements and testimony of Officer Bell evidencing his observation of plaintiff "hunkering" down behind a fence in an ambush position facing Officer Bell with the gun in front of him pointed at Officer Bell2.

Testimony by eyewitnesses who heard Officer Bell yell, "Drop the gun or I'll shoot!" before any gunshots were fired.

3.   Evidence gathered of the incident, including but not limited to, photographs, witness statements, dispatch recordings and logs, videos, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence including multiple residential doorbell surveillance videos which recorded Officer Bell running in pursuit of plaintiff while yelling, "Drop the gun or I'll shoot!" and plaintiff's .38 caliber revolver with one spent shell casing in the cylinder

4.   Decedent's prior criminal records Proving his intent to evade arrest because of his prior prison incarceration and awareness that he would be charged with additional felonies for the drugs and drug paraphernalia in his green Mustang and the loaded revolver in his hand during the pursuit.

5.   Expert testimony by Greg Meyer regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

6.    Expert testimony by Michael Ritter, M.D. regarding the effects of methamphetamine and phencyclidine (PCP) in causing plaintiff's injuries, including all the underlying evidence he relied on in reaching his conclusions.

7.    Expert testimony by Parris Ward regarding the forensic analysis of audio and video evidence of Officer Bell's pursuit of plaintiff and the number of shots fired, including all the underlying evidence he relied on in reaching his conclusions.

## II.   DEFENDANTS' AFFIRMATIVE DEFENSES

### A.   Legal Theories

Defendants have several key affirmative defenses:

Affirmative Defense 1: Qualified immunity against the Section 1983 claims.

Affirmative Defense 2: Self-defense and defense of others against the state law negligence and battery claims.

Affirmative Defense 3: Comparative fault of decedent.

Affirmative Defense 4: Immunity under California Government Code § 820.2. (Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.)

Affirmative Defense 5: Immunity under California Government Code § 820.4. (A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law)

Affirmative Defense 6: Immunity under California Penal Code §§ 835, 835a.

Affirmative Defense 7: Immunity under California Government Code § 845.8(b)(3). (Neither a public entity nor a public employee is liable for:

b: an injury caused by (3) a person resisting arrest.)

**Affirmative Defense 8**: Immunity under California Penal Code § 196(b).

**Affirmative Defense 9**: Immunity under California Government Code § 815.2(b)

**B.    Elements of Affirmative Defenses**

**Affirmative Defense 1**: Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment).

**Affirmative Defense 2**: The elements of self-defense are:

1. Officer Bell reasonably believed decedent was going to harm him; and

2. Officer Bell only used the amount of force necessary to protect himself. CACI 1304 - Self-Defense/Defense of Others.

**Affirmative Defense 3**: The elements of comparative fault are:

1. Edgar Solis was negligent; and

2. Edgar Solis's negligence was a substantial factor in causing his death or plaintiffs' harm. CACI 406, Comparative Fault.

**Affirmative Defense 4**: Immunity under California Government Code § 820.2. The elements for this affirmative defense are:

1.    Officer Bell exercised discretion in using force on Edgar Solis;

2.    The discretion was vested in Officer Bell pursuant to his duties as a peace officer.

**Affirmative Defense 5**: Immunity under California Government Code § 820.4. The elements for this affirmative defense are:

1.    Officer Bell was exercising due care;

2.    Officer Bell was enforcing the law.

**Affirmative Defense 6**: Immunity under California Penal Code §§ 835, 835a. The elements for this affirmative defense are:

11

1. Officer Bell had reasonable cause to believe Edgar Solis committed a public offense;

2. The force used was reasonable to overcome Edgar Solis's resistance and in protection of the life and safety of Officer Bell;

3. Edgar Solis was subject to restraint reasonable to overcome his resistance and in protection of the life and safety of Officer Bell.

Affirmative Defense 7: Immunity under California Government Code § 845.8(b)(3). The element for this affirmative defense is:

Decedent was resisting arrest at the time he was injured.

Affirmative Defense 8: Immunity under California Penal Code § 196(b). The elements for this affirmative defense are:

Officer Bell is not liable for injuries to Edgar Solis so long as:

1. Officer Bell had reasonable cause to believe Edgar Solis committed a public offense;

2. The force used was reasonable to overcome Edgar Solis's resistance and in protection for the life and safety of Officer Bell and the public; and

3. Edgar Solis was subject to restraint reasonable to overcome his resistance and in protection of the life and safety of Officer Bell and the public.

Affirmative Defense 9: Immunity under California Government Code § 815.2(b). Defendant State of California is not "liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

**C.    Defendants' Evidence in Support of Affirmative Defenses**

Defendants' evidence in support of their affirmative defenses include:

1. The prior statements and testimony of Officer Bellevidencing his observation of plaintiff "hunkering" down behind a fence in an ambush position facing Officer Bell with the gun in front of him pointed at Officer Bell

2.    Testimony by eyewitnesses who heard Officer Bell yell, "Drop the gun or I'll shoot!" before any gunshots were fired.

3.    Evidence gathered of the incident, including but not limited to, bullet casings, bullet holes in the fence and nearby structures, photographs, witness statements, statements, dispatch recordings and logs, videos, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence.

5.    Expert testimony by Greg Meyer regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

6.    Expert testimony by Michael Ritter, M.D. regarding the effects of methamphetamine and phencyclidine (PCP) in causing plaintiff's injuries, including all the underlying evidence he relied on in reaching his conclusions.

7.    Expert testimony by Parris Ward regarding the forensic analysis of video evidence, including all the underlying evidence he relied on in reaching his conclusions.

## III.   THIRD PARTIES

There are no third parties asserting claims or defenses in this matter.

## IV.   ANTICIPATED EVIDENTIARY ISSUES

There are no witnesses that are anticipated to be presented by deposition testimony at this time.

Defendants will be filing the following motions in limine:

1.  Defendants' Motion in Limine No.  to exclude improper expert opinions.

2. Defendants' Motion in Limine No. 2 to exclude evidence of officers' personnel records.

## V.   OTHER GERMANE ISSUES OF LAW

Officer Bell plans to raise the defense of qualified immunity by Rule 50 motion. If raised after the close of evidence, the qualified immunity defense may require special interrogatories. "In a proper case, the use of special jury

interrogatories going to the qualified immunity defense is not discretionary with the court." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002). "Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." *Id; see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide 'what the facts were that the officer faced or perceived' and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.").

There is no law clearly establishing that a law enforcement officer is not entitled to use deadly force when confronted with a subject under the circumstances in this case. Even if Officer Bell may have been mistaken about the nature of the threat posed by Edgar Solis, any such mistake was reasonable. *Anderson v. Creighton*, 483 U.S. at 641; *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Elliott*, 99 F.3d at 644. There is not a "robust 'consensus of cases of persuasive authority'" on this issue, either. To the contrary, officers are on notice that they are permitted to use deadly force when there is probable cause to believe there is an immediate threat of serious bodily injury or death, which was the case here.

## VI.    BIFURCATION OF ISSUES

Defendants seek bifurcation of the issue of punitive damages.

## VII.    JURY TRIAL

All issues are triable to a jury (except as discussed in Sections IV and V), and timely demands for jury have been made by all parties.

## VIII.    ATTORNEYS' FEES

Defendants do not waive their right to attorneys' fees if the court finds the

1 action was brought in bad faith.

2 **IX.    ABANDONMENT OF ISSUES**

3      No affirmative defenses have been abandoned by Defendants.

4

5 Dated: September 10, 2024                    Respectfully submitted,

6                                             ROB BONTA
                                             Attorney General of California
7                                             NORMAN MORRISON
                                             Supervising Deputy Attorney General
8

9                                             *David Klehm*

10                                            DAVID KLEHM
                                             Deputy Attorney General
11                                            *Attorneys for Defendants State of*
                                             *California and Michael Bell*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Case Name: **Edgar Solis v. County of Riverside, et al.**    No. **5:23-cv-00515-HDV-JPR**

I hereby certify that on September 10, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW BY DEFENDANTS CALIFORNIA HIGHWAY PATROL AND OFFICER BELL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 10, 2024, at Los Angeles, California.

|  |  |
|---|---|
| J. Sissov | */s/ J. Sissov* |
| Declarant | Signature |

SD2023800661