1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  DAVID KLEHM
   Deputy Attorney General
4  State Bar No. 165302
     600 West Broadway, Suite 1800
5    San Diego, CA 92101
     P.O. Box 85266
6    San Diego, CA 92186-5266
     Telephone: (619) 738-9733
7    Fax: (619) 645-2581
     E-mail: David.Klehm@doj.ca.gov
8
   *Attorneys for Defendant State of California*
9  *(by and through the California Highway Patrol)*
   *[erroneously sued as "State of California"]*
10 *and Michael Bell*

11              IN THE UNITED STATES DISTRICT COURT
12            FOR THE CENTRAL DISTRICT OF CALIFORNIA
13

14

15

16  **EDGAR SOLIS,**                          5:23-cv-00515-HDV-JPR

17                            Plaintiff,      **DEFENDANTS' NOTICE OF
                                              MOTION AND MOTION IN**
18         **v.**                             **LIMINE NO. 2 TO EXCLUDE
                                              TESTIMONY ON TOPICS WHICH**
19                                            **PLAINTIFF PLED 5TH**
    **COUNTY OF RIVERSIDE; STATE**            **AMENDMENT DURING**
20  **OF CALIFORNIA; SALVADOR**               **DEPOSITION; MEMORANDUM**
    **WALTERMIRE; and DOES 1-10,**            **OF POINTS AND AUTHORITIES**
21  **inclusive,**                            **AND DECLARATION OF DAVID
                                              KLEHM IN SUPPORT**
22                            Defendants.     **THEREOF;[PROPOSED] ORDER**

23                                            Date:        October 1, 2024
                                              Time:        9:00 a.m.
24                                            Courtroom:   10D
                                              Judge:       Honorable Hernán D. Vera
25
                                              Trial Date:  October 29, 2024
26                                            Action Filed: 2/02/2023

27

28

                                    1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD
HEREIN:**

**PLEASE TAKE NOTICE THAT** on October 1, 2024, at 9:00 a.m. or as soon thereafter as counsel may be heard in in Courtroom 10D of the United States District Court located at 350 W. 1st Street, Courtroom 10D, 10th Floor, Los Angeles, California, State of California (by and through the California Highway Patrol) *and* Michael Bell  will and hereby do move the Court for an order in limine precluding Plaintiff from testifying about any topic on which he previously has refused to testify by invoking his 5th Amendment rights during his deposition and to exclude Plaintiff's experts from expressing opinions incorporating Plaintiff's previously undisclosed information. Fed. R. Evid. 403.

This motion is based upon this notice of motion, the attached memorandum of points and authorities, the attached declaration of David Klehm, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this motion.

*This motion in limine is being filed after the dates specified by the Court in the scheduling order because Plaintiff's counsel advised that Plaintiff* intended to provide testimony only *after* the deadline for filing motions in limine and had not provided any prior indication or advised that Plaintiff had reversed his prior refusals to testify prior to the deadline for filing motions in limine. Plaintiff had previously consistently and repeatedly refused to testify and invoked his Fifth Amendment rights during his deposition and in discovery conducted in this case. As a result of Plaintiff's untimely notice, there is insufficient time to conduct discovery, including the deposition of Plaintiff, and Defendants are unable to conduct any additional necessary written or expert discovery because (1) the discovery cutoff has previously occurred; and (2) insufficient time remains prior to the scheduled commencement of trial.

/ / /

1    **Statement of Compliance:**

2        This Motion is made following a conference of counsel pursuant to L.R. 7-3

3    and L.R. 16-2.6, which took place on September 16, 2024.

4        Defendants' counsel engaged in a telephonic conference with Plaintiff's

5    counsel, Marcel Sincich, pursuant to L.R. 7-3 and L.R. 16-2.6, starting on

6    September 16, 2024. Plaintiff intends to present the testimony identified herein, but

7    defendants do not agree to the introduction of the testimony identified. Plaintiff

8    will be opposing Defendant's instant motion. (Decl. Klehm ¶ 2.)

9

10    Dated:  September 23, 2024                    Respectfully submitted,

11                                                                        ROB BONTA
                                                                           Attorney General of California
12                                                                        NORMAN D. MORRISON
                                                                           Supervising Deputy Attorney General

13                                                                        */s/ David Klehm*
                                                                           DAVID KLEHM
14                                                                        Deputy Attorney General
                                                                           *Attorneys for Defendants*
15                                                                        *State of California and Michael Bell*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3

**I.    INTRODUCTION**

4      The instant Motion in Limine is filed at this time after the applicable

5   deadline because Plaintiff's counsel recently informed Defendants' counsel on

6   September 12, 2024, that Plaintiff has decided to waive the Fifth Amendment

7   which he invoked in response to all of the questions during his deposition relating

8   to the facts, events, and details relating to the incident forming the basis of his

9   complaint and allegations against Defendants in this case. (Declaration of Deputy

10  Attorney General David Klehm (Decl. Klehm ¶ 2.)

11     This lawsuit arises out of the shooting of Plaintiff, Edgar Solis, by California

12  Highway Patrol (CHP) Officer Michael Bell, and one of his partners on the

13  Regional Gang Task Force, Riverside County Sheriff Department Deputy Salvator

14  Waltermire. The central issue in this case now that former co-defendant, Deputy

15  Waltermire has settled with plaintiff, is whether Defendant Bell was justified in

16  using deadly force when Plaintiff unlawfully evaded lawful arrest and pointed his

17  gun at Officer Bell.  Defendants request that the court prohibit plaintiff from

18  testifying at trial on any topic which he invoked his Constitutional rights pursuant

19  to the Fifth Amendment during his deposition on May 3, 2024, and refused to

20  answer questions or provide information regarding the events of the incident

21  forming the basis of his lawsuit, as unduly prejudicial. Fed. R. Evid. 403.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**ARGUMENT**

2

3    **I.    THE COURT HAS THE POWER TO GRANT THIS MOTION IN
4          LIMINE BASED UPON ITS INHERENT POWER TO MANAGE THE
          COURSE OF TRIALS**

5        Motions in limine are recognized as a proper pretrial request, both in practice

6    and by case law. *See, Ohler v. United States,* 529 U.S. 753, 758 (2000), *United*

7    *States v. Cook,* 608 F.2d 1175, 1186 (9th Cir. 1979). Authority for these motions is

8    also derived from the Court's inherent power to manage the course of trials. *See,*

9    *Luce v. United States,* 469 U.S. 38, 41 (1984). Pursuant to the arguments set forth

10   below, defendants request that this Court grant their motion and exclude the

11   evidence at issue.

12

13   **II.   TESTIMONY AT TRIAL ABOUT TOPICS WHICH PLAINTIFF
           REFUSED TO ANSWER DURING HIS DEPOSITION BY INVOKING
14         THE FIFTH AMENDMENT SHOULD BE EXCLUDED AS UNDULY
           PREJUDICIAL TO DEFENDANTS**

15

16       Plaintiff's counsel, Marcel Sincich, Esq. recently informed Defendants'

17   counsel on Thursday, September 12th, 2024, that Plaintiff had decided to waive the

18   5th Amendment which he invoked in response to all of the questions asked during

19   his deposition relating to the incident at issue in this case. (Decl. Klehm, ¶ 2,

20   Exhibit "A".)

21       Defendants' counsel met and conferred with Plaintiff's counsel on Friday,

22   September 13th· and Monday, September 16th, requesting a stipulation for a trial

23   continuance so that Defendants could re-depose Plaintiff and conduct the necessary

24   post-deposition discovery and expert review of Plaintiff's anticipated greatly

25   expanded testimony due to his recent decision to waive the Fifth Amendment.

26   Plaintiff's counsel refused to stipulate to a continuance, despite their decision to

27   withhold the Plaintiff's decision until the eve of trial, after discovery had closed

28

pursuant to the Court's scheduling orders, and after the Defendants had taken the

deposition of Plaintiff's experts and had Defendants' experts prepare their trial

opinions and give testimony based upon the Plaintiff's refusal to testify.

This Motion in Limine is brought as Defendants' response to Plaintiff's

inexplicable refusal to stipulate to a trial continuance. (Decl. Klehm, ¶ 6.)

Due to the substantial undue prejudice to Defendants, as detailed herein

below, Defendants request that this Court preclude any testimony from Plaintiff,

Edgar Solis, and Plaintiff's experts, on any topic which Plaintiff refused to answer,

or was instructed not to answer by his counsel, Marcel Sincich, Esq. during his May

3rd, 2024, deposition by invoking the Fifth Amendment. Primarily, the topics on

which plaintiff, or his counsel, invoked the Fifth Amendment during deposition

involved any questions related to Plaintiff's conduct during the pursuit by

Defendant, Officer Bell.  (Decl. Klehm, ¶ 4, Exhibit "B".)  Despite Plaintiff's

counsel offering dates starting on October 14th, for the second session of Plaintiff's

deposition, it is not logistically possible   for Defendants to conduct the necessary

follow-up discovery and to test the veracity of Plaintiff's expected testimony

unencumbered by the Fifth Amendment. Essentially, Defendants will be unable to

fact check Plaintiff's unencumbered testimony prior to trial.  Furthermore,

Plaintiff's testimony will need to be transcribed by the Court Reporter, reviewed

and approved by the Plaintiff while he is incarcerated, and then his testimony will

need to be reviewed by Defendants' experts and consultants which might then

require Defendants to add additional exhibits for trial. Additionally, Defendants

anticipate Plaintiff's unencumbered testimony will result in additional affirmative

defenses or other defenses, which will require Defendants to amend their answer.

Plaintiff's second deposition will require Defendants' experts and consultants to

review Plaintiff's second deposition transcript and then prepare their new opinions,

and/or expand on their prior opinions, based upon Plaintiff's newly unencumbered

testimony. This, in turn, might require Defendants experts to be re-deposed.

Certainly, Defendants will need to re-depose Plaintiff's experts based upon the information provided by Plaintiff in his second deposition, which, in turn, will substantially affect Defendants' experts' opinions offered at trial. (Decl. Klehm, ¶ 7.)

**A.    Plaintiff Should be Prohibited from Using the 5th Amendment as a Sword and a Shield in his Civil Case**

The 9th Circuit considered the issue of discovery sanctions related to a litigant's invocation of the Fifth Amendment privilege against self-incrimination in a civil proceeding. In *Lyons v. Johnson*, 415 F.2d 540 (1969), ("*Lyons*") the 9th Circuit Court upheld the district court's dismissal of multiple lawsuits filed by the same plaintiff who invoked the Fifth Amendment privilege to avoid responding to defendant's discovery. Plaintiff continued to refuse to participate in the discovery process despite the district court's admonition during a hearing on the issue advising plaintiff that "if she wanted to use the shield of self-incrimination against any interrogation whatsoever regarding her claims, she would have to forego the right to prosecute the actions . . . ." *Id*. at 541. The 9th Circuit explained its ruling thusly:

> The naked question therefore simply was whether a plaintiff can refuse to submit to any discovery whatsoever upon his lawsuit, by asserting a Fifth Amendment privilege against any interrogation of him, and then demand that he nevertheless be permitted to continue with the legal pursuit of his claim, no matter what prejudice or possible unequal protection there might be involved to the defendant from such a court acquiescence.

> Her obtaining of this shield, however, could not provide a sword to her for achieving assertion of her claims against the defendants without having to conform to the processes necessary to orderly and equal forensic functioning. Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation

1   rests, be to the party asserting the claim and not to the one who has been
2   subjected to its assertion. It is the former who has made the election to
    create an imbalance in the pans of the scales."

3   *Id*. at 541-42.

4       District Courts in California have reached the same conclusions. In *Plymale*

5   *v. Dyer*, 837 F. Supp. 2d 1077 (E.D. Cal. 2011) the Court also considered the use of

6   the 5th Amendment by a Plaintiff in a civil case in which Defendants contended that

7   Plaintiff, Officer Plymale's invocation of the Fifth Amendment privilege precludes

8   him to introduce "evidence of pretext or racial animus" on the part of Defendants.

9   The *Plymale* Court held:

10      While be true that an individual should suffer no penalty for the
        assertion of a constitutional right, neither should third parties sued by
11      that individual who have no apparent interest in the criminal
        prosecution, be placed at a disadvantage thereby." *Jones v. B. C.*
12      *Christopher & Co.*, 466 F. Supp. 213, 227 (D. Kan. 1979). Thus, "a
        civil plaintiff has no absolute right to both his silence and his lawsuit."
13      *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th
        Cir. 1979)(*Lyons,* citation omitted)
14

15      A California Central District Court case in *Global Dev. & Envtl. Res.,*

16  *Inc. v. Panella,* No. SACV-0700179-JVS(MLGx), 2008 U.S. Dist. LEXIS

17  126326, 2008 WL 11343388 (C.D. Cal. April 14, 2008) held:

18      Where a party asserts a Fifth Amendment Privilege to all discovery, the
        Court is within its discretion to bar the party from offering any
19      evidence. *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969); *United*
        *States v. Sixty Thousand Dollars in Unites States Currency*, 763 F.
20      Supp. 909, 914 (E.D. Mich. 1991); *In re Equity Land Title Agency, Inc*.
        326 B.R. 427, 433 (Bankr. S.D. Ohio 2005). But that is not the case
21      here, and the First Capital Parties do not seek that remedy."

22

23      The Court now outlines the proper scope of exclusion. First, the
        testimony of Pritchard and Cimino on the subjects on which they
24      refused to be interrogated is excluded. A limitation based on the precise
        questions they refused to answer simply invites an attempt to side step
25      the doors they closed with the assertion of privilege. The First Capital
        Parties were denied evidence in response to their questions and
26      evidence which they might have elicited had doors not been barred.
        *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969) ("She of course
27      had the right to make that choice [to assert the privilege], but she must
        now accept the fact that the doors of the law are closed to any attempts
28      by her to reassert her alleged claims"). Second, the Global Resources

1  
2  
3  
4  
5  
6  
7  
8  

> Parties may not offer other forms of evidence on the subjects on which Pritchard and Cimino refused to testify. Depositions are a key part of the discovery process. Without depositions, particularly from the key witnesses, an opponent does not have a fair opportunity to evaluate or rebut evidence in other forms bearing on the foreclosed subjects. This is simply a more limited application of the cases which bar all evidence where there has been a total refusal. Where the refusal has been more limited, so should the scope of exclusion. *Traficant v. Commissioner of Internal Revenue*, 884 F.2d 258, 265 (6th Cir. 1989) ("when the issue is whether a court may impose broad limits on the admissibility of evidence, the cases permit only limits directly related to the scope of the asserted privilege")."

2008 U.S. Dist. LEXIS 126326, 2008 WL 11343388.

9  
10  
11  
12  
13  
14  

Other circuits have followed a similar rationale to reach the same conclusion that a Plaintiff cannot use the Fifth Amendment during discovery as a shield to prevent a Defendant from gathering evidence to support its defenses and then waive the Fifth Amendment to use their previously shielded testimony as a sword in trial. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576-578 (1st Cir. 1989), is on point. In *Gutierrez-Rodriguez*, the Court explained:

15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

> Soto appeared at his August 24, 1987 deposition without counsel and refused to answer any questions concerning the shooting incident. Plaintiff filed a motion in limine on October 15, 1987 to prohibit Soto from testifying at trial if he was going to assert the Fifth amendment during discovery. Plaintiff's motion was granted on January 12, 1988. On January 25, 1988, Soto filed a motion for reconsideration of that order. On February 25, 1988, the court heard arguments on Soto's motion and denied it. Four days later, the trial began.
>
> In his motion for reconsideration of the order granting plaintiff's motion in limine, and on appeal, Soto takes the position that he should not have to choose between asserting his Fifth amendment privilege during discovery and testifying at trial.
>
> Plaintiff contends, and the district court apparently agreed, that it would be an abuse of the Fifth amendment to allow Soto to claim the privilege against self-incrimination during discovery and concurrently subject plaintiff to the possibility that at the eleventh hour he might waive the privilege and testify at trial. This, plaintiff asserts, would unduly hamper his preparation for trial.
>
> Trial courts have broad discretion in fashioning remedies during discovery. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976). Discovery sanctions are appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Id. The

viewpoint of National Hockey League was echoed in the advisory committee note to the 1983 amendment of Fed.R.Civ.P. 26: "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Courts have not been afraid to bar a party from testifying where doing so was necessary to prevent the "thwarting [of] the purposes and policies of the discovery rules." *Meyer v. Second Judicial Dist. Court, etc*., 95 Nev. 176, 591 P.2d 259 (1979); *see Lyons v. Johnson*, 415 F.2d 540, 541-42 (9th Cir. 1969), cert. denied, 397 U.S. 1027, 90 S. Ct. 1273, 25 L. Ed. 2d 538 (1970).

The district court's decision to bar Soto from testifying at trial due to his previous refusal to testify during discovery is supported by ample precedent.

> The Federal Rules contemplate that there be "full and equal mutual discovery in advance of trial" so as to prevent surprise, prejudice and perjury. "It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses." 4 Moore, Federal Practice para. 26.02[2] at 1034-35. The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.

*Duffy v. Currier*, 291 F. Supp. 810, 815 (D.Minn. 1968); accord *Rubenstein v. Kleven*, 150 F. Supp. 47, 48 (D.Mass. 1957), aff'd on other grounds, 261 F.2d 921 (1st Cir. 1958) (defendant's claim of privilege during deposition precluded his testimony as to certain evidence at trial); *Costanza v. Costanza*, 66 N.J. 63, 328 A.2d 230, 232 (1974); *see also Bramble v. Kleindienst*, 357 F. Supp. 1028, 1035 (D.Colo. 1973) (applying same sanction to a plaintiff), aff'd, 498 F.2d 968 (10th Cir. 1974), cert. denied, 419 U.S. 1069, 42 L. Ed. 2d 665, 95 S. Ct. 656 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2018, at 149 (1970) ("If a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered."). We find these cases persuasive.

The Supreme Court's reasoning in an analogous situation supports the constitutionality of the holdings cited above. In *Williams v. Florida*, 399 U.S. 78, 80, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970), the Court upheld a Florida notice-of-alibi rule requiring that a criminal defendant "submit to a limited form of pretrial discovery by the State whenever he intends to rely at trial on the defense of alibi." The Court stated:
The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by ensuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence. *Id*. at 82 (footnote omitted). The Court did not find that the Florida rule violated defendant's fifth amendment privilege."

/ / /

10

We find the principles enunciated by the *Williams* Court instructive in
the case at bar. Soto made his decision not to give deposition testimony
on August 24, 1987 and held that position throughout the next six
months prior to trial. The district court's decision to bar Soto's testimony
did not burden his due process rights, it merely forced him to abide by
his decision and protected plaintiff from any unfair surprise at trial. A
defendant may not use the Fifth amendment to shield herself from the
opposition's inquiries during discovery only to impale her accusers with
surprise testimony at trial. *See Bramble v. Kleindienst*, 357 F. Supp. at
1035-36 (citing *Lyons v. Johnson*, 415 F.2d at 541-42).

882 F.2d 553, 576-577; 1989 U.S. App. LEXIS 12119 at pgs.74-75;

In the instant case, Plaintiff, Edgar Solis, was represented by counsel during

his deposition on May 3, 2024. The deposition transcript clearly delineates the vast

scope of the Fifth Amendment asserted by Plaintiff during his deposition as

follows:

Q Okay. And do you understand that the lawsuit

that you filed relating to what happened on March 2,

2022, alleges that my client, Officer Michael Bell of

the California Highway Patrol, used excessive force

against you because he shot you without first giving you

a warning that he was going to use deadly force?

MR. SINCICH: Objection. Privileged. Instruct

not to answer.

MR. KLEHM: All right. Well, I -- I can

possibly understand if the instruction not to answer is

due to the Fifth Amendment, Marcel. But the privileged

part I'm not so sure about because this is in his first

amended complaint.

MR. SINCICH: It's a Fifth Amendment privilege

is what --

MR. KLEHM: Oh, okay.

1    MR. SINCICH: Sorry. I guess I paraphrased.

2    MR. KLEHM: All right. Thank you.

3    MR. SINCICH: I'll be clear for the record that

4    with the instruction not to answer it's under the Fifth

5    Amendment.

6    MR. KLEHM: All right. Thank you. Thank you.

7    BY MR. KLEHM:

8    Q Okay. All right. On March 2, 2022, do you

9    recall holding a .38 Colt Detective Revolver in your

10    hand immediately before being shot?

11    MR. SINCICH: Objection. Privileged, based off

12    Fifth Amendment grounds. Instruct not to answer.

13    MR. KLEHM: Okay.

14    BY MR. KLEHM:

15    Q On March 2, 2022, within the five minutes

16    before you were shot, did you have in your hand or on

17    your person a loaded Colt Revolver?

18    MR. SINCICH: Objection. Fifth Amendment

19    privilege, and instruct not to answer.

20    BY MR. KLEHM:

21    Q Okay. On March 2, 2022, do you recall Officer

22    Bell telling you to drop the weapon or words to that

23    effect prior to the time that you were shot?

24    MR. SINCICH: Objection. Fifth Amendment

25    privilege. Instruct not to answer.

26    Q All right. On March 2, 2022, prior to the time

27    that you were shot, were you on amphetamines?

28    MR. SINCICH: Objection. And, I'm sorry, but

12

1        it did break up a little bit on my end.

2        But what you were saying -- because I'm able to

3        see you. But objection. Fifth Amendment privilege.

4        Instruct not to answer.

5        BY MR. KLEHM:

6        Q Okay. On March 2, 2022, prior to the time that

7        you were shot, had you taken PCP, the drug commonly

8        known as PCP?

9        MR. SINCICH: Objection. Fifth Amendment

10        privilege. Instruct not to answer.

11        BY MR. KLEHM:

12        Q On March 2, 2022, were you, to your knowledge,

13      on probation for any prior criminal offenses?

14        MR. SINCICH: That's kind of borderline from

15        probation and parole, so I'm going to have to err on

16        instructing him not to answer based off of Fifth

17        Amendment.

18        MR. KLEHM: Okay. Well, let me cross the

19        border then.

20        BY MR. KLEHM:

21        Q On March 2, 2022, were you on parole to your

22        knowledge for any prior criminal offenses?

23        MR. SINCICH: Objection. Fifth Amendment

24        privilege, and instruct not to answer.

25        MR. KLEHM: Okay.

26        BY MR. KLEHM:

27        Q Did you understand on March 2, 2022, prior to

28        the time that you were shot, that you were not allowed

1      to be in possession of a firearm?

2          MR. SINCICH: Objection. Calls for legal

3      conclusion, and Fifth Amendment privilege. Instruct not

4      to answer.

5      ******************BREAK IN DEPOSITION*************

6          Q Okay. There was a line of questions that your

7      attorney instructed you not to answer, so I just want to

8      make sure that we're not wasting anyone's time here any

9      further.

10         MR. KLEHM: Mr. Sincich, can you put on the

11     record the scope of what your instruction for your

12     client not to answer based on his Fifth Amendment rights

13     would be so that I don't waste any time asking him a

14     whole series of questions that are just going to result

15     in an instruction not to answer from you?

16         MR. SINCICH: Certainly.

17     So the instructions not to answer will be based

18     off of the Fifth Amendment privilege and, generally

19     speaking, would be under the scope of criminal history,

20     any kind of drug use, and essentially the facts related

21     to the incident considering that the current active

22     criminal case relates directly to the incident itself.

23         MR. KLEHM: Okay. Thank you.

24     And would your instruction to your client not

25     to answer based on the Fifth Amendment privilege also

26     include his interrogatory responses that directly place

27     him at the scene of the shooting and, otherwise,

28     indicate that he was shot on May [sic] 2, 2022, during a

1         pursuit?

2         MR. SINCICH: With regard to placing him at the

3         scene and facts related to the incident, yes, it would

4         encompass those interrogatory responses.

5         For the record, they were made prior to the

6         charges being filed against Mr. Solis. But I do believe

7         there were interrogatory responses related to injuries,

8         damages, and that's essentially -- I would not instruct

9         him not to answer those kind of injury or damages

10        questions.

11       (Decl. Klehm, Exhibit "B".)

12        As demonstrated during plaintiff's deposition on May 3, 2024, the presumably

13 unintended consequence of Plaintiff's extensive use of the Fifth Amendment as a

14 shield during his deposition was that defendants were prevented from obtaining any

15 information about which shots fired by Defendant Bell struck which parts of

16 Plaintiff's body and in what sequence. Similarly, Defendants do not have any

17 information from Plaintiff about the handgun Defendant Bell testified he saw

18 Plaintiff carrying in his hand while plaintiff was evading arrest, nor about the

19 Plaintiff's use of methamphetamine and PCP prior to the incident. Importantly,

20 Plaintiff is the only source of this information equally critical to support Plaintiff's

21 causes of action and Defendants' defenses because there was no video recording of

22 the shooting, nor were there any witnesses who observed Defendant shooting

23 towards plaintiff, nor was there any forensic evidence of the bullets removed from

24 plaintiff during surgery to compare. Notably. Deputy Waltermire's service weapon

25 fired 11 rounds of a different caliber after Defendant Bell fired 8 rounds from his

26 service weapon.  Essentially, the medical records show Plaintiff incurred 15 bullet

27 holes but without his testimony, Defendants cannot determine which bullet holes

28 were due to the 8 shots fired by Defendant Bell and which holes were due to the 11

shots fired by former co-defendant, Deputy Waltermire. Defendants are at a further discoverable information disadvantage because plaintiff's expert, Roger Clark, likely obtained information about the shooting after plaintiff decided to waive his Fifth Amendment rights which he will testify to at trial. Yet, defendants are unable to depose Mr. Clark a second time at this late juncture one month before trial commences. Consequently, the Fifth Amendment which Plaintiff used as an effective shield during his deposition is now being forged into a formidable sword for his use at trial in four weeks even though Plaintiff currently faces the same pending criminal felony charges including being a felon in possession of a firearm during his arrest by Defendant Bell that Plaintiff faced at the time of his deposition on May 3, 2024. (Decl. Klehm, ¶ 9.)

## CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to prohibit Plaintiff, Edgar Solis, from testifying on any topics on which he and/or his counsel asserted the Fifth Amendment during his May 3, 2024, deposition.

Dated:  September 23, 2024 _                    Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ David Klehm*
DAVID KLEHM
Deputy Attorney General
*Attorneys for Defendants*
*State of California by and through the*
*California Highway Patrol and Officer*
*Michael Bell*