ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone:  (619) 738-9733
  Fax:  (619) 645-2581
  E-mail:  David.Klehm@doj.ca.gov

*Attorneys for Defendant State of California
(by and through the California Highway Patrol)
[erroneously sued as "State of California"]
and Michael Bell*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDGAR SOLIS,** | 5:23-cv-00515-HDV-JPR |
| Plaintiff, | **DECLARATION OF DAVID KLEHM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE PLAINTIFF'S TESTIMONY AT TRIAL ABOUT TOPICS ON WHICH PLAINTIFF INVOKED THE 5TH AMENDMENT DURING HIS DEPOSITION** |
| **v.** | |
| **COUNTY OF RIVERSIDE; STATE OF CALIFORNIA; SALVADOR WALTERMIRE; and DOES 1-10, inclusive,** | |
| Defendants. | Date:          October 1, 2024<br>Time:          9:00 a.m.<br>Courtroom:  10D<br>Judge:         Honorable Hernán D. Vera<br><br>Trial Date:  October 29, 2024<br>Action Filed: 2/02/2023 |

# DECLARATION OF DAVID KLEHM

I, David Klehm, declare as follows:

1. I am a duly appointed Deputy Attorney General and am assigned to represent defendants in the above-captioned action. I make this declaration in support of the attached motion. The facts set forth herein are within my personal knowledge.

2. I engaged in a telephonic conference with Plaintiff's counsel, Marcel Sincich, pursuant to L.R. 7-3 and L.R. 16-2.6, starting on September 16, 2024. Plaintiff intends to present the testimony identified herein, but defendants do not agree to the introduction of the testimony identified. Plaintiff will be opposing Defendant's instant motion.

3. Plaintiff's counsel, Marcel Sincich, notified me for the first time on September 12, 2024, that plaintiff, Edgar Solis, decided that he would be waiving the 5th Amendment at the upcoming trial on October 29, 2024. Attached hereto as Exhibit "A" is a true and correct copy of Mr. Sincich's email dated September 12, 2024.

4. Plaintiff, Edgar Solis, invoked the 5th Amendment extensively during his deposition on May 3, 2024, in response to my questions dealing with the shooting by my client, Officer Michael Bell, during plaintiff's arrest on felony warrants for carjacking, robbery and drug possession. Attached as Exhibit "B" is a true and correct copy of the relevant excerpts of plaintiff's deposition in which plaintiff or his counsel invoked the 5th Amendment.

5. On Friday, September 20, 2024, plaintiff's counsel's office sent an email offering deposition dates starting on October 14, 2024 for plaintiff, who is currently incarcerated after being convicted for carjacking with a firearm pursuant to the felony warrant on which defendant Michael Bell arrested plaintiff. Attached as Exhibit "C" is a true and correct copy of the aforementioned email.

6. During my meet and confer will plaintiff's counsel, I requested that plaintiff agree to stipulate to a continuance of the trial date so that I could have sufficient time to conduct the second deposition of plaintiff and then time for defendants' experts to review plaintiff's deposition transcript prior to trial and then for me and my clients to prepare our trial strategy accordingly.  I advised plaintiff's counsel that conducting the second deposition of plaintiff during which time he is expected to testify for the first time in this case without invoking the 5th Amendment about his conduct, and my client's conduct, during the incident shooting would be unduly prejudicial to my, and my client's ability to adequately prepare for trial on October 29, 2024. Plaintiff's counsel did not agree to continue the trial date which necessitated Defendants filing the instant motion in limine.

7. Despite Plaintiff's counsel offering dates starting on October 14th, for the second session of Plaintiff's deposition, it is not logistically possible to conduct the necessary follow up discovery flowing from plaintiff's expected unencumbered by the Fifth Amendment testimony during the second session of Plaintiff's deposition. Essentially, defendants will be unable to fact check plaintiff's expected unencumbered testimony prior to trial.  Furthermore, Plaintiff's testimony will need to be transcribed, reviewed and approved by the Plaintiff while he is incarcerated, and then his testimony will need to be reviewed by defendants' experts and consultants which might then require defendants to add additional exhibits for trial. Additionally, Defendants anticipate plaintiff's unencumbered testimony will result in additional affirmative defenses or other defenses, which will require Defendants to amend their answer. Plaintiff's second deposition will require Defendants' experts and consultants to review the deposition transcript and then prepare new opinions, and/or expand on their prior opinions based upon plaintiff's newly unencumbered testimony, which might require defendants' experts to be re-deposed. Certainly, defendants we will need to re-depose Plaintiff's experts based

1   upon the information provided by Plaintiff in his second deposition, which, in turn,

2   will affect defendants' experts' opinions to be offered at trial.)

3        8. Defendants request that the Court prohibit plaintiff from testifying about

4   topics on which plaintiff or his counsel invoked the 5th Amendment during

5   plaintiff's deposition on May 3, 2024, because such testimony would be unduly

6   prejudicial to defendants on the eve of trial.

7        9. On or about September 13, 2024, after being advised by plaintiff's counsel

8   that plaintiff intended to waive the Fifth Amendment, I contacted the Riverside

9   County Assistant District Attorney, Michael Maloney, who is prosecuting the

10  felony complaint against Plaintiff. I was informed that Plaintiff currently faces the

11  same pending criminal felony charges including being a felon in possession of a

12  firearm during his arrest by Defendant Bell that Plaintiff faced at the time of his

13  deposition on May 3, 2024.

14       I declare under penalty of perjury under the laws of the United States of

15  America that the foregoing is true and correct.

16       Executed on September 23, 2024, at San Diego, California.

17                          */s/ David Klehm*

18                          David Klehm

19  SD2023800661
    84745150.docx
20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

| | |
|---|---|
| **From:** | Marcel Sincich |
| **To:** | David Klehm |
| **Cc:** | Trenton Packer; Christina Ramirez; Kayla Peña-Pham; dalekgalipo@yahoo.com; Ashley Reyes; Alejandro Monquia; Norman Morrison; Christine Henson |
| **Subject:** | Solis v. State of California |
| **Date:** | Thursday, September 12, 2024 11:53:19 AM |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi David,

Please be advised that Mr. Solis has decided to waive his Fifth Amendment rights regarding information relevant to this incident for his testimony at trial as I indicated to you previously. Let us know if you would like to take his deposition again, and if so when you are available to do so. Thank you.

Very Respectfully,

**Marcel F. Sincich, Esq.**

**Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: msincich@galipolaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

# EXHIBIT "B"

Edgar Solis, 5/3/2024

1            STOCKTON, CALIFORNIA

2        FRIDAY, MAY 3, 2024; 10:17 A.M.

3

4

5                EDGAR SOLIS,

6        HAVING BEEN DULY ADMINISTERED AN

7        OATH BY THE REPORTER, WAS EXAMINED

8            **AND TESTIFIED AS FOLLOWS:**

9

10

11                EXAMINATION

12    BY MR. KLEHM:

13        Q    **Mr. Solis, could you please state your name and**

14    **spell it for the record.**

15        A    It's Edgar Alejandro Solis.  It's E-d-g-a-r

16    A-l-e-j-a-n-d-r-o.  Solis, S-o-l-i-s.

17        Q    **Thank you.**

18        A    You're welcome.

19        Q    **There's an issue, for the record, with your**

20    **video that we've discussed before starting this**

21    **deposition.**

22            **MR. KLEHM:  So, Mr. Sincich, are you able to**

23    **verify through your voice analysis of the witness that**

24    **he is in fact your client, since we cannot see him on**

25    **the video for this remote deposition?**

**6**

Edgar Solis, 5/3/2024

1    BY MR. KLEHM:

2        Q    There was a -- a complaint that you filed and

3    then a first amended complaint that you filed in this

4    case regarding the incident that you referred to earlier

5    of being shot.  Okay?

6            And in that complaint, you state that my

7    client, along with Deputy Waltermire of the County of

8    Riverside's Sheriff's Department shot you on March 2,

9    2022.  Is that correct?

10           MR. SINCICH:  I'm going to object that it

11   raises the Fifth Amendment privilege and instruct him

12   not to answer.

13           MR. KLEHM:  Okay.

14   BY MR. KLEHM:

15       Q    Are we here today in your deposition because of

16   a lawsuit that you filed claiming, amongst other things,

17   that my client, Officer Michael Bell of the California

18   Highway Patrol, shot you on March 2, 2022?

19       A    You're asking if I'm here today because of what

20   happened on March 2, 2022?

21       Q    Yeah, because of a lawsuit you filed relating

22   to what happened on March 2, 2022.

23       A    Okay.  Yes.

24       Q    Okay.  And do you understand that the lawsuit

25   that you filed relating to what happened on March 2,

**44**

Edgar Solis, 5/3/2024

1   2022, alleges that my client, Officer Michael Bell of

2   the California Highway Patrol, used excessive force

3   against you because he shot you without first giving you

4   a warning that he was going to use deadly force?

5           MR. SINCICH:  Objection.  Privileged.  Instruct

6   not to answer.

7           MR. KLEHM:  All right.  Well, I -- I can

8   possibly understand if the instruction not to answer is

9   due to the Fifth Amendment, Marcel.  But the privileged

10  part I'm not so sure about because this is in his first

11  amended complaint.

12          MR. SINCICH:  It's a Fifth Amendment privilege

13  is what --

14          MR. KLEHM:  Oh, okay.

15          MR. SINCICH:  Sorry.  I guess I paraphrased.

16          MR. KLEHM:  All right.  Thank you.

17          MR. SINCICH:  I'll be clear for the record that

18  with the instruction not to answer it's under the Fifth

19  Amendment.

20          MR. KLEHM:  All right.  Thank you.  Thank you.

21  BY MR. KLEHM:

22      Q    Okay.  All right.  On March 2, 2022, do you

23  recall holding a .38 Colt Detective Revolver in your

24  hand immediately before being shot?

25          MR. SINCICH:  Objection.  Privileged, based off

45

Edgar Solis, 5/3/2024

1    Fifth Amendment grounds.  Instruct not to answer.

2           MR. KLEHM:  Okay.

3    BY MR. KLEHM:

4       Q    On March 2, 2022, within the five minutes

5    before you were shot, did you have in your hand or on

6    your person a loaded Colt Revolver?

7           MR. SINCICH:  Objection.  Fifth Amendment

8    privilege, and instruct not to answer.

9    BY MR. KLEHM:

10      Q    Okay.  On March 2, 2022, do you recall Officer

11   Bell telling you to drop the weapon or words to that

12   effect prior to the time that you were shot?

13          MR. SINCICH:  Objection.  Fifth Amendment

14   privilege.  Instruct not to answer.

15   BY MR. KLEHM:

16      Q    Have you ever told your family members that you

17   knew whether it was Officer Bell or Deputy Waltermire

18   that shot you first?

19          MR. SINCICH:  Objection.  Fifth Amendment

20   privilege.  Instruct not to answer.

21   BY MR. KLEHM:

22      Q    Have you ever seen the blood toxicology results

23   for the blood samples taken from you on March 2, 2022?

24          MR. SINCICH:  Assumes facts.  Calls for

25   speculation.

46

Edgar Solis, 5/3/2024

1    BY MR. KLEHM:

2        Q    All right.  That being said, Mr. Solis, have

3    you ever seen the blood toxicology results from your

4    blood taken on March 2, 2022?

5            MR. SINCICH:  Same objection.

6            MR. KLEHM:  But you're not instructing him not

7    to answer, so you can still answer, Mr. Solis.

8            MR. SINCICH:  Correct.  You can answer,

9    Mr. Solis.

10            THE WITNESS:  No, I have never seen results

11    of --

12    BY MR. KLEHM:

13        Q    Okay.

14        A    -- any test.

15        Q    All right.  On March 2, 2022, prior to the time

16    that you were shot, were you on amphetamines?

17            MR. SINCICH:  Objection.  And, I'm sorry, but

18    it did break up a little bit on my end.

19            But what you were saying -- because I'm able to

20    see you.  But objection.  Fifth Amendment privilege.

21    Instruct not to answer.

22    BY MR. KLEHM:

23        Q    Okay.  On March 2, 2022, prior to the time that

24    you were shot, had you taken PCP, the drug commonly

25    known as PCP?

47

Edgar Solis, 5/3/2024

1          MR. SINCICH:  Objection.  Fifth Amendment
2     privilege.  Instruct not to answer.
3     BY MR. KLEHM:
4          Q    Okay.  At any time in the -- prior to March 2,
5     '22, had you ever taken PCP?
6          MR. SINCICH:  Objection.  Fifth Amendment
7     privilege.  Instruct not to answer.
8     BY MR. KLEHM:
9          Q    On March 2, 2022, were you, to your knowledge,
10    on probation for any prior criminal offenses?
11         MR. SINCICH:  That's kind of borderline from
12    probation and parole, so I'm going to have to err on
13    instructing him not to answer based off of Fifth
14    Amendment.
15         MR. KLEHM:  Okay.  Well, let me cross the
16    border then.
17    BY MR. KLEHM:
18         Q    On March 2, 2022, were you on parole to your
19    knowledge for any prior criminal offenses?
20         MR. SINCICH:  Objection.  Fifth Amendment
21    privilege, and instruct not to answer.
22         MR. KLEHM:  Okay.
23    BY MR. KLEHM:
24         Q    Did you understand on March 2, 2022, prior to
25    the time that you were shot, that you were not allowed

48

Edgar Solis, 5/3/2024

1  to be in possession of a firearm?

2      MR. SINCICH:  Objection.  Calls for legal

3  conclusion, and Fifth Amendment privilege.  Instruct not

4  to answer.

5      MR. KLEHM:  Okay.

6  BY MR. KLEHM:

7   Q   At any time prior to March 2, 2022, do you

8  recall signing paperwork stating that you would not be

9  in possession of a firearm as a condition of your

10 parole?

11     MR. SINCICH:  Objection.  Fifth Amendment

12 privilege.  Assumes facts.  And instruct not to answer.

13 BY MR. KLEHM:

14  Q   Okay.  On March 2, 2022, before you were shot,

15 were you driving a green Ford Mustang?

16     MR. SINCICH:  Vague as to time.

17 BY MR. KLEHM:

18  Q   Any time of the day before you were shot.

19  A   Yeah.

20  Q   Okay.  All right.  You --

21  A   Hey, I know I said -- I know I said that --

22 like another 30 minutes or so, but I think I need to

23 take that break now if it's all right with you guys.

24  Q   We don't want to torture you or put you in any

25 physical discomfort for the duration, Mr. Solis.  So if

**49**

Edgar Solis, 5/3/2024

1          MR. KLEHM:  No.  We'll keep this off the
2  record.
3              (Off the record.)
4          MR. KLEHM:  Let's get back on the record.
5  BY MR. KLEHM:
6      Q    Mr. Solis, do you realize we're back on the
7  record after a short break?
8      A    Yes, sir.
9      Q    Okay.  There was a line of questions that your
10  attorney instructed you not to answer, so I just want to
11  make sure that we're not wasting anyone's time here any
12  further.
13          MR. KLEHM:  Mr. Sincich, can you put on the
14  record the scope of what your instruction for your
15  client not to answer based on his Fifth Amendment rights
16  would be so that I don't waste any time asking him a
17  whole series of questions that are just going to result
18  in an instruction not to answer from you?
19          MR. SINCICH:  Certainly.
20          So the instructions not to answer will be based
21  off of the Fifth Amendment privilege and, generally
22  speaking, would be under the scope of criminal history,
23  any kind of drug use, and essentially the facts related
24  to the incident considering that the current active
25  criminal case relates directly to the incident itself.

**51**

Edgar Solis, 5/3/2024

1          MR. KLEHM:  Okay.  Thank you.

2          And would your instruction to your client not

3    to answer based on the Fifth Amendment privilege also

4    include his interrogatory responses that directly place

5    him at the scene of the shooting and, otherwise,

6    indicate that he was shot on May [sic] 2, 2022, during a

7    pursuit?

8          MR. SINCICH:  With regard to placing him at the

9    scene and facts related to the incident, yes, it would

10   encompass those interrogatory responses.

11         For the record, they were made prior to the

12   charges being filed against Mr. Solis.  But I do believe

13   there were interrogatory responses related to injuries,

14   damages, and that's essentially -- I would not instruct

15   him not to answer those kind of injury or damages

16   questions.

17         MR. KLEHM:  Okay.  All right.

18         So taking this one step further, in terms of --

19   I'm going to share my screen a second here.

20         So if I were to ask your client whether or not

21   this is what he looked like on or about March 2, 2022,

22   would you instruct him not to answer?

23         MR. SINCICH:  Yes, I would.

24         MR. KLEHM:  Okay.  All right.  And for the

25   record, that was the BOLO, be on the lookout, exhibit.

52

Edgar Solis, 5/3/2024

1          Okay.  All right.  Well, let's talk about

2     damages, then, since we're not going to find out

3     anything about what happened on March 2, 2022.

4          Is that a fair assessment, Mr. Sincich, that

5     you're not going to let your client answer anything

6     about what happened on March 2, 2022, other than maybe

7     what he had for breakfast?

8          MR. SINCICH:  Yes, sir.

9     BY MR. KLEHM:

10    Q    All right.  Mr. Solis, we've been talking a

11    little bit about you being in a wheelchair and having

12    swelling in your leg after sitting for an hour and a

13    half or so.

14         Can you tell me what your understanding is of

15    your current medical condition relating to your being in

16    a wheelchair based on what the doctors have told you?

17    A    Okay.  Can I tell you what?  I'm sorry.  Can

18    you say that again, sir?

19    Q    Well, I just want to find out what your

20    understanding is of your medical condition that requires

21    you to be in a wheelchair.  And --

22    A    Oh.

23    Q    -- I'm asking that to you from the perspective

24    of your understanding based on what the doctors told you

25    as opposed to just your speculation as to why you're in

53

Edgar Solis, 5/3/2024

1    guy.

2        Q     Okay.  All right.  And do you recall where my

3    client shot you before the other guy shot you?

4             MR. SINCICH:  Objection.  Vague and --

5             THE WITNESS:  No.

6    BY MR. KLEHM:

7        Q     Okay.

8        A     I don't recall.

9        Q     All right.  Do you recall where you were when

10   you got shot by my client?

11       A     I don't because I was shot multiple times, sir,

12   and I don't know exactly when or where each one was at.

13       Q     All right.  Could you -- could you physically

14   see the officer who shot you the first time?

15            MR. SINCICH:  Objection.  It -- I'm going to

16   object on his Fifth Amendment grounds and instruct not

17   to answer.

18   BY MR. KLEHM:

19       Q     Okay.  All right.  Were you behind a fence or

20   any other obstruction when you were shot the first time?

21            MR. SINCICH:  Objection.  Fifth Amendment

22   privilege, and instruct not to answer.

23   BY MR. KLEHM:

24       Q     All right.  Are there any other medical --

25   strike that.

74

Edgar Solis, 5/3/2024

1    A    I'm sorry.  Could you repeat that?

2    Q    **Was that your daily driver vehicle prior to**

3  **March 2, 2022?**

4    A    I didn't have that vehicle for too long, sir.

5    Q    **All right.  But you had it for about a month or**

6  **so before March 2, 2022?**

7    A    Yeah, give or take.  Yeah.

8    Q    **Okay.  All right.  All right.  Do you know --**

9  **okay.**

10         **All right.  What -- what did Maggie Meritt tell**

11  **you about what she saw in regards to the -- you getting**

12  **rushed by two people while you were sitting in the green**

13  **Mustang?**

14         MR. SINCICH:  Assumes facts.  Calls for

15  speculation.  And I'm going to instruct not to answer

16  based on Fifth Amendment privilege.

17         MR. KLEHM:  Okay.

18  BY MR. KLEHM:

19    Q    **I'm not asking what you told Maggie, sir.  I'm**

20  **asking did Maggie Meritt, Alexis' mom, tell you that she**

21  **saw two people rushing the green Mustang that you were**

22  **sitting in on March 2, 2022?**

23    A    I haven't spoken to her.

24    Q    **Okay.  Why were you sitting in the car talking**

25  **to Maggie Meritt before two people rushed the car you**

84

Edgar Solis, 5/3/2024

1    And it's a little -- it's a little bit too much detail

2    about the incident, so I'm going to have to instruct him

3    not to answer based on Fifth Amendment privilege.

4    BY MR. KLEHM:

5        Q    Were you in the same physical location at the

6    time you were initially shot compared to the time that

7    you were no longer being shot at during this period of

8    time?

9            MR. SINCICH:  Objection.  Fifth Amendment

10    privilege.  Instruct not to answer.

11    BY MR. KLEHM:

12        Q    Okay.  All right.  Well, the allegations in

13    your complaint state that you were initially shot and

14    then you were trying to surrender when you were shot by

15    another officer.  Is that a fair recollection -- or fair

16    summary of what happened?

17            MR. SINCICH:  Objection.  Fifth Amendment

18    privilege.  Instruct not to answer.

19    BY MR. KLEHM:

20        Q    Did you have a cell phone on you when you were

21    first shot?

22        A    I'm not sure where my cell phone was, sir.

23        Q    Okay.  Do you recall making any phone calls to

24    anyone between the time that you were first shot and the

25    time that the officer was not shooting at you any

88

Peterson Reporting Video & Litigation Services

Edgar Solis, 5/3/2024

1   longer?

2            MR. SINCICH:  I'm going to instruct not to

3   answer based off of Fifth Amendment privilege.

4   BY MR. KLEHM:

5       Q    All right.  Okay.  Do you recall being

6   transported into an ambulance at some point after you

7   were shot?

8       A    No.

9       Q    All right.  What's the last thing you remember

10  after being shot?

11           MR. SINCICH:  Objection.  Fifth Amendment

12  privilege.  Instruct not to answer.  It's also vague and

13  ambiguous, but --

14  BY MR. KLEHM:

15      Q    Okay.  Well, you were conscious at the time

16  that you were shot the first time, correct?

17           MR. SINCICH:  Objection -- well, we'll just say

18  instruct not to answer based off of Fifth Amendment

19  privilege.

20  BY MR. KLEHM:

21      Q    Okay.  During the time that you were shot --

22  according to your -- the doctor's assessment 15 times --

23  did you lose consciousness at any point?

24           MR. SINCICH:  Calls for speculation.  Lacks

25  foundation.  And I'm going to instruct him not to answer

**89**

Edgar Solis, 5/3/2024

1  based off of Fifth Amendment privilege.

2  BY MR. KLEHM:

3      Q    Okay.  Do you recall being shot 15 times on

4  March 2, 2022?

5          MR. SINCICH:  Instruct not to answer based off

6  of Fifth Amendment.

7  BY MR. KLEHM:

8      Q    How many times do you recall being shot on

9  March 2, 2022?

10         MR. SINCICH:  Instruct him not to answer based

11  off of Fifth Amendment privilege.  I believe it's asked

12  and answered as well.

13  BY MR. KLEHM:

14     Q    Do you recall what time of day it was that you

15  were shot on March 2, 2022, at any time that you were

16  shot?

17     A    I don't remember what time it was, sir.  Sorry.

18     Q    Do you recall if it was still light outside at

19  the time you were shot on March 2, 2022?

20     A    I'm pretty sure it wasn't dark, sir.

21     Q    It was not dark?

22     A    Yeah, I don't think it was dark, but I don't

23  know what time it was.  I'm sorry.

24     Q    Okay.

25     A    I don't remember, sir.  I went through a whole

**90**

Peterson Reporting Video & Litigation Services

Edgar Solis, 5/3/2024

1    from the date of the incident while you were being shot?

2          MR. SINCICH:  Objection.  I'm going to instruct

3    him not to answer based off of Fifth Amendment

4    privilege, as well as HIPAA and other privileges related

5    to psychotherapist-patient.

6    BY MR. KLEHM:

7      Q    Other than your family members -- strike that.

8          Other than health professionals and your family

9    members, is there any particular close friend that

10   you've ever talked to about what you recall from the

11   date of the incident?

12     A    I don't recall.  I don't remember.

13     Q    This was certainly the most traumatic thing

14   that's happened to you in your life, correct?

15     A    Yes.

16     Q    And as part of processing that trauma, did you

17   ever feel the need to talk to a close friend about what

18   happened?

19     A    I'm not even sure I completely understand your

20   question.  Like I don't -- I don't like talking to

21   people about it.  You know, if I don't need to, you

22   know -- it's not nothing -- it's not something I like to

23   re-live.

24     Q    Well, you were shot 15 times and lived to tell

25   the story, so did you ever feel the need to, you know,

**101**

Edgar Solis, 5/3/2024

1  go out, you know, with socially and talk about things?
2      A    No.
3      Q    So you didn't have a close buddy that, you
4  know, you'd hang out with and have a beer with or
5  something and talk about --
6      A    I don't drink --
7      Q    Pardon me?
8      A    No.  No.
9      Q    All right.  Were -- as of March 2, 2022, before
10 the incident, were you involved in any gangs?
11         MR. SINCICH:  Objection.  Privileged based on
12 the Fifth Amendment, and instruct not to answer.
13 BY MR. KLEHM:
14     Q    Well, you must have had some friends somewhere.
15 I'm just trying to figure out where that would have
16 been.
17         Were you involved in any clubs or organizations
18 that were not gangs, like a bowling club?  A football
19 club?  A soccer club?  Anything like that, Mr. Solis?
20     A    No.
21     Q    Okay.  Okay.  Before the incident, say in the
22 year before, what did you do for recreational
23 activities?
24     A    I liked to build stuff, motorcycles and such.
25 Things I can no longer do, you know.

**103**

Peterson Reporting Video & Litigation Services

# EXHIBIT "C"

| | |
|---|---|
| **From:** | Alejandro Monguia |
| **To:** | David Klehm |
| **Cc:** | Christina Ramirez; dalekgalipo@yahoo.com; Ashley Reyes; Norman Morrison; Christine Henson; Marcel Sincich |
| **Subject:** | RE: Solis v. State of California |
| **Date:** | Thursday, September 19, 2024 1:33:35 PM |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Good afternoon Mr. Klehm,

We were notified that the prison coordinator mistakenly provided inaccurate dates of availability for Mr. Solis' deposition. Please see the corrected dates of availability below and let us know if any of these might work for your schedule.

10/14: between 0730-1400
10/15: between 0730-1400
10/16: between 0730-1400
10/20: between 0730-1400
10/23 between 0730-1400

**Best Regards,**

**Alejandro E. Monguia, Paralegal** | **Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: amonguia@galipolaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION.  ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.