1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  DAVID KLEHM
   Deputy Attorney General
4  State Bar No. 165302
     600 West Broadway, Suite 1800
5  San Diego, CA 92101
   P.O. Box 85266
6  San Diego, CA 92186-5266
   Telephone:  (619) 738-9733
7  Fax:  (619) 645-2581
   E-mail:  David.Klehm@doj.ca.gov
8
   *Attorneys for Defendant State of California*
9  *(by and through the California Highway Patrol)*
   *[erroneously sued as "State of California"]*
10 *and Michael Bell*

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15

16 | **EDGAR SOLIS,** | 5:23-cv-00515-HDV-JPR |
   | --- | --- |

17            Plaintiff,    **DECLARATION OF DAVID KLEHM IN SUPPORT OF**

18    **v.**                **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN**

19                          **LIMINE NO. 5 TO EXCLUDE**
   **COUNTY OF RIVERSIDE; STATE**  **TESTIMONY OF GREG MEYER**
20 **OF CALIFORNIA; SALVADOR**
   **WALTERMIRE; and DOES 1-10,**   Date:        October 1, 2024
21 **inclusive,**                   Time:        9:00 a.m.
                                     Courtroom:   10D
22            Defendants.           Judge:       *Honorable Hernán D.*
                                                 *Vera*]
23                                  Trial Date:  October 29, 2024
                                    Action Filed: 2/02/2023
24

25            **DECLARATION OF DAVID KLEHM**

26    I, David Klehm, declare as follows:

27    1. I am a duly appointed Deputy Attorney General and am assigned to

28 represent defendants in the above-captioned action. I make this declaration in

support of the attached motion. The facts set forth herein are within my personal knowledge.

2. Attached hereto as Exhibit "A" are true and correct excerpts from the transcript of the Deposition of Greg Meyer taken on July 15, 2024.

3. Attached hereto as Exhibit "B" are true and correct copies of the Rule 26 Report of Greg Meyer including his Curriculum Vitae.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 23, 2024, at San Diego, California.

/s/ David Klehm

David Klehm

SD2023800661
84745150.docx

# EXHIBIT A

1            UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                   ---oOo---

4   EDGAR SOLIS,
                                Case No.
5            Plaintiff,         5:23-cv-00515-HDV-JPR

6   vs.

7   STATE OF CALIFORNIA; MICHAEL
    BELL, and DOES 1-10, inclusive,
8            Defendants.
    _____/

9

10

11           REMOTE DEPOSITION OF

12                GREG MEYER

13           Monday, July 15, 2024

14

15

16   Reported by:  Susan D. Yip
                   CSR #5038
17   No.  86902

18

19

20

21

22

23

24

25

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 52

1           All right.  So opinion Number 3 is really

2    Number 2.  And the answer is yes, I have only documented

3    two opinions in this case.  I apologize for the clerical

4    error.

5        Q    No problem.  I just wanted to make sure I

6    wasn't missing anything in understanding.

7        A    Got it.

8        Q    Based on your training and experience in this

9    case, would it be appropriate and within the training

10    policies and procedures to use deadly force on Mr. Solis

11    if he had a gun in his hand and he was running away while

12    he was in the backyard?

13           MR. KLEHM:  Objection:  Incomplete

14    hypothetical.

15           THE WITNESS:  If Officer Bell reasonably

16    assessed that Mr. Solis was constituting an imminent

17    threat while running with a gun in his hand, either to

18    himself or to people potentially downrange, yes,

19    basically what the opinion is talking about throughout

20    its many pages.

21    BY MR. SINCICH:

22        Q    Okay.  And if a person is running away, all the

23    facts in this case being the same in the backyard,

24    running away with a gun in their hand and nothing else,

25    would that constitute a reasonable perception of an

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 53

1    imminent of death or serious bodily injury?

2              MR. KLEHM:  Objection:  Incomplete

3    hypothetical.

4              THE WITNESS:  Yes.

5              MR. KLEHM:  Vague.

6    BY MR. SINCICH:

7        Q    Whose life is imminently threatened in that

8    hypothetical by a person running away with a gun in their

9    hand?

10             MR. KLEHM:  Objection:  Incomplete

11   hypothetical, vague and ambiguous.

12             THE WITNESS:  First and foremost, Officer Bell

13   himself, and secondarily as the foot pursuit continues

14   and as he is approaching a residence, officers coming

15   from the other side and any residents inside the house if

16   he managed to get inside the house, take a hostage, hurt

17   somebody, et cetera.

18             Primarily, at the outset, certainly Officer

19   Bell from the first time he started chasing him and,

20   yelling at him, drop the gun or I'll shoot, or whatever

21   the exact words were.

22   BY MR. SINCICH:

23       Q    By running away with a gun in your hand, how

24   does that constitute an imminent threat with nothing more

25   to Officer Bell?

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 54

1      A      Because --

2            MR. KLEHM:  Objection:  Sorry, Captain Meyer.

3  Objection:  Vague and ambiguous as to the phrase with

4  nothing more.  Argumentative.

5            You can answer.

6            THE WITNESS:  Because a suspect with a semi --

7  sorry, a suspect with a hand gun in their hand can point

8  the gun and shoot at the officer in a quarter second or

9  less, even while they're running and that's proven by

10  empirical research over and over again, and that's faster

11  than any officer can react to the deadly threat,

12  therefore, it's an imminent deadly threat presented by

13  the suspect that needs to be countered immediately.

14  BY MR. SINCICH:

15      Q      **Even if the suspect doesn't make any movement**

16  **that threatens the shooting of an officer?**

17            MR. KLEHM:  Objection:  Argumentative.

18  Incomplete hypothetical.

19            THE WITNESS:  Yes.  The officer cannot wait for

20  the suspect with the gun in the hand to turn on him or

21  make some kind of another furtive movement that indicates

22  that the suspect might shoot the officer because so far

23  as of this morning, there is 29 dead, murdered by gunfire

24  police officers in this country, most of whom did not

25  have time to react and overcome the threat before getting

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 59

```
 1   completely incoherently worded and incomplete

 2   hypothetical.

 3           You can answer.

 4           THE WITNESS:  Again, it's dependent on the

 5   totality of the circumstances, the officer's reasonable

 6   perceptions about the threat level of that person

 7   standing there or running with the gun.

 8   BY MR. SINCICH:

 9      Q     So the fact of having the gun alone is not

10   enough, you have to have something else, right?

11      A     You have to have a reasonable belief that there

12   is an immediate or imminent threat of death or great

13   bodily harm to yourself or another person in order to

14   qualify to use deadly force.

15      Q     And what facts did Officer Bell testify to that

16   led him to believe that Mr. Solis was in imminent threat

17   of death or serious bodily injury prior to his volley of

18   shots?

19      A     Just from memory without looking at the

20   quotations of the deposition of Officer Bell and my

21   report, I think he articulated very clearly that he knew

22   that Mr. Solis was a violent, dangerous person, who now

23   has a gun in his hand, who's now running away, who is now

24   refusing to drop the gun and surrender, and all of that

25   adds up to more than a sufficient imminent or immediate
```

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 60

1    threat of death or serious bodily injury to Officer Bell

2    and others.

3        Q    Even if Mr. Solis isn't doing anything

4    threatening with the gun?

5            MR. KLEHM:  Objection:  Argumentative.

6            THE WITNESS:  He is doing something threatening

7    with the gun.  He has it in his hand, he is resisting

8    arrest, and in a split second, he can launch bullets at

9    Officer Bell if he chooses to do so.  And I also still

10   wonder where that extra, where that missing bullet is.

11   BY MR. SINCICH:

12       Q    Is it fair to say you don't know based on your

13   review of all the evidence?

14       A    Right.  I documented in my report that there is

15   an expended round in Mr. Solis's handgun that's not

16   accounted for, and I don't know factually if, and it

17   doesn't sound like Officer Bell knows factually if

18   officer, I'm sorry, if Mr. Solis fired a round during the

19   incident or not.

20           But it doesn't really matter for the purposes

21   of my opinion.  It's just something that I noted during

22   the review process.

23       Q    For the purposes of your opinion, do you

24   believe that Mr. Solis attempted to shoot Officer Bell?

25       A    I do not know.

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 62

1    Q    Okay.

2        Regarding the first volley of shots, if

3  Officer Bell could not see whether or not Mr. Solis had

4  a gun in his hand, would it be appropriate to use

5  deadly force against Mr. Solis?

6        MR. KLEHM:  Objection:  Incomplete

7  hypothetical, lacks foundation, calls for speculation,

8  argumentative.

9        THE WITNESS:  If Officer Bell reasonably

10  believed that Mr. Solis had the handgun in his hand,

11  whether he could see it or not, yes, it would be

12  reasonable for him to use deadly force because of the

13  perception reaction response time issue we spoke about

14  earlier.

15  BY MR. SINICICH:

16    Q    Right.  I wanted to ask you about perception

17  reaction.  You do mention that in your report as well,

18  right?

19    A    I did.

20    Q    Do you hold yourself out to be an expert in

21  perception reaction?

22    A    Yes.

23    Q    Do you have any formal training in perception

24  reaction time?

25    A    Yes.

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 63

1      Q      What's your formal training?

2      A      I'm a certified force analyst by the Force

3   Science Institute.  Have been for 14 years, at least I

4   think.

5      Q      Have you ever run any tests on officers'

6   perception reaction time?

7      A      Run like scientific tests like Core Science

8   does, have I run them?  No.

9      Q      Is it fair to say that you have simply read

10  about those tests?

11             MR. KLEHM:  Objection: Argumentative.  How do

12  you think most professors -- sorry.  Go ahead.  You can

13  answer.

14             THE WITNESS:  No, that's not fair to say.

15             I attended a week long training certification

16  course on the subject out of town some years ago, and I

17  have attended before that and since that quite a number

18  of other classes that deal with that subject as well.

19             Have I stood there with a stop watch and a high

20  speed camera and done those scientific tests myself?  No,

21  I have not.  I have watched other people do them and

22  present on them.

23  BY MR. SINCICH:

24      Q      Have you been subject to any of those tests,

25  for instance, to find out your perception reaction time?

EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.
Greg Meyer on 07/15/2024

Page 84

1                    CERTIFICATE OF WITNESS

2

3

4          I, CAPTAIN GREG MEYER , hereby declare that I

5   have read the foregoing testimony, and the same is true

6   and a correct transcription of my said testimony except

7   as I have corrected.

8

9

10                                    Signature

11

12                              07-23-2024

13                                    Date

14

15

16

17

18

19

20

21

22

23

24

25

EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.
Greg Meyer on 07/15/2024

Page 85

1                   CERTIFICATE OF DEPOSITION OFFICER

2              I, SUSAN D. YIP, duly authorized to administer

3    oaths pursuant to Section 2093(b) of the California Code

4    of Civil Procedure, hereby certify that the witness in

5    the foregoing deposition was by me duly sworn to testify

6    to the truth, the whole truth, and nothing but the truth

7    in the within-entitled cause; that said deposition was

8    taken at the time and place therein stated; that the

9    testimony of the said witness was reported by me and

10   thereafter transcribed by me or under my direction into

11   typewriting; that the foregoing is a full, complete and

12   true record of said testimony; and that the witness was

13   given an opportunity to read and correct said deposition

14   and to subscribe the same.

15              I further certify that I am not of counsel nor

16   attorney for either or any of the parties to said

17   deposition and caption named, nor in any way interested

18   in the outcome of cause named in said caption.

19

20   Dated: July 22, 2024

21

22

23

24   SUSAN D. YIP
        CSR #5038
25

**EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.**
**Greg Meyer on 07/15/2024**

Page 87

1          DISPOSITION OF TRANSCRIPT REVIEW

2          I certify that the witness was given the

3  statutory allowable time within which to read and sign

4  the deposition and that:

5  _____  SIGNED (original transcript signed by the

6  Deponent.)

7  _____  UNSIGNED (read transcript - did not sign.)

8  _____  FAILED TO READ AND SIGN (did not contact the

9  reporter relative to transcript review.)

10 _____  NOTICE OF CHANGES AND/OR CORRECTIONS ATTACHED

11 (made a part of the original transcript by binding

12 therewith at the back of the deposition, numbered

13 consecutively following deposition testimony and

14 reporter's certificate.  Copies of said changes and/or

15 corrections are attached thereto.)

16

17

18

19 _____  CSR

20

21 Date:  22 July, 2024.

22

23

24

25

EDGAR SOLIS vs STATE OF CALIFORNIA, ET AL.
Greg Meyer on 07/15/2024

Page 86

1              DEPONENT'S CORRECTION SHEET

2              To add testimony, indicate "Add" and print --

3    the exact words you wish to add.  To delete testimony,

4    indicate "Delete" and print the exact words you wish to

5    delete.

6              I, GREG MEYER , have made the following

7    changes to my deposition taken in the matter of Solis v.

8    State of California taken on July 15, 2024

9    PAGE      LINE          CHANGE

10   _____     _____    _____

11   _____     _____    _____

12   _____     _____    _____

13   _____     _____    _____

14   _____     _____    _____

15   _____     _____    _____

16   _____     _____    _____

17   _____     _____    _____

18   _____     _____    _____

19   _____     _____    _____

20   _____     _____    _____

21   _____     _____    _____

22

23   Date: 07-23-2024    _____

24                            GREG MEYER

25

# EXHIBIT B

**EDGAR SOLIS**

**v.**

**COUNTY OF RIVERSIDE, STATE OF CALIFORNIA,** *et al.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**Case No.: 5:23-cv-00515-HDV-JPR**

**EXPERT WITNESS REPORT**

**BY**

**GREG MEYER**

**May 31, 2024**

Edgar Solis v. County of Riverside, State of California, *et al.*        Greg Meyer's Rule 26 Report

## INTRODUCTION and QUALIFICATIONS

As requested by defense counsel for the State of California and California Highway Patrol (CHP) Officer Michael Bell, I have reviewed and analyzed case documentation for this incident by applying my combined 48 years of knowledge, skills, education, training, and experience as a law enforcement officer and my continuing involvement as a police procedures expert.

My opinions are based on my analysis of the documentation and evidence in this case, then applying my knowledge and understanding of generally accepted professional standards and practices in law enforcement. My opinions are offered with a reasonable degree of professional certainty and are based on:

1. My 48 years of law enforcement experience including 36 years as a sworn police officer, detective, sergeant, lieutenant, captain, reserve officer, and specialist volunteer at the Los Angeles Police Department (LAPD) combined with more than 34 years as a police tactics and procedures consultant; particularly including my experience as captain at the LAPD Academy in charge of training, including tactical training to include lethal and nonlethal Use of Force                        .

2. I chaired LAPD's Use of Force Best Practices Work Group and LAPD's Tactics Training Review Committee, and I continued to serve on both committees for several years after I retired.

3. My personal experience with respect to the investigation, administrative review, and adjudication at the supervisory and command levels at the LAPD for police Use of Force incidents including officer-involved shootings.  For example, I conducted reviews of dozens of police shootings for the LAPD Deputy Chief in charge of the LAPD Use of Force Review Board; and as a captain, I reviewed and presented such cases for adjudication by the LAPD Use of Force Review Board.

4. For two years (2015-2017) I was the designated independent law enforcement expert for the United States Department of Homeland Security's Division of Civil Rights and Civil Liberties where I conducted special investigations involving Use of Force by such agencies as the Border Patrol, ICE, and the Federal Protective Service.

5. On  20 occasions (including 12 police shootings) I have conducted outside reviews of police Use of Force cases as requested by four District Attorney offices that were considering whether to file criminal charges against police officers; and on one occasion for a federal prosecutor after the officer was charged.  In addition, I have conducted outside reviews of seven incidents (including three police shootings) as requested by chiefs of police of local agencies.

6. I wrote the tactical "Lessons Learned" sections of a series of books authored by a former Los Angeles County District Attorney detailing the murders of two dozen peace officers in Los Angeles County.

Edgar Solis v. County of Riverside, State of California, *et al.*         Greg Meyer's Rule 26 Report

7. I hold the Force Science Analyst certification from the Force Science Institute (FSI) and have held the Certified Litigation Specialist credential from Americans for Effective Law Enforcement (AELE).

8. I have taught law enforcement and other professionals (including lawyers and judges) about police Use of Force on more than 50 occasions throughout the United States.

9. I am a member of and receive frequent professional education updates from the International Association of Chiefs of Police (IACP, life member), the Police Executive Research Forum (PERF, life member), the Peace Officers Association of Los Angeles County (POALAC, life member), the International Law Enforcement Educators and Training Association (ILEETA), the California Force Investigators Association (CALFIA), and the Association of Force Investigators (AFI).

10. Each year (except 2020-2022 because of COVID) I produce and instruct at Use of Force and Police Video Evidence and other seminars for POALAC, where I have been a board member for 20 years and chaired the Training Committee for 10 years.

11. I was a member of the design committee and taught classes for the revised California Peace Officer Standards and Training (POST) course on the investigation of officer-involved shootings and arrest-related deaths.

12. I have prior and ongoing work as an expert witness on police procedures, training, equipment, tactics, supervision and review processes, in federal, state, and local courts, both civil and criminal, as well as at arbitrations.

13. I have been an expert witness or consultant for more than 450 cases in the past 34 years, mostly involving police officers making arrests and mostly involving lethal and nonlethal Use of Force. More than 100 of my cases have involved officer-involved shootings.

14. I have testified in court on police procedures matters more than 70 times, and I have been deposed in such matters more than 80 times.

15. While the majority of my work involves the defense of police officers, I have worked on cases adverse to police officers (criminal, civil, arbitrations/hearings) on more than 40 occasions.


**LIMITATIONS**

1. If, after submission of this report, I am asked to consider other relevant materials and/or documents, I may either modify my stated conclusions or offer additional opinions via a supplemental report, as deemed appropriate.

2. I reserve the right to review and to respond if I deem it appropriate to any Plaintiff's police procedures expert report that I might receive in the future.

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

3.  I do not offer legal conclusions.  To the extent that my report may refer to statutes or case law, it is in the context of law enforcement training that refers to such matters.

4.  When there are factual disputes among the parties and witnesses regarding their memories of specific events during the incident, I do not make determinations of the credibility of parties and witnesses, for that is the purview of the trier of fact.

5.  When my report documents quotations and timings from audio/video evidence, I made my best effort to document those things accurately.

## LIST OF DOCUMENTS PROVIDED TO ME BY DEFENSE COUNSEL

1.  First Amended Complaint
2.  Answer to First Amended Complaint
3.  Bates AGO 1-1499
4.  Videos
    a.  KTKM2053
    b.  VVPM1227
    c.  UGGK1245
5.  Hemet PD Dispatch Audio
6.  Combined Documents
7.  Scene Depiction
8.  Combined Photos (10 segments)
9.  DA Findings re CHP Officer Bell
10. CHP's Responses to RFPD (Set
11. Policy and Training Documents
    a.  CHP Officer Bell training record
    b.  A&C 2022 Docs
    c.  EXPANDED COURSE OUTLINE
    d.  HPM 70.6 CH. 1
    e.  LEARNING DOMAIN WORKBOOK
    f.  POST TESTING GUIDELINES
    g.  PRESENTAITON MODULES
    h.  TRAINING AND TESTING
12. Other Pleadings
    a.  CHP Responses Solis Interrogs – Set One
    b.  CHP's Responses to RFPD (Set 1) & POS
    c.  Signed CHP Responses to Pl. Solis RFAs – Set One with POS
    d.  Def. County of Riverside Responses to Plf. Solis RFA Set
    e.  Def County of Riverside Responses to Plf. Solis RFP Set
    f.  Def. County of Riverside Responses to Plf. Solis
    g.  SOLIS Responses to Bell RFP, Set 1
    h.  SOLIS Responses to Bell ROGS Set 1

4

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

13. Depositions
    a. CHP Officer Michael Bell
    b. Corporal Patrick Sobaszek
    c. Lieutenant Arthur Paez
    d. Salvador Waltermire

## **PLAINTIFF'S FIRST AMENDED COMPLAINT REGARDING CHP OFFICER BELL**

- Excessive force
- Negligence

## **INCIDENT SUMMARY**

On March 2, 2022 at approximately 1610 hours (4:10pm), California Highway Patrol (CHP) Officer Michael Bell was working with Hemet Police Department (HPD) Detective Patrick Sobaszek, in plainclothes, in an unmarked sheriff's vehicle, assigned to the Riverside County Regional Gang Task Force. The officers observed then confronted Plaintiff Solis who was the subject of a "BOLO" bulletin (be on the lookout for), who was driving a vehicle described on the bulletin, and who was wanted for three outstanding felony warrants. After CHP Officer Bell approached the driver side of Plaintiff's vehicle and tried to talk him into surrendering for the warrants, Plaintiff suddenly drove away. CHP Officer Bell chased on foot and observed Solis holding a handgun as they ran through a residential neighborhood. CHP Officer Bell reported that he gave verbal commands to drop the gun, but Plaintiff ignored them. After going over fences while chasing the Plaintiff, CHP Officer Bell reported that he observed Plaintiff going through a gate then apparently lying in wait on the other side, armed with a handgun, as Bell approached. CHP Officer Bell fired several rounds at Plaintiff, who then ran to the rear of a nearby residence. CHP Officer Bell fired several more rounds at Plaintiff as Detective Sobaszek arrived. Riverside County Sheriff's Department (RCSD) Deputy Salavadore Waltermire arrived from a different direction and fired 11 shots at the Plaintiff. CHP Officer Bell fired a total of eight shots during the incident. It is not known to me at the time of this report whether any of CHP Officer Bell's rounds struck the Plaintiff. The Plaintiff was treated for multiple gunshot wounds.

## **TOXICOLOGY**

Testing of the Plaintiff found amphetamine, methamphetamine, and PCP.[1]

---

[1] Report of toxicology testing, AGO 392

Edgar Solis v. County of Riverside, State of California, *et al.*         Greg Meyer's Rule 26 Report

**POTENTIAL LIMITATIONS OF VIDEO EVIDENCE**

This case involves video evidence. My training and experience are that video evidence of a police use of force incident is generally very valuable to an investigation, but it has several significant, potential limitations that investigators and adjudicators must be aware of:

- Videos are made with two-dimensional technology, but we live in a three-dimensional world.
- Videos do not always capture the involved officer's point of view.
- Videos may capture objects and events that the officer did not see.
- Videos do not always capture objects and events that the officer did see.
- Videos may capture more information than an officer's brain can process because of the psychological stress experienced in the moment.
- Video cameras do not capture objects and movements that are blocked from the camera lens.
- Videos may document lighting conditions, depth perception, and peripheral fields of view that are different than the human eye.
- Some videos have a low frame rate, thus they do not capture real time.
- Bystander cell phone videos tend not to capture the entire incident.
- Video devices are not always pointed at the action.
- Video devices often capture voices and other sounds that are more valuable to the investigation than what is seen on the video.
- Video cameras are neutral, inanimate objects; thus, videos do not experience the bio-mechanical, physiological and psychological aspects that the involved human being experiences under stress in terms of perception, fear, adrenalin-influenced physiological changes (such as breathing, heart rate, and blood pressure), interpretation of contextual cues, narrowly focused attention ("tunnel vision"), time distortion, sound distortion, memory (formation, storage, and retrieval), and other human performance phenomena.
- Videos of use-of-force incidents tend to cause emotion-based (not fact-based) reactions by viewers, because use of force is generally not pleasant to view.
- In some cases it is advisable to engage the services of a certified forensic video analyst.
- Officers experience events in real time, and only once. Officers do not have the luxury of repeated viewings of videos or manipulating videos (such viewing videos in slow motion or making freeze frame photographs of isolated events, for example) as investigators and adjudicators commonly do.
- Videos are not "the ultimate truth." Investigators and adjudicators must determine what the officer perceived at the time and apply the totality of the circumstances along with policy, training and the law to determine whether or not the officer's perceptions and actions were objectively reasonable.

Edgar Solis v. County of Riverside, State of California, *et al.*        Greg Meyer's Rule 26 Report

## OPINIONS

### Opinion No. 1
**Based on my training and experience along with my review of the evidence in this case, if under the totality of the circumstances CHP Officer Bell reasonably perceived that the actions of Plaintiff Solis created an imminent/immediate danger of death or serious bodily injury to Officer Bell or others, then Officer Bell's use of deadly force conformed with contemporary law enforcement training and procedures, and any reasonable officer could have done the same thing.**

CHP Officer Bell fired his handgun during two shooting sequences.

During Officer Bell's first shooting sequence, he fired two shots in rapid succession, then a pause, then two more shots in rapid succession.[2]

Officer Bell is seen and heard on a surveillance video running from the street then through a driveway yelling, "I'm gonna shoot you!  Drop the gun! Drop the gun!" Then one shot is heard and this surveillance video ends.[3]

Officer Bell is seen and heard on another surveillance video walking quickly through a backyard yelling rapidly, "Drop it! Drop it! Drop it!" then he goes off camera and fires three shots, then yells, "Get on the ground! Get on the ground!"[4]

Officer Bell's post-incident round count and the case reports document that Officer Bell fired eight shots, but I heard only seven shots on the above audio/video segments.[5]  However, this may be a limitation of video technology that does not capture all data, and based upon my training and experience, this may require the services of a certified forensic video analyst.

At the time of this report, it is unknown to me whether any of CHP Officer Bell's rounds struck Plaintiff Solis.

CHP Officer Bell stated during his voluntary interview with Riverside County District Attorney investigators that he chased the Plaintiff on foot, observed Plaintiff holding a handgun, radioed that the Plaintiff had a handgun, gave multiple commands to drop the handgun and warned that he would shoot, he was 100 percent in fear for his life, was concerned about the safety of residents in the neighborhood, and the Plaintiff appeared to have the ability, opportunity and intent to shoot Bell.  Bell fired several rounds at the Plaintiff who appeared to be armed and lying in wait for Bell after going through a gate, and he fired several more rounds after Plaintiff ran next to a nearby house because Bell feared for the safety of other officers who were approaching from the other side, then the Plaintiff went out of Bell's view.[6]

---

[2] Audio recording from surveillance video labeled 603 Hillmer, AGO 504 at timer 0:00:03 – 0:00:06
[3] Surveillance video segment, AGO 514
[4] Surveillance video segment, AGO 524
[5] Photos, Set 3, #71; S&W .40 cal. semi-automatic handgun; full load = 15+1; post-incident = 7+1; and AGO 47-48
[6] CHP Officer Bell's transcribed interview statement, AGO 90-97, 122-123, 127-135, 154-155

Edgar Solis v. County of Riverside, State of California, *et al.*        Greg Meyer's Rule 26 Report

CHP Officer Bell testified at deposition about the fears for his own safety and the safety of others that caused him to use deadly force:

> p. 76
> 12· · · ·A.· · I've experienced with criminals for years and
> 13· ·this type of, this type of person in this situation
> 14· ·committing this crime is one of the most dangerous because
> 15· ·he's wanted for violent crimes that have potential for
> 16· ·prison time and that gives, in my training and experience,
> 17· ·the person a reason to not want to be caught and willing
> 18· ·to do things that normally they wouldn't do, in my
> 19· ·training and experience.
> 20· · · · · · ·So the person had active felony warrants for
> 21· ·violent crimes.· The person was in possession of a firearm
> 22· ·illegally.· And in my training and experience with dealing
> 23· ·with several different people with firearms, the ones who
> 24· ·do not put it down have a reason to not put it down and
> 25· ·that reason usually involves them using the weapon.
> p. 77
> 1· · · · · · ·And I was fearing, number 1, that he would reach
> ·2· ·cover before me which is, which is, it's a really
> ·3· ·terrifying situation to be in.· He's making a conscious
> ·4· ·decision from the way that he fled with the car that he's
> ·5· ·willing to do and risk the public's life to get away.
> ·6· · · · · · ·And maintaining that gun, knowing he's being
> ·7· ·chased by the police let's me know that I'm getting ready
> ·8· ·to get in a very dangerous situation.· And I was in fear
> ·9· ·for my life and also the fear for the residents that,
> 10· ·people who lived in the home that he was approaching. …
> p. 80
> 11· · · ·Q.· · What did you see Mr. Solis do next?
> 12· · · · ·A.· · He went through the gate.· There was another
> 13· ·fence inside of that gate.· It's like chain-link with
> 14· ·slats through the chain-link.· And he turned with the gun
> 15· ·pointing my direction facing me as he kneeled down behind
> 16· ·that, behind that second gate, that second fence.
> 17· · · ·Q.· · Is it your testimony that Mr. Solis pointed the
> 18· ·gun at you?
> 19· · · ·A.· · Yes.
> …
> 23· · · ·Q.· · BY MR. SINCICH:· Did Mr. Solis ever shoot the
> 24· ·gun at you?
> 25· · · · · · ·MR. KLEHM:· It calls for speculation.· Lacks
> p. 81
> 1· ·foundation.
> ·2· · · · · · ·THE WITNESS:· It's probable.

8

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

·3· · · ·Q.· · BY MR. SINCICH:· What do you mean by that?
·4· · · ·A.· · Well, I -- I wouldn't be able to see because --
·5· ·it's hard.· It would be hard for me to know if he shot the
·6· ·weapon for several reasons.
·7· · · ·Q.· · What reasons?
·8· · · ·A.· · One of which is when he's behind cover or
·9· ·something's covering the weapon when he fires, I wouldn't
10· ·see a flash.· I have something, I believe it's called
11· ·auditory exclusion, so when I shoot or shooting's
12· ·happening, I don't necessarily hear the sounds of my
13· ·firearm going off let alone somebody else's.· So I
14· ·wouldn't hear, hear the shot.· And then he, he had a
15· ·revolver which doesn't eject spent cartridges.
16· · · ·Q.· · Who told you that you have auditory exclusion?
17· · · ·A.· · I know it.
18· · · ·Q.· · You don't have auditory exclusion?
19· · · ·A.· · I know that I have it.
20· · · ·Q.· · How do you know that?
21· · · ·A.· · Because I don't hear.· I didn't hear my
22· ·gunshots.
23· · · ·Q.· · You didn't hear your own gunshots?
24· · · ·A.· · Yes.· I have no recollection of hearing my own
25· ·gunshots. …
p. 83
1· · · ·A.· · I saw him duck down after he turned and pointed
·2· ·the weapon at me, he ducked down behind the fence and I
·3· ·could still see his shape through the slats that he, where
·4· ·he was at.
·5· · · ·Q.· · Are you saying that he pointed the gun at you
·6· ·before he went behind the fence?
·7· · · ·A.· · No.
·8· · · ·Q.· · So was he already behind the fence when he
·9· ·pointed the gun at you?
10· · · ·A.· · The fence isn't full height, so if I had to
11· ·approximate, 3 to 4, 3 to 4 feet above the ground so he
12· ·would be above the fence.· Then he ducked down underneath
13· ·it.
14· · · ·Q.· · So he went behind the fence.· And how much of
15· ·his body were you able to see above the fence?
16· · · ·A.· · I would say most of his upper body.
17· · · ·Q.· · From his waist up?
18· · · ·A.· · It would be approximate.· Yes, around there.
19· · · ·Q.· · What hand was the gun in when he pointed it at
20· ·you at that point?
21· · · ·A.· · I don't recall.
22· · · ·Q.· · Was his arm stretched out with the gun in his

9

23· ·hand in a shooting position?
24· · · · · · ·MR. KLEHM:· Objection.· Argumentative.
25· · · · · · ·THE WITNESS:· A shooting position doesn't
p. 84
·1· ·necessarily mean your arm's stretched out, but the gun was
·2· ·in his hands pointed towards me, both hands.
…
p. 85
·4· · · ·Q.· · How long after you saw Mr. Solis point the gun
·5· ·at you did you fire your first shot?
·6· · · ·A.· · Immediately.
·7· · · ·Q.· · When you say immediately, do you mean one
·8· ·second, half a second, 5 seconds?
·9· · · ·A.· · I would approximate within a second.
10· · · ·Q.· · Okay.· Where were you when you fired your first
11· ·shot?
12· · · ·A.· · I believe I was just inside of the gate going
13· ·from the front yard to the backyard.
14· · · ·Q.· · How far were you from Mr. Solis?
15· · · ·A.· · Maybe 12, 12 feet approximately.
…
p. 90
17· · · ·Q.· · BY MR. SINCICH:· Prior to firing your second
18· ·volley of shots, what did you see Mr. Solis doing?
19· · · ·A.· · He was still holding the gun.· I don't recall
20· ·which hand it was in.
21· · · ·Q.· · What was he doing?
22· · · ·A.· · He was in a swinging motion turning towards my
23· ·direction with the gun again.


Plaintiff Solis's .38 caliber, six-shot handgun contained a single expended bullet casing along with five live rounds (see Photo AGO 764).

A moment prior to CHP Officer Bell beginning to shoot his first shot of the incident (when he reported that he observed Plaintiff Solis crouching behind a fence), an unusual metal-on-metal sound can be heard (per the audio from the surveillance video labeled 603 Hillmer, AGO 504 at timer 0:00:03).

Auditory exclusion is a well-documented hearing distortion, and I have experienced it myself:

> The most common hearing distortion is diminished sound, which can range from total loss to sounds seemingly muffled and distant.  This often happens with gunfire.  You may not hear the shots at all, or they may sound like a distant, muffled popping sound.[7]

---

[7] Dr. Alexis Artwohl, Loren W. Christensen, *Deadly Force Encounters*, Paladin Press (1997), p. 40; and I have seen Dr. Artwohl lecture on the subject on several occasions.

Edgar Solis v. County of Riverside, State of California, *et al.*        Greg Meyer's Rule 26 Report

HPD Detective Sobsaszek stated during his interview with Riverside County District Attorney investigators, "I heard Officer Bell yelling like drop the gun … Drop the gun or I'm going to shoot you or something to that effect."[8]

Witness Marlene Sue Biggs told RCSD Investigator Anderson that she heard an officer say four or five times, "Put down your gun!" and "I'll have to shoot you!"[9]

Witness Liliana Rodriguez told RCSD Investigator Sandoval that she heard an officer yelling at someone to lower their firearm.[10]

I concur with RCSD Detective Sobsaszek's deposition testimony about why he believed that CHP Officer Bell's use of deadly force was justifiable:

> p. 70
> 12·······THE WITNESS:· Well, it's the totality of the
> 13· ·circumstances.· So obviously we're looking for this
> 14· ·guy.· We know he's a wanted felon for violent crimes,
> 15· ·you know, not just property crimes.· It's a crime
> 16· ·against persons.· It's carjackings.· It's a violent
> 17· ·crime.· It's weapons offenses.· That's all violent
> 18· ·stuff.
> 19· ······From the initial contact the subject is
> 20· ·uncooperative.· He wouldn't listen to anything the
> 21· ·officers were saying.· He was hiding his hand
> 22· ·underneath that bandanna or towel or something that was
> 23· ·on the center console and then he ultimately fled from
> 24· ·officers.· During the foot pursuit, Officer Bell aired
> 25· ·that the subject had a firearm and he was running away
> p. 71
> 1· ·from him on foot.
> ·2· ······Now, through my training and my own personal
> ·3· ·experience, someone with a firearm running away from
> ·4· ·you can turn and be facing you in a second or two.
> ·5· ·Obviously, we've been trained.· We know that our
> ·6· ·reaction is a lot slower than someone's action.· So
> ·7· ·potentially that suspect could be turning facing you
> ·8· ·getting rounds off before you've even processed what's
> ·9· ·going on in your mind.· So you know, in my professional
> 10· ·opinion and my experience, it is an imminent threat.
> 11· ·It's a deadly threat.· He's armed with a handgun and he
> 12· ·can use that at any time against Officer Bell if he's
> 13· ·chasing him.· And not only Officer Bell, but anyone in

---

[8] HPD Detective Sobsaszek's transcribed interview statement, AGO 281
[9] Report of interview of Marlene Sue Biggs, AGO 248-349
[10] Report of interview of Liliana Rodriguez, AGO 357

14· ·the public or the yard he's running into or, you know,
15· ·the house he's going to try to get into.· I mean, we're
16· ·not going to let someone get into a house and barricade
17· ·himself with an innocent victim either.· So there's
18· ·many factors that go into from my perspective why that
19· ·use of force was justified.

Significantly, then-Sergeant (now Lieutenant) Paez testified in his deposition about things CHP
Officer Bell told him during the post-shooting scene walkthrough about Solis's tactical movements
during the foot chase:

p. 56
10· · · · Q.· ·Lieutenant, do you recall, as you were doing
11· ·this walk-through at the scene with Officer Bell and
12· ·him showing you where he was while he was pursuing the
13· ·suspect and where he was when he fired his two volleys,
14· ·that Officer Bell told you that he saw the suspect,
15· ·Mr. Solis, holding a gun?
16· · · · A.· ·I don't recall if he gave me that statement
17· ·specifically, that he saw him running with a gun.
18· · · · Q.· ·Okay.· Did you hear Officer Bell say that the
19· ·suspect was trying to conceal himself during this foot
20· ·pursuit, that is hiding behind things?
21· · · · · · ·MR. SINCICH:· Compound.
22· · · · · · ·THE WITNESS:· I actually do recall that.
23· ·BY MR. KLEHM:
24· · · · Q.· ·So was it your understanding based on what
25· ·Officer Bell told you at the scene of the shooting that
p. 57
1· ·the suspect wasn't just running from him but was taking
·2· ·positions of cover or concealment during Officer Bell's
·3· ·pursuit of the suspect?
·4· · · · · · ·MR. SINCICH:· Misstates testimony, vague.
·5· · · · · · ·THE WITNESS:· I do recall him indicating that
·6· ·at some point Mr. Solis stopped.
·7· ·BY MR. KLEHM:
·8· · · · Q.· ·And do you recall that at the point Officer
·9· ·Bell said Mr. Solis stopped that Officer Bell told you
10· ·Mr. Solis had stopped to take a position of cover or
11· ·concealment?
12· · · · A.· ·Correct.· Based on my recollection, I believe
13· ·it was through the sliding fence by a -- there may have
14· ·been a pool pump right there.

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

All California peace officers must attend and pass training provided by the Commission on Peace Officer Standards and Training (POST).  Following are excerpts from what California POST teaches peace officers regarding deadly force:[11]

> In some instances, peace officers may have time to evaluate and assess all aspects of a situation. In most situations, split-second decisions must be made. …
>
> Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use objectively reasonable force to effect arrest, to prevent escape, or to overcome resistance. [Penal Code Section 835a(b)]
>
> A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary. [Penal Code Section 835a(c)]
>
> Imminent means: a threat of death or serious injury is "imminent" when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. [Penal Code Section 835a(e)(2)] …
>
> Force options that officers may use in Life Threatening situations:

| Subject's Actions | Description | Possible Force Option |
|---|---|---|
| Life-threatening | Any action likely to result in serious bodily injury or death to the officer or others | - Utilizing firearms or any other available weapon or action in defense of self and others to stop the threat |

If CHP Officer Bell reasonably believed that deadly force was necessary, Officer Bell complied with CHP policy HPM 70.6, 2.e which states:[12]

> e. Deadly Force. An officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary in defense of human life. In determining whether deadly force reasonably appears to be necessary, officers shall evaluate each situation in light of the particular circumstances of each case. If reasonably safe and feasible to do so, officers shall use other available resources and techniques.

---

[11] POST Learning Domain No. 20 (Use of Force, Version 5.3, p. 3-7, 4-3, 4-7, 4-13 and 3-7
[12] Highway Patrol Manual excerpt, AGO 1280

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

Officers are trained that the purpose of shooting at a subject is to stop the threat. In a dynamic situation, it often takes multiple rounds to stop the threat. The United States Supreme Court has recognized that reality:

> "It makes sense that, if officers are justified in firing at a suspect in order to end a severe threat to public safety, **they need not stop shooting until the threat has ended.**"
> *Plumhoff v. Rickard* 134 US 2012 (2014) *[emphasis added]*

Based upon my training and experience, a person holding a handgun in any position and point and shoot at a target in ¼ second or less, which is faster than any police officer or any other person can react to the deadly threat. This fact is easily demonstrated in the courtroom, and I have done so on several occasions.

In addition, I have attended training that demonstrates that a person who is running away from an officer with a handgun in the person's hand can point the firearm back toward the officer and fire a round in less than 1/7 of a second, which is faster than anyone can react to the deadly threat.

A peer-reviewed article entitled, "Reasonableness and Reaction Time" appeared in Police Quarterly, and it states in relevant part: [13]

> A person can act faster than an officer can react. The typical training example given is that a person who has a gun in their hand at their side will be able to shoot it before an officer with a gun, already pointing at the suspect, can fire in response. The time it takes an officer to respond to a threat, also known as the perception-reaction time, can be summed up as follows:
>
> > Mental Sequence (reaction time) + Physical Sequence (movement time) = Response Time
>
> Reaction time is further broken down into essentially three components:
> > 1. Stimulus identification (see what is happening)
> > 2. Response selection (interpret what is happening and choose)
> > 3. Response programming (send signal to body to react)
>
>
> The officer, reacting to the action of the suspect, is at a tremendous disadvantage since he or she must move through all three components. The suspect does not, since they have already assessed the situation and decided on an action, all without the officer's knowledge. All the suspect must do is complete the physical action of firing his weapon. …

---

[13] Blair J, Pollock J, Montague D. et al. Reasonableness and Reaction Time. *Police Quarterly*, 2011;14(4):323–343; see generally Lewinski W. and Hudson B. Reaction Times in Lethal Force Encounters: Time to Start Shooting? Time to Stop Shooting? The Tempe Study. *Police Marksman*. 2003;28(May):26–29; Schmidt RA and Lee T. *Motor Control and Learning: A Behavioral Emphasis (5th ed.)*. Human Kinetics: Champaign, Ill., 2011

Edgar Solis v. County of Riverside, State of California, *et al.*        Greg Meyer's Rule 26 Report

This is the reality of human performance and response. Reactions to changes in stimuli do not occur instantaneously.

In a complex environment …the officer's response time can range from .7 to 1.5 seconds.[14] During that time the suspect may be moving. In the time it takes the officer to complete the response (from identification of the stimulus to the physical sequence), the suspect may end up in a completely different location or facing a different direction. Then we must add more time for the same process to occur in reverse—meaning it will also take time for the officer to perceive the movement of the person and respond. This process is why some suspects are shot in the back. In such cases, when the officer started the process of firing his or her weapon, the suspect was facing them, but in the time it took to fully respond, the suspect had turned. …

This is the reality of human performance and response. Reactions to changes in stimuli do not occur instantaneously. Consider a couple simple examples: You are ending a phone call and are reaching for the end button when the other caller says, "Oh, one more thing" but your finger hits the button, ending the call. You heard it, it registered in your brain at some level, but your brain could not catch up to the motor program already being executed to stop it. Another example is a basketball player going up on a layup, but the ball is rejected by a defender. The shooter's hands still complete the motion of the shot, even though the ball is no longer in his or her hands. It takes time to register the change in stimuli and generate a response.

A tragic, specific example of the reaction-time problem that officers face is the story of the murderers of Officer James MacDonald and Officer Kevin Burrell of the Compton (CA) Police Department by suspect Regis Thomas. As I wrote in the tactical "Lessons Learned" section of a recent book that featured that case:[15]

> Regis Thomas had a gun in his waistband when his vehicle was pulled over for a traffic violation. He did not want to go to jail, and he decided to shoot the officers if given the opportunity.
> During the detention of Regis Thomas, it appears that Officers Burrell and MacDonald were standing in close proximity to him. When Thomas pulled a gun from his waistband, he was able to shoot the officers in one quick motion. By the time the officers learned of Thomas' murderous intent, it was too late. Both officers died with their service revolvers still in their holsters.

Police officers in the United States are universally taught that the legal standard used to determine the lawfulness of a Use of Force is the Fourth Amendment to the United States Constitution. See

---

[14] Lewinski W and Hudson B. The Impact of Visual Complexity, Decision Making and Anticipation: The Tempe Study Experiments 3 & 5. *Police Marksman*. 2003;28(Nov/Dec): 24–27

[15] Cooley S and Schirn R. Blue Lives in Jeopardy: When the Badge becomes the Target (2019), page 97

Edgar Solis v. County of Riverside, State of California, *et al.*        Greg Meyer's Rule 26 Report

*Graham v. Connor* 490 U.S. 386 (1989). *Graham* states in part*, "*The reasonableness of a particular Use of Force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain and rapidly evolving -- about the amount of force that is necessary in a particular situation.  The test of reasonableness is not capable of precise definition or mechanical application."

Officers are taught that "reasonableness" is assessed using *Graham* and from the articulated facts from the perspective of a peace officer with similar training and experience placed in generally the same set of circumstances.  In determining the appropriate level of force, officers evaluate each situation in light of facts and circumstances of each particular case.  Those factors may include (but are not limited to) the following factors, with my [**bracketed comments**] as they pertain to my analysis of the issues in this case:

>    The seriousness of the crime or suspected offense [**According to CHP Officer Bell, Plaintiff Solis (who was wanted for three outstanding felony warrants) was armed and acting in a manner that Bell stated caused an imminent fear of death or serious bodily injury.**]*;*

>    The level of threat or resistance presented by the subject  [**According to CHP Officer Bell, Plaintiff Solis (who was wanted for three outstanding felony warrants) was armed and acting in a manner that Bell stated caused an imminent fear of death or serious bodily injury.**]*;*

>    Whether the subject was posing an imminent threat to officers or a danger to the community  [**According to CHP Officer Bell, Plaintiff Solis (who was wanted for three outstanding felony warrants) was armed and acting in a manner that Bell stated caused an imminent fear of death or serious bodily injury.**]*;*

>    The potential for injury to citizens, officers or subjects  [**According to CHP Officer Bell, Plaintiff Solis (who was wanted for three outstanding felony warrants) was armed and acting in a manner that Bell stated caused an imminent fear of death or serious bodily injury.**]*;*

>    The risk or apparent attempt by the subject to escape [**If Plaintiff Solis escaped capture, the armed suspect would put the community at great risk.**];

>    The conduct of the subject being confronted (as reasonably perceived by the officer at the time) [**According to CHP Officer Bell, Plaintiff Solis (who was wanted for three outstanding felony warrants) was armed and acting in a manner that Bell stated caused an imminent fear of death or serious bodily injury.**]*;*

>    The time available to an officer to plan [**There was no opportunity to plan after the armed wanted felony suspect fled the original detention. It was imperative that CHP**

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

**Officer Bell act quickly to capture the Plaintiff and end the threat to the officers and
the community.**];

The availability of other resources [**Multiple officers were responding to the scene.
CHP Officer Bell was alone when both of his shooting sequences occurred.**];

The training and experience of the officer [**CHP Officer Bell had 10 years of experience
as a peace officer.  His POST training record documents that he regularly performed
qualification shooting and attended training classes on tactics.**]

The proximity or access of weapons to the subject [**According to CHP Officer Bell, the
Plaintiff held a handgun.**];

The environmental factors and/or other exigent circumstances [**The incident occurred
during daylight hours in a residential neighborhood as CHP Officer Bell and others
were attempting to arrest Plaintiff Solis for three outstanding felony warrants.**]

As of January 1, 2020 (in effect on the date of this incident), Subsections (b) and (c) of Section
835a of the California Penal Code sets forth criteria for the use of force by peace officers.  POST
requires that this law revision be taught to peace officers throughout California. Here are my
**[bracketed comments]** as they pertain to the Section 835a (b and c) issues in this case:

- (b) Were the officers using force to effect an arrest, or prevent escape, or to overcome
  resistance?  **[Yes, all three criteria apply.]**

- (c) (1) (A) Was deadly force used to defend against an imminent threat of death or serious
  bodily injury to the officer or to another person? [**According to CHP Officer Bell, the
  Plaintiff was armed with a handgun and refused multiple commands to put it down,
  was running toward a house, and ignored a warning that Bell would shoot.**]

- (c) (1) (B) Was deadly force used to apprehend a fleeing person for any felony that
  threatened or resulted in death or serious bodily injury?  [**CHP Officer Bell was chasing
  an armed wanted felony suspect who was running toward a house and running
  toward other responding officers.**]

- (c) (2) Was deadly force used against a person based on the danger that person poses to
  themselves when the person did not pose an imminent threat of death or serious bodily
  injury to the peace officer or to another person. [**No.**]

**Opinion No. 3**
**Mr. Solis chose to resist arrest for three outstanding felony warrants, and to arm himself
with a handgun, thus Mr. Solis set in motion a series of events that resulted in the shooting.**

Had Mr. Solis merely obeyed the law and surrendered when Officer Bell attempted to detain and
arrest him, the shooting incident would not have occurred.

Edgar Solis v. County of Riverside, State of California, *et al.*          Greg Meyer's Rule 26 Report

## EXHIBITS

1. Curriculum Vitae (Greg Meyer)

## EXPERT QUALIFICATIONS, PUBLICATIONS, AND OTHER CASES

My *curriculum vitae* (see **EXHIBIT NO. 1)** documents my qualifications, the relevant
publications I have authored in the past 10 years (per Rule 26), and it lists all cases in which I
have testified at trial or deposition in the past 4 years (per Rule 26). A brief summary of my
qualifications appears on pages 2-3 of this report.

## COMPENSATION

My normal fee for work including document review, research, meetings, and reports is $450 per
hour after a $5,000 retainer that covers the first eight hours. Travel within California is charged at
$150 per hour (one-way only), plus IRS mileage rate, plus direct expenses (hotel, food, etc., if
any). In-court days are charged at $3,000 flat per day.

**Depositions are charged at $450 per hour payable at the time of deposition; if remote, the
anticipated deposition fee must be mailed to me or counsel by check 10 days in advance.** (If
the amount of time for the deposition is less than the prepaid amount, I will quickly refund the
pro-rated difference; if the deposition takes longer than the number of prepaid hours, the deposing
side must commit on the record to quickly pay the difference.)

Executed on May 31, 2024 at Glendale, California.

GREG MEYER

18

**GREG MEYER**

_____

*CURRICULUM VITAE*

MEYER EXHIBIT NO. 1

**NAME:**          **Greg Meyer**

**LOCATION:**      Los Angeles, CA

**EDUCATION:**     **M.S. - Public Administration, Cal State Los Angeles** (1991)
                   Master's Thesis: "Nonlethal Weapons vs. Conventional Police Tactics:
                    The Los Angeles Police Department Experience"

                   **B.A. - Journalism, Cal State Long Beach** (1979)

                   **A.A. - Journalism, Los Angeles Pierce College** (1974)

**CERTIFICATES**
**& LICENSES:**    **Certified Force Science Analyst**
                   Force Science Institute (2009 - present)

                   **Certified Litigation Specialist**
                   Americans for Effective Law Enforcement (2003 – present)

                   **Certified instructor, TASER X-26** (2005, 2009)

                   **Certified instructor, TASER M-26 Instructor** (2001, 2003, 2005, 2009)

                   **Certified instructor, Tasertron** (various TASER devices, 1992 – 1999)

                   **Teaching Credential (Police Science)**
                   State of California (1981 - Lifetime)

                   **California Peace Officer Standards and Training (P.O.S.T.)**
                   (Basic, Intermediate, Advanced, Supervisory, Management Certificates)

**EMPLOYMENT:**    **Police Tactics and Procedures Consultant**
                   (Author, Lecturer, Consultant, Expert Witness) - self-employed
                   (1989 - present)

                   **Los Angeles Police Department (1976 – 2006)**
                   Officer, Detective, Sergeant, Lieutenant, Captain, including assignments
                   in patrol, detectives, vice, traffic, planning and research, tactical
                   planning, administration, and training.  Retired from active service
                   5-31-06.  Field Reserve Officer (1976-77); Reserve Officer (2006-2012);
                   Specialist Volunteer, LAPD Training Group (2013 – 2020).

                   **Long Beach Police Department**, Patrol Officer (1977-78)

                   **Security Agent, Sears**
                   Anti-shoplift detail in Los Angeles and Costa Mesa (1976-1977)

                   **McDonald's Corporation**, Restaurant Manager, Training Coordinator
                    (1972-76)

**GREG MEYER**

_____

**ASSOCIATIONS:**   **California Force Instructors Association (CALFIA)**
Member (2022 – present)

**Force Science Research Center (FSRC)**
National Advisory Board member (2006 - 2014)
Certified Force Science Analyst (2009 - present)

**Police Executive Research Forum (PERF)**
Life Member (2020-present);  Associate Member (2000 – 2020); advisor, PERF's Center for Force and Accountability (2005 – 2007); panel member for development of Conducted Energy Device guidelines (2005 and 2010); attended annual meetings (2004, 2005, 2006, 2012, 2015, 2016); attended special meeting re Body Worn Cameras (2013); attended Less-Lethal Force Options Symposium (2019)

**Peace Officers Association of Los Angeles County (POALAC)**
Training Seminars Committee chair (2003 - 2011); Board of Directors (2004 – present); member (1981 - present); use of force and video issues seminar producer/ presenter, numerous occasions since 2003

**International Law Enforcement Educators and Trainers Association (ILEETA)**
Member (2016 – present); conference presenter (2017)

**Americans for Effective Law Enforcement (AELE)**
Certified Litigation Specialist (2003 – present); Academic Committee member for AELE's Certified Litigation Specialist program (2002 – present); Chairman, Association of Certified Litigation Specialists (2011-2013); Monthly Law Journal I review panelist (2009 - present); seminar instructor for "Critical Incident Response: Management and Legal Liability" seminar (2002-2005); seminar instructor for "Lethal and Less-Lethal Force" seminar (2006-2013); seminar instructor for "Management, Oversight and Monitoring of Use of Force" (2013); seminar instructor for "Use of Force" (2022)

**American Society for Law Enforcement Training (ASLET)**
Vice Chair (2003-2004); Treasurer (2001-2003); Executive Board (2001-2004); seminar instructor (1994 - 2004); master of ceremonies for annual seminar opening ceremonies in Anchorage (AK), Ontario (CA), and St. Louis (MO) (2002-2004)

**International Association of Chiefs of Police (IACP)**
Life Member; expert reviewer for selected manuscripts for "The Police Chief magazine"; co-author of Electronic Control Weapons model policy revision (2010); Project Advisor, "Electro-Muscular Disruption Technology: A Nine Step Strategy for Effective Deployment" (published April 2005); IACP member (1993 - present); attended multiple IACP Annual Conferences (2004-present)

**PoliceOne.com**
Featured columnist (2006 - 2015)

**GREG MEYER**

_____

**Los Angeles Police Command Officers Association**
Member (1998 - 2006)

**POLICE Magazine**
Advisory Board Member and article contributor (1997 – 2020)

**California Association of Force Instructors (CAFI)**
Presenter and Associate Member (1994 – 2000)

**Public Administration Advisory Committee**
California State University, Los Angeles (1993 - 1998)

**Pi Sigma Alpha** public administration honor society (1990)

**California Homicide Investigators Association**
Past Member

**California Peace Officers Association (CPOA)**
Member (1980 - life member)

**MILITARY:**    **United States Army Security Agency** (1968-72)
Top Secret/Cryptographic security clearance; Radio Traffic Analyst, Airborne Radio Direction Finding Specialist and German Linguist; duty stations at Pleiku and Nha Trang, Vietnam (1969-1970) and Bad Aibling, West Germany (1970 – 1972)

**COMMUNITY SERVICE:**    **Los Angeles Metropolitan YMCA**
Chairman, Teen Task Force (2023 – present); Chairman, Board of Governors (2019 –  2023); Vice Chairman, Board of Directors (2019-present); CEO Search Committee (2021-2022); Teen Task Force (2020-present), Board of Governors Executive Steering Committee (2017 – 2023); Camp Committee member (2018-present); President's Club member (1976 – present); Golden Book of Distinguished Service honoree (2017)

**Mid-Valley YMCA** (San Fernando Valley, CA)
Chairman, Board of Managers (2014 – 2018); Board member (2014 – present); Golden Triangle for Outstanding Service (2014); Philip "Flip" Smith Pillar of the Community Award (2015)

**Tri-Valley YMCA** (San Fernando Valley, CA)
Chairman, Board of Managers (2012 – 2014); (a temporary combination of three YMCA branches under one management/leadership team)

**Los Angeles Police Museum**
Chairman of the Board of Directors (1992-1995; 2007-2010); Vice Chairman (2014); Medallion recipient, National Philanthropy Day (1992); (Director (1989-2014); on-camera interview for "The History Channel" program on the 1997 North Hollywood Bank Robbery Shootout (2008);

**GREG MEYER**

_____

Volunteer of the Year (2000): Co-Chair, Capital Development Campaign (2000-2001); Producer, Annual Jack Webb Awards Night (1996, 1999, 2012); Co-producer, Jack Webb Awards Night (1997, 1998, 2001, 2004); Chief's Circle member (2001-present)

**Valley Traffic Advisory Council** (San Fernando Valley, CA)
Founder (2001); Advisor (2001-2004); Director (2007- 2009); Honorary Member (2009 - present)

**West Valley Family YMCA** (Reseda, CA)
Member, Board of Managers (2011 - 2012); Leadership reunion organizer (2010); Keynote speaker, annual campaign kickoff dinner (2008 & 2009); Chairman's Round Table (2007-present); President's Club (1974-present); Century Club (1974 – 2006); Board of Managers (1973-76); Camp Committee Chairman (1974); Youth in Government advisor (1974)

**HONORS & AWARDS:**

**Peace Officers Association of Los Angeles County (POALAC) Lifetime Achievement Award** (2012)

**POALAC Member of the Year** (2006)

**LAPD Management Achievement Award Nominee**, for leadership accomplishments as a division commanding officer (2001)

**LAPD Management Achievement Award Nominee**, for leadership of Wilshire Area's "Predators to Prison" program targeting parolees-at-large (1996)

**Defensive Tactics Newsletter's Leadership Award** to recognize commitment and contributions to research in training and tactics (1994)

**Detective of the Year** (1983), LAPD Hollywood Division

**Soldier of the Quarter**, U.S. Army Field Station Bad Aibling, Germany (1971)

**Army Commendation Medal**, Vietnam (1969-1970)

**LAPD PROFESSIONAL ACTIVITIES:**

\*   **Advisor to LAPD Assistant Chief re development of LAPD's Integrated Communications and De-Escalation Course** focused on officer-subject de-escalation tactics in non-firearms encounters (2018)

\*   **Leader, LAPD Use-of-Force "Best Practices" Work Group** (2005 – 2006). Appointed by the Chief of Police.  Directed and coordinated

**GREG MEYER**

_____

internal subcommittees and outside consultants examining policy, training, equipment, tactics, post-incident review processes; directed LAPD's TASER Model X-26 field test; LAPD media resource on these issues; turned over the leadership role upon retiring from LAPD in May 2006, and continued as work group member); recognized by the Los Angeles Board of Police Commissioners during its adoption of a revised LAPD use-of-force policy resulting from the four-year project (2009)

* **Member, Professional Advisory Committee,** a work group focusing on police improvement training issues, coordinated by the LAPD Director of Police Training and Education, LAPD Academy (2009 - 2010)

* **Demonstrated TASER-Cam device for the Chief of Police** (2007)

* **Presenter, LAPD Chief of Police and United States Military Delegation from Baghdad, Iraq,** on crime and traffic issues, Los Angeles (August 2006)

* **Participant, National Institute of Justice Conference**, featuring nonlethal weapons session and force-options simulator technology session, Washington, DC (July 2006)

* **Participant, Police Executive Research Forum (PERF)** focus group on officer safety issues, Washington, DC (May 2006)

* **Participant, Police Executive Research Forum (PERF)** Annual Meeting, focused on law enforcement "best practices," San Francisco (April 2006)

* **Presenter, TREXPO-West** on TASERs and Excited Delirium (March 2006)

* **Presenter, LAPD In-Service Training Section Training Day** on TASERs and Excited Delirium (March 2006)

* **Presenter, LAPD Chief of Police press conference**, to announce LAPD's field test of TASER Model X-26 (February 2006)

* **Presenter, Institute for Law Enforcement Administration (ILEA)** national summit on use of force, Plano, TX (January 2006)

* **Presenter, TASER Executive Course** for law enforcement leaders, risk managers, and legal staff, Scottsdale (December 2005)

* **Participant, Police Executive Research Forum (PERF)** conference on handling the mentally ill and use of force, San Diego (December 2005)

## GREG MEYER

_____

* **Member, California Peace Officer Standards and Training Commission (POST) committee** to create a statewide standardized lesson plan for TASER instructor certification, Sacramento (2005)

* **Coordinator, Use of Force Training** for LAPD Commissioners (2005)

* **Presenter, Performance Institute's 2005 Use of Force Summit**, Arlington VA (November 2005)

* **Participant¸ Police Executive Research Forum (PERF)** conference on TASER policy development, Houston (October, 2005)

* **Participant, International Association of Chiefs of Police (IACP)** annual conference, numerous use of force seminars, Miami (September 2005)

* **Participant, Canadian Officer Safety Conference**, Victoria BC (September 2005)

* **Participant, Force Science Research Center (FSRC)** seminar on biomechanics of officer-involved shooting incidents, "Winning Extreme Encounters from Street to Court," Seattle (June 2005)

* **Advisor, Police Executive Research Forum (PERF) Center for Force and Accountability** (June 2005 – present)

* **Participant, Police Executive Research Forum (PERF) Annual Meeting**, focused on international police use of force issues and "best practices," New York City (April 2005)

* **Creator and member of multi-agency custody-death research work group** to inspire the US Surgeon General to involve the medical research community in this persistent law enforcement problem (April 2005)

* **Project Advisor, International Association of Chiefs of Police (IACP) publication, "Electro-Muscular Disruption Technology: A Nine Step Strategy for Effective Deployment**" (published April 2005)

* **Participant, US Department of Justice Symposium on Less-Lethal Weapons Technology**, including workshop interaction with international law enforcement and military chiefs and trainers, Arlington, VA (April 2005)

* **Coordinator**, **Chief of Police-directed review of LAPD use-of-force policies and procedures** by eight nationally renowned use-of-force experts (March 2005)

# GREG MEYER

---

* **Participant, International Association of Chiefs of Police (IACP**) **annual conference**, attended numerous use of force seminars, Los Angeles (November 2004)

* **Participant, LAPD Chief of Police "72-hour Briefings"** following officer-involved shootings and other major incidents (2004-2006)

* **Advisor**, **William H. Parker Foundation** (police training support) (2004-2006)

* **Guest lecturer on police traffic safety and management issues, Pepperdine University's School of Public Policy**, graduate seminar (2004)

* **Chairman, *ad hoc* committee to improve traffic collision reporting efficiency** (2003-2004)

* **Member**, **Los Angeles City Councilman Jack Weiss' Advisory Commission** (2002 – 2004)

* **First-level adjudicator as the commanding officer for hundreds of disciplinary cases** involving public and internal personnel complaints; directed these investigations (1998 – 2006)

* **Presenter of facts, findings and recommendations to the Use of Force Review Board** for officer-involved shootings and other significant use of force incidents (1999 – 2006)

* **Board member, Police Sergeant selection process** (2001)

* **Participant, Law Enforcement Ethics Symposium presented by the FBI** (2001)

* **Reviewer, Police Lieutenant civil service examination** (2001)

* **Assistant Chair, Area Integrity Plan Development Committee** (2000)

* **Member, Board of Inquiry** to examine the suitability of particular officers to be promoted to the rank of detective and sergeant (1999 - 2006)

* **Guest speaker, International Traffic Safety Conference,** Madrid, Spain (2000)

* **Participant, California Office of Traffic Safety's annual conference**, San Diego (2000)

* **Chairman of the LAPD Board of Rights**, a *de novo* disciplinary hearing for a Los Angeles Police Department captain accused of "neglect of duty" in the Department's "Rampart corruption scandal" (2000)

**GREG MEYER**

_____

* **Master of Ceremonies, Valley Traffic Safety Summits** (2000-2004)

* **Member, LAPD Informant Policy and Procedures Review Committee** (2000)

* **Panelist**, **West San Fernando Valley Traffic Summit**, a seminar for community activists, elected officials, and various government agencies pertaining to improving traffic safety (2000)

* **Guest speaker**, **California Assembly Speaker Robert Hertzberg's Public Safety Advisory Committee**, for the Families and Community Advisory Committee, on the subjects of traffic safety and the Rampart corruption probe (1999-2000)

* **Civil service interview and personnel-package-review panelist** for the sergeant's exam process (1999)

* **Member, Board of Inquiry committee** to examine command accountability for reviews of nondeadly force, vehicle pursuits, and fleet safety issues pertaining to policy, training and practices of the Los Angeles Police Department (1999)

* **Commissioner, San Fernando Valley Public Safety Advisory Commission** convened by California State Assembly Speaker Bob Hertzberg (1999 – 2003)

* **Member, Traffic Strategic Committee of the Los Angeles Police Department**, to develop and recommend improvements to the Department's efforts to reduce traffic collisions through education, engineering and enforcement (1999 –2001)

* **Member, Detective Strategy Committee of the Los Angeles Police Department**, to develop and recommend improvements to the Department's efforts to produce high-quality criminal investigations (1998-1999)

* **Member, Short-Term Strategy Committee on Juvenile Issues of the Los Angeles Police Department**, to develop and recommend improvements to the Department's efforts to produce high quality processes involving juveniles (1998-1999)

* **Chairman or Member, numerous Boards of Rights tribunals** to adjudicate disciplinary matters within the Los Angeles Police Department (1998 – 2006)

* **Chairman or Member, numerous Advanced Paygrade Selection Interview Panels** for Lieutenant II and Detective III (1998 – 2005)

## GREG MEYER

---

* **LAPD—West Point Leadership Course instructional cadre member**
(1997 - 2005)

* **Leadership Course instructor** for watch commanders, sergeants, and
field training officers, Los Angeles Police Academy (1995 - 1997)

* **Use-of-Force Review Coordinator**, LAPD Wilshire Area (1993 - 1994)

* **Advisor, Use-of-Force Management Information System Task Force**
(1994)

* **Chairman or Member, numerous Advanced Paygrade Selection
Interview Panels** for Sergeant II, Detective III, Detective II, and Police
Officer III (Field Training Officers and Detective Trainees (1993 –1998)

* **Member, LAPD Tactics Training Review Committee** (1990 – 1993);
chaired the committee 2004 – 2006

* **Rodney King case**: Provided expert consultation on use-of-force issues
to the criminal and internal investigators (1991), state case prosecutors
(1991-92), City Attorney and administrative defense representatives
(1991-1994), U.S. Attorney and Federal Bureau of Investigation (1992);
memo to federal judge re use of force policy/training history (1993);
testified for the City in the civil trial's punitive damages phase (1994).

* **Reviewed and analyzed use-of-force and officer-involved shooting
reports** for the Commanding Officer, Operations-Headquarters Bureau
(1991-93)

* **Conducted a special investigation of a senior police captain at the
direction of the Chief of Police** (1987)

* **Authored "The Watch Commander's Guide for Control of Disasters
and Other Emergencies"** (1982)

* **Developed nonlethal weapons policy and training material** (1980-81)

* **Trained 67 instructor/divisional coordinators and three tactics
supervisors** on the TASER device, LAPD Academy (1981)

* **Researched and/or tested thirteen nonlethal weapons (including
TASERs and chemical sprays** at Planning and Research Division
(1979-1980)

* **Staffed the LAPD Ad Hoc Committee on Nonlethal Weapons** and
created the Nonlethal Control Device Incident Report, later adapted as
LAPD's Use of Force Report (1980)

**GREG MEYER**

_____

    *    **Conducted demonstrations of nonlethal weapons** for the Mayor of Los Angeles, the Los Angeles Board of Police Commissioners, and the media (1980)

    *    **Member/staffer, LAPD's Human Resources Development Committee** (1980-1981)

**SPECIALIZED TRAINING RECEIVED:**   *    **Force Encounters: Investigation Fundamentals, Decision-Making, and Human Performance**, Force Science (16 hours) (Bakersfield CA, 2024)

    *    **Command and Control, De-escalation** (December 2019, Los Angeles), presented by Los Angeles Police Academy staff

    *    **Force Science Annual Conference** (October 2019, Chicago)
- ✓ Injuries Associated with Police Use of Force
- ✓ Kinematic Analysis of Police Officer Shooting Altercations: A Biomechanical Examination of Stationary Shooting, Shooting and Fleeing, and Fleeing and Shooting
- ✓ Striving for a Blockbuster Academy
- ✓ Stress-Activity Mapping: Physiological Responses during General Duty Police Encounters
- ✓ How Characteristics of Visual Perception Intersect with Mistake of Fact Shootings
- ✓ Legal and Practical Aspects of :Police Use of Force: Preparing for High Level Use of Force Events
- ✓ Reasonable but Avoidable? Spotlight on Minnesota Shootings
- ✓ Understanding and Explaining Use of Force Incidents
- ✓ Connecting the Interdisciplinary Dots: Applying Force Science in Law, Policy, and Practice

    *    **Integrated Communications and De-Escalation Course**, Los Angeles Police Academy, focused on officer-subject de-escalation tactics in non-firearms encounters (3 hours) (2018)

    *    **ICAT Training and Implementation (Integrating Communications, Assessment and Tactics),** presented by the Police Executive Research Forum in collaboration with the Los Angeles Police Department, seminar focused on officer-subject de-escalation tactics in non-firearms encounters (8 hours, Los Angeles) (2017)

    *    **Use of Force and Labor Relations Legal Update**, Rains Lucia Stern (8 hours, Newport Beach) (2017)

    *    **Force Science Institute,** update seminar re officer safety tactics, contact-cover, reaction time issues, edged weapon distance, officer and subject movement speeds (4 hours, Long Beach) (2016)

**GREG MEYER**
_____

\*      **Field Encounters with the Mentally Ill, Peace Officers Association of Los Angeles County (POALAC)** (8 hours) (2014)

\*      **Managing, Oversight and Monitoring of Use of Force, Americans for Effective Law Enforcement's (AELE)** (3 days, Las Vegas) (2013)

\*      **Institute for Prevention of In-Custody Death (IPICD)** annual seminar (3 days, Las Vegas) (annually 2006-2013; and 2017, 2019)

\*      **Officer-Involved Shooting Investigation Course, Los Angeles Police Department, Force Investigation Division** (3 days, Los Angeles, 2009)

\*      **Force Science Analyst Certification Course, Force Science Institute** (5 days, San Jose, 2009)

\*      **Lethal and Less-Lethal Use of Force Seminar, Americans for Effective Law Enforcement (AELE)** (3 days, annually or twice per year from 2002-2013)

\*      **Public Safety Discipline and Internal Affairs Course, Americans for Effective Law Enforcement (AELE)** (3 days, 2005, 2009, 2014)

\*      **Training on California Highway Patrol (CHP) Mobile Video Audio Recording System (MVARS)** presented by CHP staff at the California Department of Justice (Los Angeles office) (February 2013)

\*      **Training on TASER X-2 and X26,** presented by Advanced Officer Safety Training staff of the California Highway Patrol (CHP) at the California Department of Justice (Los Angeles office) (August 2012)

\*      **Jail and Prison Legal Issues, Americans for Effective Law Enforcement's (AELE)** (3 days, Las Vegas) (2005, 2011)

\*      **Live-fire weapons, dynamic building entry, and drug-lab investigations, by the Drug Enforcement Administration (DEA), 4 hours (shooting M4, M4A1, HK53, AR15), Los Angeles (1 day, 2007)**

\*      **SWAT Debrief: The Death of LAPD SWAT Officer Randy Simmons** (3 hours, Pleasanton, CA, by instructor Mike Odle, 2011)

\*      **"Suicide By Cop – Revisited,"** sponsored by the Peace Officers Association of Los Angeles County (1 day, 2000)

\*      **Earthquake Management Course, California Specialized Training Institute** (5 days, San Luis Obispo, 1981)

\*      **Civil Disorders Management Course, California Specialized Training Institute** (5 days, San Luis Obispo, 1982)

**GREG MEYER**

_____

* **Basic Detective School, LAPD** (15 days, 1982)

* **Supervisory Development Course, LAPD** (20 days, 1983)

* **Juvenile Procedures School, LAPD** (3 days, 1983)

* **Vice School, LAPD** (5 days, 1986)

* **Supervisory Press Relations Training, LAPD** (1 day, 1988)

* **Homicide School, LAPD** (5 days, 1991)

* **Watch Commander School, LAPD** (5 days, 1993)

* **Effective Leadership Course, LAPD Wilshire Area** (1994)

* **P.O.S.T. Management Course** (10 days, 1993)

* **LAPD--West Point Leadership and Command Program** (24 days, 1996)

* **LAPD Command Development Course** (24 days, 1998-1999)

* **Street Survival Seminar**, Calibre Press (3 days, Honolulu (1999)

* **"Leadership in the 21st Century,"** presented by the University of California at Los Angeles, the University of Southern California, Pepperdine University, and Claremont University (12 days, 1999 – 2003)


**NON-LAPD EXPERT ACTIVITIES:**    Presented multi-media lectures on use-of-force policy, training, equipment, tactics, ethics, and risk-management processes:

  * **Presenter, "Use of Force Video Issues,"** a 4-hour virtual lecture for California Department of Corrections and Rehabilitation (CDCR) on the value and limitations of video evidence and its implications for internal investigations, to an audience of CDCR attorneys, internal affairs investigators, subject matter experts, and attorneys from the Office of Inspector General (twice in August 2021, again in May 2022, again in May 2023)

  * **Presenter, "TASER Tactics & Training Issues,"** a 1-hour live lecture for the TASERCON conference in Las Vegas ( 65 participants) (January 2023) and the POALAC "Use of Force Update" seminar (75 participants) (May 2023)

**GREG MEYER**

_____

* **Presenter, "The George Floyd Case Prosecutions: Beyond the Myths & Misinformation,"** a 1-hour live lecture for Force Science Institute's annual conference in Orlando (280 participants) (June 2022)

* **Presenter, "Use of Force Video Issues,"** a 2-hour live lecture for Americans for Effective Law Enforcement's "Use of Force" seminar in Las Vegas (80 participants) (2022)

* "**Boxing Up CIT and UoF Concepts: Integrating Essential Concepts,"** presenter/co-facilitator, a seminar directed at use of force instructors produced by attorney Missy O'Linn (70 participants) (2019)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues, video and body-cam issues, and TASERs, POST-certified (66 participants) (2017)

* **3rd Annual Law Enforcement Association Leadership Symposium (LEALS),** presenter on the PERF 30 Guiding Principles for Use of Force to police executives, attorneys and police representation unit officials (San Diego 2017)

* **ILEETA (International Law Enforcement Educators and Trainers Association),** presenter on the PERF 30 Guiding Principles for Use of Force at ILEETA's annual conference (St. Louis, 2017)

* **RLS Seminar, "Protecting Cops in the 21st Century,"** presenter on the PERF 30 Guiding Principles for Use of Force to attorneys and police representation unit officials (San Jose, 2016)

* **Use of Force Summit, "Policy, Implementation, and Training in a Changing World,"** presenter on nonlethal weapons policy and training issues; and critique of the PERF 30 Guiding Principles; also acted as master-of-ceremonies for the two-day event (Coral Gables, FL, September 2016)

* **Special Assistant to the Attorney General, California Department of Justice; and deputy to Los Angeles County Supervisor Hilda Solis**, focus on policy, training, equipment, tactics (July 2016)

* **Department of Homeland Security HQ, Office of Civil Rights and Civil Liberties**, focus on policy, training, equipment, tactics, case studies of DHS component agency complaints (Washington DC, May 2016)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, LEOKA (Law Enforcement Officers Killed and Assaulted) and use of force seminar, video and body-cam issues, and TASERs (110 participants) (March 2016)

# GREG MEYER

---

\*    **Harvard-Westlake school, criminal justice seminar**, discussed police use of force issues with students of attorney Laurie Levenson (8 participants) (March 2016)

\*    **Office of the District Attorney, Los Angeles County**, use of force presentation for deputy district attorneys and local law enforcement, focused on video evidence (including body cameras), use of force basics, and nonlethal weapons (500 participants) (November 2015)

\*    **Office of the Public Defender, Los Angeles County**, use of force presentation focused on video evidence (including body cameras), use of force basics, and nonlethal weapons (60 participants) (September 2015)

\*    **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues, video and body-cam issues, and TASERs, POST-certified (55 participants) (April 2015)

\*    **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, "Video Evidence Issues" seminar (October 2014)

\*    **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter use of force seminar, focusing on Force Science issues, video and body-cam issues, and TASERs, POST-certified (50 participants) (April 2014)

\*    **Americans for Effective Law Enforcement's (AELE) Annual Lethal and Less-Lethal Weapons seminar,** Las Vegas, focused on Force Science issues (95 participants) (October 2013)

\*    **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** focused on TASER issues and Force Science issues, Santa Ana (CA) (10 participants) (June 2013)

\*    **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** focused on TASER issues and Force Science issues, Pasadena (CA) (25 participants) (June 2013)

\*    **Americans for Effective Law Enforcement's (AELE) Managing, Oversight and Monitoring of Use of Force,** Las Vegas, focused on TASER issues (135 participants) (April 2013)

\*    **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues and TASERs, POST-certified (65 participants) (January 2013)

# GREG MEYER

_____

* **Americans for Effective Law Enforcement's (AELE) Annual Lethal and Less-Lethal Weapons seminar** Las Vegas, focused on Force Science issues (110 participants) (October 2012)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, "Critical Incidents: Lessons Learned" seminar, focusing on the BART shooting/weapons confusion case (55 participants) (July 2012)

* **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** TASER issues and Force Science issues, Santa Ana (48 participants)    (June 2012)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, "Video Evidence Issues" seminar (80 participants) (May 2012)

* **Travis County Grand Jury (Austin, TX)** to educate Grand Jury members on officer-involved shooting policy, training, tactics, and force-science issues (February 2012)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues and TASERs, POST-certified (55 participants) (February 2012)

* **Labor Relations Information System (LRIS) annual Internal Affairs and Critical Incidents seminar,** focus on arrest-related deaths, use-of-force policy, police trainers, involuntary firearms discharges, Las Vegas (110 participants) (November 2011)

* **Scottsdale (AZ) Police Department supervisors,** focus on TASER issues for supervisors, trainers, and SWAT personnel (25 participants) (June 2011)

* **Public Safety Training Institute (PSTI),** for various "East Bay" (Northern California) law enforcement agencies, 240 participants (two, 4-hour seminars) (July 2011)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on TASER issues, Glendale, CA, 50 participants, POST-certified (June 2011)

* **Independent Cities Risk Management Association (ICRMA)**, representing 22 cities in the greater Los Angeles Area, 50 participants (May 2011)

## GREG MEYER
_____

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on TASER issues, Long Beach, CA, 45 participants, POST-certified (November 2010)

* **Institute for Law Enforcement Administration (ILEA) Use of Force and Sudden In-Custody Death Seminar**, Plano (TX), 75 participants (September 2010)

* **Arroyo Grande (CA) Police Department** (with guests from various Central California Agencies), 40 participants (September 2010)

* **Americans for Effective Law Enforcement's (AELE) Annual Lethal and Less-Lethal Weapons seminar (formerly: Critical Incident Response Management Seminar)**, Las Vegas (60-275 participants), usually twice per year (2002 – 2010)

* **Peace Officers Association of Los Angeles County (POALAC)**, use of force seminar, focusing on TASER and nonlethal weapons issues, 70 participants, POST-certified, Torrance, CA (October 2009)

* **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** Santa Ana (February 2009)

* **Penn State University's Center for Community and Public Safety's annual seminar for Pennsylvania constables**, presenting on the subject of sudden in-custody death, 150 participants including police training personnel, attorneys, and judges (November 2008)

* **Institute for Law Enforcement Administration (ILEA) Use of Force and Sudden In-Custody Death Seminar**, 150 participants, Plano (TX) (2008)

* **Annual TASER Instructor Conference**, 280 participants, Chicago (2007)

* **Beverly Hills Rotary Club**, lunch speaker, police use of force,        120 participants (2007)

* **Presenter, Pepperdine University public-policy graduate seminar**, 20 graduate students, requested by former Los Angeles Police Commissioner Racquelle de la Rocha (2006)

* **Presenter and panelist on Tasers and excited delirium**, 30 law enforcement executives and ACLU members, presented by the New York Civil Liberties Union (Albany) (2006)

* **Performance Institute's 2005 Use of Force Seminar**, 30 participants, Arlington VA (2006)

# GREG MEYER

_____

* **TASER International's Executive Course**, 150 participants, Scottsdale (2005)

* **TASER International's Annual Instructor Seminar**, Las Vegas (150 participants) (2002)

* **Defensive Tactics Newsletter's Annual Training Seminar**, Tallahassee, Florida (25 participants) (2002)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Anchorage, AK (100 participants) (2002)

* **Los Angeles County Sheriff's Department** training day for 1,200 deputies, West Covina, California (2002)

* **The Urban Alliance on Race Relations** conference, "Alternatives to the Use of Lethal Force by Police," Ontario, Canada (2000)

* **California Association of Police Training Officers (CAPTO)**, Norwalk, California; team-teach use-of-force issues with police defense attorney Michael P. Stone; and panelist with Assistant U.S. Attorney Michael Gennaco and plaintiff's attorney Stephen Yagman (160 participants) (2000) (8-hour POST certified)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Richmond, VA (200 participants) (2000)

* **American Society for Law Enforcement Training (ASLET)**, Regional Use of Force Seminar, Ontario, California (50 participants) (1999)

* **American Society for Law Enforcement Training (ASLET)**, Regional Use of Force Seminar, Los Angeles, California (50 participants) (1997)

* **Sudden In-Custody Death Seminar** (presenter and panelist), Washington State Criminal Justice Training Commission (200 participants) (1997)

* **California Association of Police Training Officers (CAPTO)**, Regional Seminar, Fresno, CA (50 participants) (1996) (8-hour POST-certified)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Grapevine, TX (100 participants) (1996)

* **California Association of Police Training Officers (CAPTO)**, Annual Seminar Bakersfield, California (80 participants) (1995)

* **American Society for Law Enforcement Training (ASLET)**, Regional Use of Force Seminar, Albuquerque, New Mexico (50 participants) (1995)

### GREG MEYER

_____

* **South East (Los Angeles County) Training Association**, at the University of Southern California (80 participants) (1995)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Anchorage, Alaska (100 participants) (1995)

* **Los Angeles Sheriff's Academy, for the California Association of Force Instructors (CAFI)** (35 participants) (1994)

* **Central Florida Criminal Justice Institute at Orlando** (20 participants) (1994)

* **Orange County Traffic Officers' Association** (75 participants) (1994)

* **Wisconsin Chiefs' Training Seminar** (200 participants), Milwaukee (1993)

* **Wisconsin Department of Justice Round Table** (35 chiefs and sheriffs), Osh Kosh (1992)

* **Americans for Effective Law Enforcement (AELE) workshop on Critical Liability Issues (**100+ participants), Las Vegas (1991, 1996, 2000)

* **Trained and certified more than 375 TASER instructors** for dozens of law enforcement and corrections agencies, for Tasertron (1991 – 1999)

* **State-licensed chemical spray trainer**, trained hundreds of civilians (1981)

* **Trained more than 20 TASER users**, Inglewood Police Department (1981)

**OTHER EXPERT ACTIVITIES:**

* **Expert witness and consultant on police procedure and use-of-force issues** (1989 – present)

* **Participant, "Cops Charged Criminally: Why Don't the Graham Standard & Qualified Immunity Apply? A Legal Analysis,"** webinar by Calibre Press (November 2023)

* **Producer/presenter, "Use of Force Update,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC) (75 participants) (May 2023)

**GREG MEYER**

_____

\*      **Participant, "Using Human Performance Science to Inform Police Training and Improve Decision Making,"** webinar by Lexipol (May 2023)

\*      **Participant, webinar by Dr. Melis Baban, Stanford University, re "Neurosmart," research re officer performance under stress**, California Force Instructors Association (May 2023)

\*      **Panelist, expert discussion of the Memphis arrest-related death**, International Law Enforcement Training Network (ILET) (January 2023)

\*      **Participant, Force Science Institute's 2022 Conference** (June 2022)

\*      **Participant, RLS seminar, "Use of Force"** (June 2022)

\*      **Participant, "Investigations of Fatal Shootings of Unarmed Civilians by State Department of Justice (AB 1506) (CA Gov. Code 12525.3),"** webinar by RLS (February 2022)

\*      **Subject-matter expert, California POST** member of a work group to develop a micro-course entitled, "Legal Update: Positional Asphyxia" (January 2022)

\*      **Participant, "Emerging Trends in Video Evidence,"** webinar by INPUT-ACE (July 2021)

\*      **Participant, "What the Research Says about Use-of-Force Data" and "Analyzing Use of Force Data"**, webinars by the Police Executive Research Forum (March 2021)

\*      **Participant, "Use of Force Investigations under 835a PC,"** webinar by RLS attorneys (December 2020)

\*      **Participant, "Duty to Intercede – Conceptual, Cultural, Legal Aspects,"** webinar by Lexipol (November 2020)

\*      **Participant, Police Executive Research Forum town hall meeting,** focused on lessons learned and civil disturbance/riot control strategies, featuring a variety of police chiefs across the country (October 2020)

\*      **Participant, "Defunding"/Reforming Police,"** webinar by the Beverly Hills Bar Association (July 2020)

\*      **Participant, "Use of Force Continuum – Seriously?**, webinar by attorney Eric Daigle (June 2020)

\*      **Participant, "Prone Restraint,"** webinar by Dr. Darrell Ross (June 2020)

# GREG MEYER

_____

*      **Participant, "Excited Delirium: 8 Key Law Enforcement Takeaways,"** webinar presented by Lexipol (2019)

*      **Participant, Americans for Effective Law Enforcement (AELE) webinar** on prone restraint issues (June 2020)

*      **Participant, Police Executive Research Forum (PERF) virtual town hall** meeting regarding use of force issues (June 2020)

*      **Consultant to Dr. Lorie Fridell, University of South Florida,** re revision of State of Florida use of force policy (June 2020)

*      **Participant, "Critical Issues Review" seminar**, 4 hours, hosted by San Bernardino Sheriff's Department (March 2020)

*      **Producer/presenter, "Blue Lives in Jeopardy: Surviving Your Attacker,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC) (40 participants) (January 2020)

*      **Manuscript reviewer, "Police Deadly Force Encounters: What the Science Tells Us,"** for "The Police Chief," monthly publication of the International Association of Chiefs of Police (IACP) (December 2019)

*      **Participant, Annual Sudden and In-Custody Death Conference**, presented by the Institute for Prevention of In-Custody Death, Las Vegas (October 2019)

*      **Producer/presenter, "Police Video Issues,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC) (80 participants) (2019)

*      **Keynote speaker, "Blue Lives in Jeopardy: When the Badge Becomes the Target"** book signing event by author Hon. Steve Cooley, retired Los Angeles County District Attorney (2019)

*      **Producer, "Active Shooter and Mass Casualty Events: Prevention, Response & Lessons Learned,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC) (280 participants) (2019)

*      **Participant, PERF/LAPD Less-Lethal Force Options Symposium** (Los Angeles) (March 2019)

*      **RLS Seminar, "Protecting Cops in the 21st Century,"** panelist for use of force and the mentally ill (Costa Mesa, CA) (June 2018)

*      **Participant, Axon Accelerate Conference** (Scottsdale) (June 2018)

# GREG MEYER

_____

* **Producer, "Search and Seizure, Search Warrants, and Interviews & Interrogation,"** two seminar sessions for the Peace Officers Association of Los Angeles County (POALAC) (August & October 2018)

* **Producer, "Officer-Involved Shootings and Internal Affairs Investigations: Getting It Right,"** for the Peace Officers Association of Los Angeles County (POALAC) (June 2018)

* **Participant, The Fidler Institute, Loyola Law School,** presentations on sexual assaults prosecutions and "Me Too," the Mueller investigation, new marijuana laws, new parole procedures (April 2018)

* **Producer, "Surviving Your Attacker: Law Enforcement Officers Killed and Assaulted,"** for the Peace Officers Association of Los Angeles County (POALAC) (May 2018)

* **Producer, "Media Relations and Social Media Strategies for Law Enforcement,"** seminar for the Peace Officers Association of Los Angeles County (POALAC) (March 2018)

* **Conference Chair and Moderator of the Keynote Panel, 2nd Annual Body-Worn Camera Winter Forum: Strategies for Implementation, Operations, and Policy** (two days, San Diego, February 2018)

* **Participant, Annual Sudden and In-Custody Death Conference**, presented by the Institute for Prevention of In-Custody Death, Las Vegas (November 2017)

* **Assisted with the development of TASER policy for the U.S. Immigration and Customs Enforcement**, consulted by Rains, Lucia, Stern law firm in support of the American Federation of Government Employees (October 2017)

* **Appointed as the Law Enforcement and Policing Practices Subject Matter Expert in support of the US Department of Homeland Security Headquarters – Office for Civil Rights and Civil Liberties**, to conduct independent reviews of selected public complaint and use of force incidents by the Border Patrol, ICE, TSA, Secret Service, and other DHS components; rewrite use of force policy; 2016 presentation to DHS headquarters management on use-of-force issues. (2015-2017)

* **Conference Chair and Moderator of the Keynote Panel, Body-Worn Camera Summit**, focused on lessons learned from the early adopters of the technology (two days, San Diego, February 2017)

* **Participant, Town Hall Meeting, Police Executive Research Forum (PERF),** focused on rollout of PERF's ICAT training program (Integrating Communications, Assessment, and Tactics) related to the PERF 30

# GREG MEYER

_____

Guiding Principles for use-of-force policy and training (San Diego, October 2016)

\*    **Editor and contributor re tactical lessons learned, <u>Blue Lives Matter: In the Line of Duty</u>, <u>Blue Lives in Jeopardy: When the Badge Becomes the Target</u>, and <u>Blue Lives Under Fire: Shootouts</u>,** three books documenting murders of police officers in Los Angeles County, by former Los Angeles County District Attorney Steve Cooley and retired Supervising Deputy District Attorney Robert Schirn (Book 1 published in 2017; Book 2 in 2019; Book 3 pending publication)

\*    **Panelist, "Journalist Law School," Loyola Law School,** seminar on how to fairly and accurately investigate allegations of excessive force or other misconduct, for prominent television and print media from around the country (35 participants) (June 2016)

\*    **Participant, The Fidler Institute, Loyola Law School,** presentations on access to justice, terrorism and cyberterrorism, technology innovations in probation and parole, and workplace and consumer protection crimes (April 2016)

\*    **Producer, "Active Shooter Incidents in Southern California,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC)  (150 participants) (April 2016)

\*    **Guest speaker, University of Southern California (USC) Journalism School**, re police use of force issues (March 2016)

\*    **Producer, "Active Shooter Incidents in Southern California,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC)  (375 participants) (November 2015)

\*    **Participant, Town Hall Meeting, Police Executive Research Forum (PERF),** focused on officer-involved shooting investigations, use-of-force policy and training (Phoenix, June 2015)

\*    **Independent review of the death of Nicholas Covelli** (occurred 2003 in Frazier Park, CA), involving bizarre behavior and an officer-involved shooting.  (2015)

\*    **Interviewed by KCRW radio** re TASER history and issues (2015)

\*    **Participant, The Fidler Institute, Loyola Law School,** presentations on police body-cams, line-up identifications, and grand jury processes (2015)

\*    **Interviewed as a Subject Matter Expert** on a Los Angeles Police Department, Training Division project to integrate four California POST perishable-skills training subjects into a training course that mirrors actual field situations (2015)

**GREG MEYER**

_____

\*       **Provided input** for the Police Executive Research Forum (PERF) conference (Washington DC, May 2015) **"Re-Engineering Use-of-Force Policies, Training and Supervision"**

\*       **Consultant**, final draft of **The Law of Self-Defense and The Use of Force in California**, publication produced by Michel and Associates, PC

\*       **Participant, Internal Affairs and Discipline Seminar**, presented by Americans for Effective Law Enforcement (AELE), Las Vegas (2014)

\*       **Guest on PBS "The News Hour" and NPR Radio** in the wake of controversial use of force incidents in New York and Missouri (August 2014)

\*       **JPX Pepper Gun**, handled and test-fired at the Los Angeles Police Department Academy (August 2014)

\*       **Panelist, "Journalist Law School," Loyola Law School,** seminar on how to fairly and accurately investigate allegations of excessive force or other misconduct, for prominent television and print media from around the country (40 participants) (May 2014)

\*       **Independent Expert Reviewer, Office of the Inspector General, Oakland (CA) Police Department,** to review and report on selected OPD use of force cases during internal adjudication and testify at administrative hearings (2014)

\*       **Contributing editor, Electronic Control Weapons samples policies,** LAAW International, LLC (2014)

\*       **Participant, The Fidler Institute, Loyola Law School,** presentations on homicide investigations, sexual assault investigations, police misconduct investigations (2014)

\*       **Outside Independent Expert Advisor, Long Beach (CA) Police Chief's Community Use of Force Advisory Committee** (2013 – 2014)

\*       **Edited article on OC (Pepper Spray) issues** for Americans for Effective Law Enforcement's monthly law journal (April 2014)

\*       **Participant, Annual Sudden and In-Custody Death Conference**, presented by the Institute for Prevention of In-Custody Death, Las Vegas (each November 2005-2013)

\*       **Participant, National Conference on Body Cameras,** Police Executive Research Forum (PERF) conference, Washington DC (September 2013)

**GREG MEYER**

_____

\* **Donor, Smithsonian National Museum of American History, "The Greg Meyer Taser Collection,"** a collection of artifacts and files from TASER inventor Jack Cover and my personal equipment and files (2013)

\* **Reviewer, United States Environmental Protection Agency (EPA)/Criminal Investigation Division (CID) shooting incident** (2013) Conducted independent external review for the EPA Inspector General re a shooting involving EPA/CID personnel in Florida (2013)

\* **Consultant, California Peace Officer Standards and Training (POST)**, re development of their lesson plan for the officer-involved shooting investigations course (July 2012)

\* **Reviewer, two draft National Institute of Justice reports,** "Evaluation of Less Lethal Beanbag Munitions and Launchers" and "Evaluation of Taser X2," (June 2012)

\* **Contributing editor, "Weapons Confusion and Civil Liability" article,** for Monthly Law Journal of American's for Effective Law Enforcement (AELE) (May 2012)

\* **Participant, Critical Issues in Policing Series: An Integrated Approach to De-Escalation and Minimizing Use of Force,** Police Executive Research Forum (PERF) conference (Washington DC, February 2012)

\* **Interviewed by TV Channel11 (Los Angeles)** re the value of videotape evidence; and whether to show it to involved officers before or after interview; live television, "Studio 11 LA" (January 2012)

\* **Participant, Use of Force, Electronic Control Devices, and In-Custody Death—Formulating a Plan,** South Bay Training Committee (Redondo Beach, CA, January 2012)

\* **Participant, Use of Force Investigation and Risk Management lecture** by attorney Randy Means, Labor Relations Information System (LRIS) seminar (2011)

\* **Interviewed by Tammi Downey, producer for Discovery Channel Canada,** re forthcoming documentary on electronic control weapons (2011)

\* **Reviewer, Oakland (CA) use-of-force incident** Conducted independent external review for the chief of police re a use-of-force incident involving TASER, pepper spray, and baton (2010)

\* **Participant, Police Executive Research Forum (PERF) meeting to revise Conducted Energy Device Guidelines** and contributor to the final editing process (Philadelphia) (August  2010)

**GREG MEYER**

_____

\*      **Edited Force Science News article re the Oakland BART Murder trial** (2010)

\*      **Conducted internal affairs investigation** for a local police agency to determine propriety of a TASER use in a street confrontation between an officer and a subject (2010)

\*      **Producer, "The Deadly Mix: 20 Years of Officer Survival Research,"** 8-hour class by former FBI staff who authored "In the Line of Duty," "In the Line of Fire," and "Violent Encounters" (2010)

\*      **Interviewed by Karyn MacEwan, producer for Discovery Channel,** re documentary on TASER inventor Jack Cover (2010)

\*      **Participant, Internal Affairs and Discipline Seminar**, presented by Americans for Effective Law Enforcement (AELE), Las Vegas (2009)

\*      **Participant, New Product Advisory Meeting,** TASER International Headquarters, Scottsdale (2009)

\*      **Interviewed by Hannah Simon, PoliceOne.com**, for an article relating to TASER International's new guidelines for probe target areas (2009)

\*      **Interviewed by Nick Berardini, for a feature-length documentary film on TASERs** (2009)

\*      **Interviewed by Bill Kidd, "Law Enforcement Management Bulletin,"** re TASER policy and training issues for law enforcement executives and supervisors (2009)

\*      **Interviewed by Chuck Remsberg, "Force Sciences News,"** re TASER recommendations from the Braidwood report in British Columbia (2009)

\*      **Advisor, "Research roundup: Latest on Tasers, arrest-related deaths, excited delirium,"** Force Science News Bulletin #127 (2009)

\*      **Co-author, "Electronic Control Weapons Model Policy,"** International Association of Chiefs of Police (IACP), 2010 revision

\*      **Participant, TASER Annual Instructor Conference,** including rollout of the TASER X3 model, Ft. McDowell (AZ) (2009)

\*      **External reviewer, TASER International's revision of "Product Warnings: Law Enforcement"** (July, 2009)

\*      **Participant, TASER International's new product line demonstration** including X-REP shotgun (fired it), Shockwave, and AXON, Los Angeles Sheriff's Academy (2009)

# GREG MEYER

_____

*      **Certified instructor, TASER X-26** (2005, 2009)

*      **Certified instructor, TASER M-26** (2001, 2003, 2005, 2009)

*      **Participant, TASER Executive Conference**, Los Angeles Sheriff's Academy (March 2009)

*      **Co-producer and presenter, Institute for Law Enforcement Administration (ILEA) use of force and sudden in-custody death seminar,** Texas (2008)

*      **External reviewer, TASER International's revision of "Product Warnings: Law Enforcement" document** (January & April 2008)

*      **Participant, Jail and Prison Legal Issues Seminar**, presented by Americans for Effective Law Enforcement, Las Vegas (2008)

*      **Guest¸ TASER Scientific and Medical Advisory Board Meeting** (Las Vegas); participated in discussions of current issues (2007)

*      **Monitored TASER user training for 60 LAPD officers at the Los Angeles Police Academy,** including viewing all officers receive TASER exposures for training purposes (September 18, 2007)

*      **Edited three articles on Electronic Control Weapons issues** for Americans for Effective Law Enforcement monthly law journals (2007)

*      **Peer Reviewer, US Department of Homeland Security's FY 2005 Commercial Equipment Direct Assistance Program** (2006)

*      **Interviewed by Court-TV for a half-hour program on TASERs** (2006)

*      **Participant, International Association of Chiefs of Police (IACP)** annual conference, attended use of force seminars, Boston (2006)

*      **Reviewer, Police Executive Research Forum national survey on Officer Safety/Body Armor**, sponsored by United States Department of Justice, Bureau of Justice Assistance (2006)

*      **Radio talk show guest, debating Amnesty International on stun-gun issues,** Station WWRL (New York) (2006)

*      **Participant, TASER Annual Instructor Conference,** Las Vegas (2006)

*      **Participant, Internal Affairs and Discipline Seminar**, presented by Americans for Effective Law Enforcement (AELE), Las Vegas (2005)

*      **Consultant, TASER issues for Vista Research** (2005 - 2008)

## GREG MEYER
_____

\* **Presenter and panelist on the state and future of law enforcement training,** Academy of Criminal Justice Sciences (ACJS), Las Vegas (2004)

\* **Academic Committee member, Americans for Effective Law Enforcement's "Certified Litigation Specialist" program** (2002 – present)

\* **Presenter, "Rafael Perez and the LAPD Rampart Corruption Game,"** American Society for Law Enforcement Training, Orlando (2001).

\* **Editor, POST instructor-course proposal** "**Weaponless Defense Against Contact Weapons**" for Steve Tarani, Edge Defense (2000)

\* **Panelist, "Mass Violence in America: The Law Enforcement Response," pertaining to Rapid-Response/Active Shooter** tactics for situations like the Columbine school shooting and other in-progress major incidents, for the American Society for Law Enforcement Training (ASLET), Richmond, Virginia (2000).

\* **Reviewer and editor** for police attorney Michael P. Stone's article, "Lethal Force and Law Enforcement Activity-Related Deaths—A Suggested Protocol for Investigation" (1999)

\* **Peer review panel member**, National Institute of Justice, for federal grant proposals relating to the Impact of Technology on Policing, Washington, D.C. (1998)

\* **Presenter, custody-death issues** re _Price v. San Diego_ to the California Association of Force Instructors (CAFI), Los Angeles (1998)

\* **Co-presenter, "The Value of Videotaped Evidence,"** American Society for Law Enforcement Training (ASLET), Los Angeles (1997)

\* **Presenter, causes and prevention of sudden in-custody death**, to the California Association of Force Instructors (CAFI), Beverly Hills, California (1997)

\* **Met with the Director, Science and Technology Division, National Institute of Justice**, on concepts and issues surrounding development of improved nonlethal weapons policy and technology (1994)

\* **Participant in the RAND Corporation's meeting on transfer of less-than-lethal military technology to civilian law enforcement arena**; and attended the House Armed Services Committee, Research and Technology Subcommittee hearing on that subject (1994)

**GREG MEYER**

_____

*     **Consultant to California Peace Officer Association, Standards and Ethics Committee** on nonlethal weapons policy, tactics and training issues (1993)

*     **Consultant to California Peace Officer Standards and Training Commission's round table on pepper spray policy and training standards** (1993)

*     **Quoted extensively** in <u>**Deadly Force: What We Know**</u>, book by William A. Geller and Michael S. Scott, Police Executive Research Forum (1992)

*     **Conducted nonlethal weapons demonstrations and presentations** to the following during 1980-81:

>    *    California Peace Officers Association, Administrative Institutes
>    *    California Highway Patrol Academy, including numerous law enforcement agency and media representatives from the Sacramento area
>    *    California Department of Corrections, Sacramento
>    *    California Specialized Training Institute, San Luis Obispo
>    *    Rio Hondo Police Academy, Whittier
>    *    Redondo Beach Police Department
>    *    Chief of Police, Oakland
>    *    Chief of Police, San Francisco
>    *    Chief of Police, Los Angeles

**LAPD ASSIGNMENT HISTORY:**

2013 - 2020    **Specialist Volunteer, LAPD Training Group**
Consultant to the Commanding Officer, Police Science and Training Bureau, regarding police training issues

2006 - 2012    **Reserve Officer, Los Angeles Police Department**
Consultant to the Chief of Police re use of force issues; consultant to the Director, Police Training and Education re training issues; expert resource for LAPD Media Relations and Professional Standards Bureau re use-of-force issues.

2004 – 2006    **Captain, Training Division** (Captain II)
Line command in partnership with one other captain, more than 300 employees assigned to the three major facilities of the Los Angeles Police Academy, including nonlethal weapons, tactics, firearms, pursuit driving, curriculum development, recruit coordination (est. 600+ recruits annually), in-service course coordination (more than 80 courses annually), e-learning development and implementation.  Chairman, Tactics Training Review Committee.  Manage the training of Department

## GREG MEYER

_____

employees and perform a variety of administrative and coordination functions.  Review/adjudicate police pursuits, employee-involved traffic collisions, use of force and internal affairs cases.  Serve as chairman or associate member of numerous Boards of Rights (internal discipline tribunals to conduct *de novo* hearings of internal affairs cases). Speaker at supervisor, detective, leadership and other schools at the Police Academy. Work closely with the Police Commission, the Chief of Police and other high-ranking officials on use-of-force policy, training, equipment, tactics and post-incident procedures, including policy and training changes for use of the flashlight as an impact device, and shoot/don't shoot at moving vehicles, PIT maneuvers and spike strips. Manage the 2005 re-write of the LAPD Use of Force Sourcebook. Manage the Revolving Training Fund ($1.5 million annually).  Manage the Police Academy's relationship with the College of Canyons.  Manage the Police Academy's relationship with the California Peace Officers Standards and Training Commission (POST) and attend numerous POST Commission meetings.  Manage the LAPD/West Point Leadership Program. Manage the LAPD Personal Protection Equipment and Weapons of Mass Destruction (PPE/WMD) training program, including liaison with the Los Angeles County Sheriff's Department and the California Specialized Training Institute (CSTI).
(Retired from active service May 31, 2006)

1999 – 2004     **Commanding Officer, Valley Traffic Division** (Captain II)
Line command of more than 200 employees assigned to enforce the traffic laws, investigate traffic collisions, conduct follow-up investigations of major injury and fatal collisions, hit/run collisions, and arrests, and educate the public about traffic collision prevention issues.  Review/adjudicate police pursuits, employee-involved traffic collisions, use of force and internal affairs cases. Expert resource for LAPD on pursuit reviews.  Serve as chairman or associate member of numerous Boards of Rights (internal discipline tribunals to conduct *de novo* hearings of internal affairs cases). Review and approve probationary officer rating reports. Liaise with community groups, politicians, the insurance industry, transportation engineers, surrounding police agencies, and others to reduce deaths and injuries on our highways.  Deploy field forces to perform the traffic safety, enforcement and collision investigation mission in a manner that simultaneously assists patrol divisions with their crime control activities.  Coordinated operations of  LAPD/CHP sobriety checkpoints.  Task Force coordinator for crime-suppression operations throughout the San Fernando Valley (2002-2004).

## GREG MEYER

_____

| | |
|---|---|
| 1998 – 1999 | **Commanding Officer, North Hollywood Operations Support Division** (Captain I)<br>Line command of 95 employees assigned to detectives (including homicide, crimes against persons, sexual assaults, suspected child abuse reports, robbery, burglary, auto theft), CRASH [the gang detail], bike/hype detail, career criminal apprehension, in-service training coordination, probationary officer training coordination including approval of probationary rating reports and counseling unsatisfactory probationary officers, personnel investigations, and crime analysis.  Review/adjudicate pursuits, employee-involved traffic collisions, use of force, and internal affairs cases.  Serve as chairman or associate member of numerous Boards of Rights (internal discipline tribunals to conduct *de novo* hearings of internal affairs cases).  Area liaison to the North Hollywood business and security communities.  Act for the Area Commanding Officer in his absence. Creator of the *"Spike Busters!"* crime-control program in support of the FASTRAC command-accountability process.   Act for the Area commanding officer in his absence. |
| 1996 - 1998 | **Watch Commander, West Traffic Division** (Lieutenant)<br>Line supervision of 90 employees, including 10 sergeants assigned to collision investigation, traffic enforcement, community traffic services.  Act for the commanding officer in his absence. Oversee implementation and effectiveness of goals and expectations for employee productivity and work quality. Review/adjudicate employee-involved traffic collisions, use of force, and internal affairs cases.  Monitor and rate the work of supervisory employees.  Instrumental in development and implementation of the division's Vision and Mission Statements, and the Strategic Plan.  Act for the commanding officer in his absence. |
| 1994 - 1996 | **Assistant Commanding Officer, Wilshire Detective Division** (Lieutenant)<br>Line supervision of 90 employees, and coordination responsibilities for follow-up investigations including murder, manslaughter, rape/sexual assaults, child abuse, robbery, aggravated assault, burglary, auto theft, juvenile matters, and other crimes.  Act for the commanding officer in his absence. Monitor and evaluate the work of supervisory employees.  Leader of the Operations-West Bureau Detective Mobile Field Force during emergency operations. Review/adjudicate pursuits, employee-involved traffic collisions, use of force, and internal affairs cases.  Co-creator, "Predators to Prison" program targeting parolees-at-large. Act for the commanding officer in his absence. |

## GREG MEYER
_____

| 1993 - 1994 | **Patrol Watch Commander, Wilshire Area** (Lieutenant)
Line supervision for patrol sergeants and officers responding to emergencies and handling basic calls for service.  Take field command of major tactical incidents.  Supervise the division's probationary officer training coordinator, approve probationary rating reports and conduct feedback and counseling to satisfactory and unsatisfactory probationary officers. Monitor and rate the work of supervisory employees.  Review/adjudicate pursuits, employee-involved traffic collisions, use of force, and internal affairs cases.  Act for the commanding officer in his/her absence. |
|---|---|
| 1991 - 1993 | **Adjutant/Aide to the Commanding Officer and the Assistant Commanding Officer, Operations-Headquarters Bureau** (Senior Sergeant)
Perform administrative functions (including review of internal affairs, use of force, and pursuit investigations) for the command that includes specialized detective functions, narcotics, SWAT, Metropolitan Division, Air Support Division, Tactical Planning Section, and Traffic Coordination Section.  Reviewer of officer-involved shootings and other major use-of-force incidents for the deputy chief who was a member of the LAPD Use of Force Review Board. |
| 1989 – 1991 | **Adjutant to the Commanding Officer, Detective Support Division** (Senior Detective)
Perform administrative functions (including review of internal affairs and use of force investigations) for the command that includes Special Investigation Section, Criminal Conspiracy Section, Gang Information Section, Fugitive/Warrant Section, and Asian Crime Investigation Section. |
| 1988 - 1989 | **Field Detective, Hollywood Area** (Detective)
Conduct follow-up investigations on reports of crime; write and serve search and arrests warrants; make arrests; testify in court. |
| 1986 - 1988 | **Assistant Officer-in-Charge, Traffic Coordination Section** (Senior Sergeant)
Line supervision for the Traffic Legislation and Special Projects Unit.  Act for the officer-in-charge in his absence.  Monitor and rate the work of supervisory employees; supervised work on LAPD pursuit policy revisions supervised the Specialized Collision Investigation Detail (SCID) re major accidents involving the Police and Fire Departments, including pursuits; City-wide coordination of review of police pursuits and employee-involved traffic collisions; wrote policy change to accommodate California Supreme Court ruling that established standards for operating sobriety checkpoints; coordinated planning and operations of LAPD/CHP sobriety checkpoints; authored the Office of |

# GREG MEYER

_____

Operations Management Paper, "1987—The Year of Traffic Enforcement" and several articles for the Chief of Police.

| | |
|---|---|
| 1985 - 1986 | **Officer-in-Charge, Prostitution Enforcement Detail, Hollywood Vice** (Sergeant)<br>Line supervision and performance evaluation for personnel assigned to suppress street prostitution in Hollywood Area. |
| 1984 - 1985 | **Officer-in-Charge, Hollenbeck Footbeats; and Patrol Supervisor** (Sergeant)<br>Line supervision and performance evaluation for uniformed personnel assigned to footbeat patrols in several housing projects and business districts; and perform general patrol supervision. Officer-in-charge of field transportation detail in the Coliseum/USC/Exposition Park venue during the 1984 Olympic Games. |
| 1982 - 1984 | **Detective, Hollywood Area** (Police Officer III)<br>Conduct follow-up investigations on reports of crime (robberies, sexual assaults, auto-related crimes, burglaries and thefts, juvenile). Write and search and arrest warrants, make arrests, testify in court. Honored as the 1983 Hollywood Detective of the Year. |
| 1981 - 1982 | **Researcher, Tactical Planning Section** (Police Officer III)<br>Author of LAPD's Watch Commander's Guide for Control of Disasters and Other Emergencies, as well as numerous other staff research projects. Field command post equipment driver. |
| 1980 - 1981 | **Field Training Officer, Venice Area** (Police Officer III)<br>Train, evaluate and document the performance of probationary police officers, respond to calls for service and conduct general patrol functions, make arrests, testify in court. |
| 1979 - 1980 | **Staff Researcher/Adjutant, Planning and Research Division** (Police Officer II and III)<br>**Primary researcher and field-test coordinator, LAPD's nonlethal weapons program including TASER, teargas sprays, other devices.** Demonstrate these devices to police managers, political officials, and the media. Write LAPD policy and training material on nonlethal weapons. Train police academy staff and front-line supervisors as users of these devices. Author of numerous other staff projects. Perform administrative functions for the commanding officer including review of proposed LAPD policy changes. |
| 1978 - 1979 | **Patrol Officer, Southwest Area** (Police Officer I and II)<br>Respond to calls for service and conduct general patrol functions, make arrests, testify in court. |

**GREG MEYER**
_____

1978                    **Recruit Officer** (Police Officer I)
                        In training at the Academy.

1977 - 1978             **Patrol Officer, Long Beach Police Department** (Police Officer);
                        Respond to calls for service and conduct general patrol functions,
                        make arrests, testify in court.

1976 - 1977             **Reserve Police Officer, Wilshire Area** (Line Reserve Officer)
                        Respond to calls for service and conduct general patrol functions,
                        make arrests, testify in court.

**GREG MEYER**

_____

\* **Interviewed by local and national media** (1980 - present):

| | |
|---|---|
| o Time | * US News & World Report |
| o Police Chief (IACP) | * Longview News-Journal (TX) |
| o Los Angeles Times | * Fox News 11, "Studio 11 LA" |
| o Los Angeles Herald Examiner | * Associated Press (AP) |
| o Los Angeles Daily News | * Money Magazine |
| o Good Housekeeping | * Grand Junction (CO) Sentinel |
| o Aspen Daily News | * Miami Daily Business Review |
| o The Mountain Enterprise | * Court-TV |
| o FOX News  (Tampa, FL) | * POLICE Magazine (multiple occasions) |
| o San Francisco Chronicle | * National Public Radio (NPR) |
| o Austin American-Statesman | * Charlotte (NC) Observer |
| o Police & Security News | * Force Science News (multiple occasions) |
| o Law Enforcement Management Bulletin | * Long Beach (CA) Register |
| o Nick Berardini (documentary on TASERs) | * RT.com |
| o PoliceOne.com | * Discovery Channel |
| o KNBC-TV, KABC-TV, KCBS-TV, | * Kansas City Star |
| o KTLA-TV, KTTV-TV | * Las Vegas Sun Times |
| o The Capital (Anne Arundel, MD) | * Oakland Tribune |
| o WNYC Radio (New York) | * San Francisco Examiner |
| o Slate | * Las Vegas Review Journal |
| o Discovery Channel Canada | * St. Petersburg Times |
| o KLAS-TV Channel 8 (Las Vegas) | * Acadiana Advocate |
| o The Daily (New York) | * KPCC Public Radio |
| o Tampa Bay Times | * KCRW Radio |
| o Columbus (GA) Ledger-Enquirer | * Washington Post |
| o Salt Lake Tribune | * Scripps Television |
| o Baltimore Sun | * BBC |
| o The Daily Breeze (CA) | * CNN Digital |
| o Tallahassee Democrat | * KCBS Radio (San Francisco) |
| o The Today Show (NBC) | * Daily Mirror (London, UK) |
| o The News Hour (PBS) | * Boston Herald |
| o Hawaiian News Now | * Forbes |
| o USA Today | * KUOW Radio-Seattle |
| o Harvard-Westlake Chronicle | * TheInfluence.org |
| o Reuters | * New York Times |
| o The Independent (Colorado Springs) | * Bucks County Courier Times |
| o Viewpoints Radio | * Los Angeles Magazine |
| o Spectrum News | * The Oregonian |
| o The California Newsroom | |

## GREG MEYER

_____

**PARTIAL BIBLIOGRAPHY:**      <u>PAST 10 YEARS</u>

**"Rodney King: 30 Years Later,"** op-ed article for the Los Angeles Daily Journal on the 30th anniversary of the incident (March 3, 2021)

**"How Do We Save More Blue Lives from Being Murdered?"** article for PoliceOne.com (2020)

**"Tactics and Training: A Half-Century of Change—where we've been, where we're at, where we're going,"** three-part article series for POLICE magazine (2019)

**"Will the New Year Be Safer for You?,"** guest editorial, POLICE Magazine (January 2018)

Authored the "tactical lessons learned" sections of three books documenting murders of police officers in Los Angeles County: _Blue Lives Matter: In the Line of Duty_ (2017)_; Blue Lives in Jeopardy: When the Badge Becomes the Target_ (2019); _and Blue Lives Under Fire: Shootouts_ (2021)

**"LAPD's Use of Force Policy Revision,"** article, POLICE magazine online (April 2017)

"**A Revolution in Use-of-Force Policy and Training?"** article, POLICE magazine (March 2016)

**"Nonlethal weapons revisited: A tactical update,"** article, PoliceOne.com (September 2015)

"**Improving ECW Tactics and Policies,"** article, POLICE magazine (August 2015)

**"Body Cameras –Keep It Real,"** guest editorial, POLICE magazine (June 2015)

**"Drafting Your Agency's Body-Worn Camera Policy,"** lead article, POLICE magazine body-camera supplement (June 2015)

"**Digital Video: Working Under the Microscope,**" article, POLICE magazine online edition (June 2015)

**"Unarmed Suspects and 'Un-brained Media,"** guest editorial, POLICE magazine (October 2014)

# GREG MEYER

_____

**LITIGATION
and CASE REVIEW
ACTIVITIES:**        <u>1989-PRESENT:  CASES: 448      DEPOSED: 86      TESTIFIED: 70</u>

### Cases are organized by:

- **Police defense cases (civil)**
- **Plaintiff cases against police (civil)**
- **Police defense cases (criminal)**
- **Police prosecution cases (criminal)**
- **Arbitrations, administrative appeals for officers**
- **Arbitrations, administrative appeals against officers**
- **Other matters**
- **Independent case reviews for prosecutors**
- **Independent case reviews for law enforcement agencies**

## <u>PAST 4 YEARS OF TESTIMONY</u>

### <u>Police defense cases (civil)</u>

**Hereford v. City of Hemet** (CA) (2023) (Federal)
Expert witness for the defense, civil suit alleging excessive force, false arrest (Deposed)

**Nguyen v. City of Garden Grove** (CA) (2023) (Federal)
Expert witness for the defense, civil suit alleging wrongful conviction, detective negligence (Deposed)

**Lennox v. City of Sacramento** (CA) (2023) (Federal)
Expert witness for the defense, civil suit alleging excessive force, officer-involved shooting, TASER involved (Deposed)

**Pineda v. Officer Manzano** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging false arrest, excessive force (Testified)

**Soliz v. CHP** (CA) (2022)
Expert witness for the defense, civil suit alleging negligence regarding provision of medical care during arrest (Testified)

**Valdez v. Roberts** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging excessive force, negligence (Deposed; Testified)

**GREG MEYER**
_____

**Lorenz and Popat v. County of San Bernardino** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging false arrest, excessive force (Deposed)


**Maroney v. County of Riverside** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging false arrest, excessive force (Deposed)

**KJP v. County of San Diego (re-trial)** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging excessive force, arrest-related death TASER issues (Testified)

**Costa v. State of California** (CA) (2022)
Expert witness for the defense, civil suit alleging excessive force, arrest-related death (Deposed)

**Almahmodi v. City of La Mesa** (CA) (2021) (Federal)
Expert witness for the defense, civil suit alleging battery, unnecessary handcuffing, failure to intervene, ADA violations, Monell (Deposed)

**J.A., Ruiz v. County of San Bernardino** (CA) (2021) (Federal)
Expert witness for the defense, civil suit alleging excessive force, wrongful death, officer-involved shooting (Deposed)

**Skommesa v. City of Murrieta** (CA) (2021) (Federal)
Expert witness for the defense, civil suit alleging excessive force (Deposed)

**Arlington v. County of Santa Barbara** (CA) (2021)
Expert witness for the defense, civil suit alleging excessive force (Deposed; testified)

**Mendez v. City of Chicago** (IL) (2021) (Federal)
Expert witness for the defense, civil suit alleging negligence during search warrant service (Deposed)

**Gonzalez v. State of California** (CA) (2021) (Federal)
Expert witness for the defense, civil suit alleging excessive force, arrest-related death, TASER and OC pepper spray involved (Deposed)

**Anumudu v. Salvador** (CA) (2020) (Federal)
Expert witness for the defense, civil suit alleging false arrest (Deposed)

**Lacy v. County of San Diego** (CA) (2019)
Expert witness for the defense, civil suit alleging excessive force, deputy-involved shooting (Deposed; testified)

**Barron v. State of California (CHP)** (CA) (2018) (Federal)
Expert witness for the defense, civil suit alleging excessive force, fatal officer-involved shooting, TASER issues (Deposed; testified)


**Plaintiff cases against police (civil)**

# GREG MEYER

_____

**Ratlieff v. City of Ft. Lauderdale**  (FL) (2023) (Federal)
Expert witness for the plaintiff, civil suit alleging violation of First Amendment rights, excessive force at a demonstration (Deposed)

**Gray v. City of St. Louis**  (MO) (2022) (Federal)
Expert witness for the plaintiff, civil suit alleging false arrest, excessive force (TASER, pepper spray, physical force) (Deposed)

**Cardenas v. Saladen** (AZ) (2019) (Federal)
Expert witness for the plaintiff, civil suit alleging unlawful entry, false arrest, excessive force, TASER related (Deposed)

## Police defense cases (criminal)

**People v. Captain Taylor and Officer Dingman** (OK) (2021)
Expert witness for the criminal defense, officers accused of murder, TASER involved (Testified)

## Police prosecution cases (criminal)

**State of California v. Deputy Luke Liu** (2019) (California)
Expert witness for the prosecution, deputy accused of excessive force, deputy involved shooting (Testified)

## Arbitrations, administrative appeals for officers

**Officer Alatorre admin appeal** (CA) (2021)
Expert witness for the officer in an administrative hearing related to discipline resulting from use of an impact weapon (flashlight) to suspect's head (Testified)

## Arbitrations, administrative appeals against officers

**Sivilay v. Riverside County** (CA) (2022)
Expert witness for the agency; appeal of termination regarding excessive force (Testified)

## Other matters

**People v. David Monzon** (CA) (2023)
Expert witness for the prosecution, criminal case for 69PC (resisting by threat or violence), TASER and takedown issues during active resistance and assaultive behavior by the suspect (Testified)

## Independent case reviews for prosecutors

**re El Centro Police** (CA) (2023)

# GREG MEYER
_____

Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Bakersfield Police** (CA) (2023)
Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Tustin Police** (CA) (2023)
Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Los Angeles Police** (CA) (2022)
Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Santa Paula Police** (CA) 2020
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Santa Paula Police** (CA) 2020
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Santa Paula Police** (CA) 2020
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Santa Paula Police** (CA) 2020
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Ventura County Sheriff** (CA) 2020
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty deputy in a jail setting, with potential criminal charges (Work completed)

**re Los Angeles Sheriff** (CA) 2018
Expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Long Beach Police** (CA) 2018

**GREG MEYER**

_____

Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Tehachapi Police** (CA) 2018
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer with potential criminal charges (Work completed)

**re Sacramento County Sheriff** (CA) (2017)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Los Angeles Police** (CA) (2017)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Long Beach Police** (CA) (2016)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by on-duty law enforcement officers ,with potential criminal charges (Work completed)

**re Montebello Police** (CA) (2015)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use of force incident by on-duty law enforcement officers with potential criminal charges (Work completed)

**re California Highway Patrol** (CA) (2015)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use of force incident by an on-duty law enforcement officer with potential criminal charges (Work completed)

**re Gardena Police** (CA) (2014)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a fatal shooting by on-duty law enforcement officers with potential criminal charges (Work completed)

**re Deputy US Marshal** (CA) (2009)
Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a fatal shooting by an off-duty law enforcement officer, with potential criminal charges (Work completed)

**United States v. Thompson** (WA) (2009) (Federal)
Non-testifying expert consultant for an Assistant United States Attorney, retained to conduct an independent review of use of force issues for a federal civil rights prosecution of a local police officer, including TASER issues. (Work completed)

**Independent case reviews for law enforcement agencies**

**[caption confidential]**  (FL) (2022) (Jones)

**GREG MEYER**

_____

Non-testifying expert consultant for a local police agency, to conduct an independent review of a use-of-force incident by a patrol officer, TASER involved, for internal affairs purposes (Work completed)

**[caption confidential] CDCR Incident** (CA) (2022) **(**Bravo)
Non-testifying expert consultant for the agency, to conduct an independent review of a use of physical force by a corrections officer, for internal affairs purposes.  (Work completed)

**[caption confidential] Patrol UOF Incident** (MT) (2022) (Hardin)
Non-testifying expert consultant for a police chief, to conduct an independent review of a fatal officer-involved shooting by an on-duty patrol officer, TASER involved, for internal affairs purposes. (Work completed)

**[caption confidential]  Patrol OIS Incident** (CA) (2021)(Indio)
Non-testifying expert consultant for a police chief, to conduct an independent review of a fatal officer-involved shooting by an on-duty patrol officer, for internal affairs purposes. (Work completed)

**[caption confidential] Patrol UOF Incident** (CA) **(**2019) [KC file ending in 2469]
Non-testifying expert consultant for a law enforcement agency; retained to conduct an independent review of a use of force incident by an on-duty patrol sergeant for internal affairs purposes. (Work completed)

**[caption confidential] Jail UOF Incident** (CA) **(**2018) [KC file ending in 9860]
Non-testifying expert consultant for a law enforcement agency; retained to conduct an independent review of a use of force incident by an on-duty custody deputy for internal affairs purposes. (Work completed)

**[caption confidential]  Patrol OIS Incident** (CA) (2018) [SB file ending in 7369]
Non-testifying expert consultant for a law enforcement agency; retained to conduct an independent review of a fatal officer-involved shooting by an on-duty patrol deputy for internal affairs purposes. (Work completed)

**GREG MEYER**

_____

*CURRICULUM VITAE*

**NAME:**  **Greg Meyer**

**LOCATION:**  Los Angeles, CA

**EDUCATION:**  **M.S. - Public Administration, Cal State Los Angeles** (1991)
Master's Thesis: "Nonlethal Weapons vs. Conventional Police Tactics: The Los Angeles Police Department Experience"

**B.A. - Journalism, Cal State Long Beach** (1979)

**A.A. - Journalism, Los Angeles Pierce College** (1974)

**CERTIFICATES & LICENSES:**

**Certified Force Science Analyst**
Force Science Institute (2009 - present)

**Certified Litigation Specialist**
Americans for Effective Law Enforcement (2003 – present)

**Certified instructor, TASER X-26** (2005, 2009)

**Certified instructor, TASER M-26 Instructor** (2001, 2003, 2005, 2009)

**Certified instructor, Tasertron** (various TASER devices, 1992 – 1999)

**Teaching Credential (Police Science)**
State of California (1981 - Lifetime)

**California Peace Officer Standards and Training (P.O.S.T.)**
(Basic, Intermediate, Advanced, Supervisory, Management Certificates)

**EMPLOYMENT:**  **Police Tactics and Procedures Consultant**
(Author, Lecturer, Consultant, Expert Witness) - self-employed
(1989 - present)

**Los Angeles Police Department (1976 – 2006)**
Officer, Detective, Sergeant, Lieutenant, Captain, including assignments in patrol, detectives, vice, traffic, planning and research, tactical planning, administration, and training.  Retired from active service 5-31-06.  Field Reserve Officer (1976-77); Reserve Officer (2006-2012); Specialist Volunteer, LAPD Training Group (2013 – 2020).

**Long Beach Police Department**, Patrol Officer (1977-78)

**Security Agent, Sears**
Anti-shoplift detail in Los Angeles and Costa Mesa (1976-1977)

**McDonald's Corporation**, Restaurant Manager, Training Coordinator (1972-76)

**GREG MEYER**

_____

| | |
|---|---|
| **ASSOCIATIONS:** | **California Force Instructors Association (CALFIA)** |

**California Force Instructors Association (CALFIA)**
Member (2022 – present)

**Force Science Research Center (FSRC)**
National Advisory Board member (2006 - 2014)
Certified Force Science Analyst (2009 - present)

**Police Executive Research Forum (PERF)**
Life Member (2020-present);  Associate Member (2000 – 2020); advisor, PERF's Center for Force and Accountability (2005 – 2007); panel member for development of Conducted Energy Device guidelines (2005 and 2010); attended annual meetings (2004, 2005, 2006, 2012, 2015, 2016); attended special meeting re Body Worn Cameras (2013); attended Less-Lethal Force Options Symposium (2019)

**Peace Officers Association of Los Angeles County (POALAC)**
Training Seminars Committee chair (2003 - 2011); Board of Directors (2004 – present); member (1981 - present); use of force and video issues seminar producer/ presenter, numerous occasions since 2003

**International Law Enforcement Educators and Trainers Association (ILEETA)**
Member (2016 – present); conference presenter (2017)

**Americans for Effective Law Enforcement (AELE)**
Certified Litigation Specialist (2003 – present); Academic Committee member for AELE's Certified Litigation Specialist program (2002 – present); Chairman, Association of Certified Litigation Specialists (2011-2013); Monthly Law Journal I review panelist (2009 - present); seminar instructor for "Critical Incident Response: Management and Legal Liability" seminar (2002-2005); seminar instructor for "Lethal and Less-Lethal Force" seminar (2006-2013); seminar instructor for "Management, Oversight and Monitoring of Use of Force" (2013); seminar instructor for "Use of Force" (2022)

**American Society for Law Enforcement Training (ASLET)**
Vice Chair (2003-2004); Treasurer (2001-2003); Executive Board (2001-2004); seminar instructor (1994 - 2004); master of ceremonies for annual seminar opening ceremonies in Anchorage (AK), Ontario (CA), and St. Louis (MO) (2002-2004)

**International Association of Chiefs of Police (IACP)**
Life Member; expert reviewer for selected manuscripts for "The Police Chief magazine"; co-author of Electronic Control Weapons model policy revision (2010); Project Advisor, "Electro-Muscular Disruption Technology: A Nine Step Strategy for Effective Deployment" (published April 2005); IACP member (1993 - present); attended multiple IACP Annual Conferences (2004-present)

**PoliceOne.com**
Featured columnist (2006 - 2015)

# GREG MEYER

_____

**Los Angeles Police Command Officers Association**
Member (1998 - 2006)

**POLICE Magazine**
Advisory Board Member and article contributor (1997 – 2020)

**California Association of Force Instructors (CAFI)**
Presenter and Associate Member (1994 – 2000)

**Public Administration Advisory Committee**
California State University, Los Angeles (1993 - 1998)

**Pi Sigma Alpha** public administration honor society (1990)

**California Homicide Investigators Association**
Past Member

**California Peace Officers Association (CPOA)**
Member (1980 - life member)

**MILITARY:**      **United States Army Security Agency** (1968-72)
Top Secret/Cryptographic security clearance; Radio Traffic Analyst, Airborne Radio Direction Finding Specialist and German Linguist; duty stations at Pleiku and Nha Trang, Vietnam (1969-1970) and Bad Aibling, West Germany (1970 – 1972)

**COMMUNITY SERVICE:**      **Los Angeles Metropolitan YMCA**
Chairman, Teen Task Force (2023 – present); Chairman, Board of Governors (2019 –  2023); Vice Chairman, Board of Directors (2019-present); CEO Search Committee (2021-2022); Teen Task Force (2020-present), Board of Governors Executive Steering Committee (2017 – 2023); Camp Committee member (2018-present); President's Club member (1976 – present); Golden Book of Distinguished Service honoree (2017)

**Mid-Valley YMCA** (San Fernando Valley, CA)
Chairman, Board of Managers (2014 – 2018); Board member (2014 – present); Golden Triangle for Outstanding Service (2014); Philip "Flip" Smith Pillar of the Community Award (2015)

**Tri-Valley YMCA** (San Fernando Valley, CA)
Chairman, Board of Managers (2012 – 2014); (a temporary combination of three YMCA branches under one management/leadership team)

**Los Angeles Police Museum**
Chairman of the Board of Directors (1992-1995; 2007-2010); Vice Chairman (2014); Medallion recipient, National Philanthropy Day (1992); (Director (1989-2014); on-camera interview for "The History Channel" program on the 1997 North Hollywood Bank Robbery Shootout (2008);

**GREG MEYER**
_____

Volunteer of the Year (2000): Co-Chair, Capital Development Campaign (2000-2001); Producer, Annual Jack Webb Awards Night (1996, 1999, 2012); Co-producer, Jack Webb Awards Night (1997, 1998, 2001, 2004); Chief's Circle member (2001-present)

**Valley Traffic Advisory Council** (San Fernando Valley, CA)
Founder (2001); Advisor (2001-2004); Director (2007- 2009); Honorary Member (2009 - present)

**West Valley Family YMCA** (Reseda, CA)
Member, Board of Managers (2011 - 2012); Leadership reunion organizer (2010); Keynote speaker, annual campaign kickoff dinner (2008 & 2009); Chairman's Round Table (2007-present); President's Club (1974-present); Century Club (1974 – 2006); Board of Managers (1973-76); Camp Committee Chairman (1974); Youth in Government advisor (1974)

**HONORS & AWARDS:**

**Peace Officers Association of Los Angeles County (POALAC) Lifetime Achievement Award** (2012)

**POALAC Member of the Year** (2006)

**LAPD Management Achievement Award Nominee**, for leadership accomplishments as a division commanding officer (2001)

**LAPD Management Achievement Award Nominee**, for leadership of Wilshire Area's "Predators to Prison" program targeting parolees-at-large (1996)

**Defensive Tactics Newsletter's Leadership Award** to recognize commitment and contributions to research in training and tactics (1994)

**Detective of the Year** (1983)**,** LAPD Hollywood Division

**Soldier of the Quarter**, U.S. Army Field Station Bad Aibling, Germany (1971)

**Army Commendation Medal**, Vietnam (1969-1970)

**LAPD PROFESSIONAL ACTIVITIES:**

\*   **Advisor to LAPD Assistant Chief re development of LAPD's Integrated Communications and De-Escalation Course** focused on officer-subject de-escalation tactics in non-firearms encounters (2018)

\*   **Leader, LAPD Use-of-Force "Best Practices" Work Group** (2005 – 2006). Appointed by the Chief of Police.  Directed and coordinated

**GREG MEYER**

_____

internal subcommittees and outside consultants examining policy, training, equipment, tactics, post-incident review processes; directed LAPD's TASER Model X-26 field test; LAPD media resource on these issues; turned over the leadership role upon retiring from LAPD in May 2006, and continued as work group member); recognized by the Los Angeles Board of Police Commissioners during its adoption of a revised LAPD use-of-force policy resulting from the four-year project (2009)

* **Member, Professional Advisory Committee,** a work group focusing on police improvement training issues, coordinated by the LAPD Director of Police Training and Education, LAPD Academy (2009 - 2010)

* **Demonstrated TASER-Cam device for the Chief of Police** (2007)

* **Presenter, LAPD Chief of Police and United States Military Delegation from Baghdad, Iraq,** on crime and traffic issues, Los Angeles (August 2006)

* **Participant, National Institute of Justice Conference**, featuring nonlethal weapons session and force-options simulator technology session, Washington, DC (July 2006)

* **Participant, Police Executive Research Forum (PERF)** focus group on officer safety issues, Washington, DC (May 2006)

* **Participant, Police Executive Research Forum (PERF)** Annual Meeting, focused on law enforcement "best practices," San Francisco (April 2006)

* **Presenter, TREXPO-West** on TASERs and Excited Delirium (March 2006)

* **Presenter, LAPD In-Service Training Section Training Day** on TASERs and Excited Delirium (March 2006)

* **Presenter, LAPD Chief of Police press conference**, to announce LAPD's field test of TASER Model X-26 (February 2006)

* **Presenter, Institute for Law Enforcement Administration (ILEA)** national summit on use of force, Plano, TX (January 2006)

* **Presenter, TASER Executive Course** for law enforcement leaders, risk managers, and legal staff, Scottsdale (December 2005)

* **Participant, Police Executive Research Forum (PERF)** conference on handling the mentally ill and use of force, San Diego (December 2005)

## GREG MEYER

—————————————————

* **Member, California Peace Officer Standards and Training Commission (POST) committee** to create a statewide standardized lesson plan for TASER instructor certification, Sacramento (2005)

* **Coordinator, Use of Force Training** for LAPD Commissioners (2005)

* **Presenter, Performance Institute's 2005 Use of Force Summit**, Arlington VA (November 2005)

* **Participant¸ Police Executive Research Forum (PERF)** conference on TASER policy development, Houston (October, 2005)

* **Participant, International Association of Chiefs of Police (IACP)** annual conference, numerous use of force seminars, Miami (September 2005)

* **Participant, Canadian Officer Safety Conference**, Victoria BC (September 2005)

* **Participant, Force Science Research Center (FSRC)** seminar on biomechanics of officer-involved shooting incidents, "Winning Extreme Encounters from Street to Court," Seattle (June 2005)

* **Advisor, Police Executive Research Forum (PERF) Center for Force and Accountability** (June 2005 – present)

* **Participant, Police Executive Research Forum (PERF) Annual Meeting**, focused on international police use of force issues and "best practices," New York City (April 2005)

* **Creator and member of multi-agency custody-death research work group** to inspire the US Surgeon General to involve the medical research community in this persistent law enforcement problem (April 2005)

* **Project Advisor, International Association of Chiefs of Police (IACP) publication, "Electro-Muscular Disruption Technology: A Nine Step Strategy for Effective Deployment**" (published April 2005)

* **Participant, US Department of Justice Symposium on Less-Lethal Weapons Technology**, including workshop interaction with international law enforcement and military chiefs and trainers, Arlington, VA (April 2005)

* **Coordinator**, **Chief of Police-directed review of LAPD use-of-force policies and procedures** by eight nationally renowned use-of-force experts (March 2005)

# GREG MEYER

---

* **Participant, International Association of Chiefs of Police (IACP**) **annual conference**, attended numerous use of force seminars, Los Angeles (November 2004)

* **Participant, LAPD Chief of Police "72-hour Briefings"** following officer-involved shootings and other major incidents (2004-2006)

* **Advisor**, **William H. Parker Foundation** (police training support) (2004-2006)

* **Guest lecturer on police traffic safety and management issues, Pepperdine University's School of Public Policy**, graduate seminar (2004)

* **Chairman**, *ad hoc* **committee to improve traffic collision reporting efficiency** (2003-2004)

* **Member**, **Los Angeles City Councilman Jack Weiss' Advisory Commission** (2002 – 2004)

* **First-level adjudicator as the commanding officer for hundreds of disciplinary cases** involving public and internal personnel complaints; directed these investigations (1998 – 2006)

* **Presenter of facts, findings and recommendations to the Use of Force Review Board** for officer-involved shootings and other significant use of force incidents (1999 – 2006)

* **Board member, Police Sergeant selection process** (2001)

* **Participant, Law Enforcement Ethics Symposium presented by the FBI** (2001)

* **Reviewer, Police Lieutenant civil service examination** (2001)

* **Assistant Chair, Area Integrity Plan Development Committee** (2000)

* **Member, Board of Inquiry** to examine the suitability of particular officers to be promoted to the rank of detective and sergeant (1999 - 2006)

* **Guest speaker, International Traffic Safety Conference,** Madrid, Spain (2000)

* **Participant, California Office of Traffic Safety's annual conference**, San Diego (2000)

* **Chairman of the LAPD Board of Rights**, a *de novo* disciplinary hearing for a Los Angeles Police Department captain accused of "neglect of duty" in the Department's "Rampart corruption scandal" (2000)

## GREG MEYER

_____

&ast;    **Master of Ceremonies, Valley Traffic Safety Summits** (2000-2004)

&ast;    **Member, LAPD Informant Policy and Procedures Review Committee** (2000)

&ast;    **Panelist**, **West San Fernando Valley Traffic Summit**, a seminar for community activists, elected officials, and various government agencies pertaining to improving traffic safety (2000)

&ast;    **Guest speaker**, **California Assembly Speaker Robert Hertzberg's Public Safety Advisory Committee**, for the Families and Community Advisory Committee, on the subjects of traffic safety and the Rampart corruption probe (1999-2000)

&ast;    **Civil service interview and personnel-package-review panelist** for the sergeant's exam process (1999)

&ast;    **Member, Board of Inquiry committee** to examine command accountability for reviews of nondeadly force, vehicle pursuits, and fleet safety issues pertaining to policy, training and practices of the Los Angeles Police Department (1999)

&ast;    **Commissioner, San Fernando Valley Public Safety Advisory Commission** convened by California State Assembly Speaker Bob Hertzberg (1999 – 2003)

&ast;    **Member, Traffic Strategic Committee of the Los Angeles Police Department**, to develop and recommend improvements to the Department's efforts to reduce traffic collisions through education, engineering and enforcement (1999 –2001)

&ast;    **Member, Detective Strategy Committee of the Los Angeles Police Department**, to develop and recommend improvements to the Department's efforts to produce high-quality criminal investigations (1998-1999)

&ast;    **Member, Short-Term Strategy Committee on Juvenile Issues of the Los Angeles Police Department**, to develop and recommend improvements to the Department's efforts to produce high quality processes involving juveniles (1998-1999)

&ast;    **Chairman or Member, numerous Boards of Rights tribunals** to adjudicate disciplinary matters within the Los Angeles Police Department (1998 – 2006)

&ast;    **Chairman or Member, numerous Advanced Paygrade Selection Interview Panels** for Lieutenant II and Detective III (1998 – 2005)

# GREG MEYER

---

* **LAPD—West Point Leadership Course instructional cadre member** (1997 - 2005)

* **Leadership Course instructor** for watch commanders, sergeants, and field training officers, Los Angeles Police Academy (1995 - 1997)

* **Use-of-Force Review Coordinator**, LAPD Wilshire Area (1993 - 1994)

* **Advisor, Use-of-Force Management Information System Task Force** (1994)

* **Chairman or Member, numerous Advanced Paygrade Selection Interview Panels** for Sergeant II, Detective III, Detective II, and Police Officer III (Field Training Officers and Detective Trainees (1993 –1998)

* **Member, LAPD Tactics Training Review Committee** (1990 – 1993); chaired the committee 2004 – 2006

* **Rodney King case**: Provided expert consultation on use-of-force issues to the criminal and internal investigators (1991), state case prosecutors (1991-92), City Attorney and administrative defense representatives (1991-1994), U.S. Attorney and Federal Bureau of Investigation (1992); memo to federal judge re use of force policy/training history (1993); testified for the City in the civil trial's punitive damages phase (1994).

* **Reviewed and analyzed use-of-force and officer-involved shooting reports** for the Commanding Officer, Operations-Headquarters Bureau (1991-93)

* **Conducted a special investigation of a senior police captain at the direction of the Chief of Police** (1987)

* **Authored "The Watch Commander's Guide for Control of Disasters and Other Emergencies"** (1982)

* **Developed nonlethal weapons policy and training material** (1980-81)

* **Trained 67 instructor/divisional coordinators and three tactics supervisors** on the TASER device, LAPD Academy (1981)

* **Researched and/or tested thirteen nonlethal weapons (including TASERs and chemical sprays** at Planning and Research Division (1979-1980)

* **Staffed the LAPD Ad Hoc Committee on Nonlethal Weapons** and created the Nonlethal Control Device Incident Report, later adapted as LAPD's Use of Force Report (1980)

**GREG MEYER**

_____

    *    **Conducted demonstrations of nonlethal weapons** for the Mayor of Los
Angeles, the Los Angeles Board of Police Commissioners, and the media
(1980)

    *    **Member/staffer, LAPD's Human Resources Development Committee**
(1980-1981)

**SPECIALIZED
TRAINING
RECEIVED:**    *    **Force Encounters: Investigation Fundamentals, Decision-Making,
and Human Performance**, Force Science (16 hours) (Bakersfield CA,
2024)

    *    **Command and Control, De-escalation** (December 2019, Los Angeles),
presented by Los Angeles Police Academy staff

    *    **Force Science Annual Conference** (October 2019, Chicago)
- ✓ Injuries Associated with Police Use of Force
- ✓ Kinematic Analysis of Police Officer Shooting Altercations: A
Biomechanical Examination of Stationary Shooting, Shooting and
Fleeing, and Fleeing and Shooting
- ✓ Striving for a Blockbuster Academy
- ✓ Stress-Activity Mapping: Physiological Responses during General Duty
Police Encounters
- ✓ How Characteristics of Visual Perception Intersect with Mistake of Fact
Shootings
- ✓ Legal and Practical Aspects of :Police Use of Force: Preparing for High
Level Use of Force Events
- ✓ Reasonable but Avoidable? Spotlight on Minnesota Shootings
- ✓ Understanding and Explaining Use of Force Incidents
- ✓ Connecting the Interdisciplinary Dots: Applying Force Science in Law,
Policy, and Practice

    *    **Integrated Communications and De-Escalation Course**, Los Angeles
Police Academy, focused on officer-subject de-escalation tactics in non-
firearms encounters (3 hours) (2018)

    *    **ICAT Training and Implementation (Integrating Communications,
Assessment and Tactics),** presented by the Police Executive Research
Forum in collaboration with the Los Angeles Police Department, seminar
focused on officer-subject de-escalation tactics in non-firearms
encounters (8 hours, Los Angeles) (2017)

    *    **Use of Force and Labor Relations Legal Update**, Rains Lucia Stern
(8 hours, Newport Beach) (2017)

    *    **Force Science Institute,** update seminar re officer safety tactics,
contact-cover, reaction time issues, edged weapon distance, officer and
subject movement speeds (4 hours, Long Beach) (2016)

**GREG MEYER**

---

*        **Field Encounters with the Mentally Ill, Peace Officers Association of Los Angeles County (POALAC)** (8 hours) (2014)

*        **Managing, Oversight and Monitoring of Use of Force, Americans for Effective Law Enforcement's (AELE)** (3 days, Las Vegas) (2013)

*        **Institute for Prevention of In-Custody Death (IPICD)** annual seminar (3 days, Las Vegas) (annually 2006-2013; and 2017, 2019)

*        **Officer-Involved Shooting Investigation Course, Los Angeles Police Department, Force Investigation Division** (3 days, Los Angeles, 2009)

*        **Force Science Analyst Certification Course, Force Science Institute** (5 days, San Jose, 2009)

*        **Lethal and Less-Lethal Use of Force Seminar, Americans for Effective Law Enforcement (AELE)** (3 days, annually or twice per year from 2002-2013)

*        **Public Safety Discipline and Internal Affairs Course, Americans for Effective Law Enforcement (AELE)** (3 days, 2005, 2009, 2014)

*        **Training on California Highway Patrol (CHP) Mobile Video Audio Recording System (MVARS)** presented by CHP staff at the California Department of Justice (Los Angeles office) (February 2013)

*        **Training on TASER X-2 and X26,** presented by Advanced Officer Safety Training staff of the California Highway Patrol (CHP) at the California Department of Justice (Los Angeles office) (August 2012)

*        **Jail and Prison Legal Issues, Americans for Effective Law Enforcement's (AELE)** (3 days, Las Vegas) (2005, 2011)

*        **Live-fire weapons, dynamic building entry, and drug-lab investigations, by the Drug Enforcement Administration (DEA), 4 hours (shooting M4, M4A1, HK53, AR15), Los Angeles (1 day, 2007)**

*        **SWAT Debrief: The Death of LAPD SWAT Officer Randy Simmons** (3 hours, Pleasanton, CA, by instructor Mike Odle, 2011)

*        **"Suicide By Cop – Revisited,"** sponsored by the Peace Officers Association of Los Angeles County (1 day, 2000)

*        **Earthquake Management Course, California Specialized Training Institute** (5 days, San Luis Obispo, 1981)

*        **Civil Disorders Management Course, California Specialized Training Institute** (5 days, San Luis Obispo, 1982)

**GREG MEYER**
_____

     *       **Basic Detective School, LAPD** (15 days, 1982)

     *       **Supervisory Development Course, LAPD** (20 days, 1983)

     *       **Juvenile Procedures School, LAPD** (3 days, 1983)

     *       **Vice School, LAPD** (5 days, 1986)

     *       **Supervisory Press Relations Training, LAPD** (1 day, 1988)

     *       **Homicide School, LAPD** (5 days, 1991)

     *       **Watch Commander School, LAPD** (5 days, 1993)

     *       **Effective Leadership Course, LAPD Wilshire Area** (1994)

     *       **P.O.S.T. Management Course** (10 days, 1993)

     *       **LAPD--West Point Leadership and Command Program** (24 days, 1996)

     *       **LAPD Command Development Course** (24 days, 1998-1999)

     *       **Street Survival Seminar**, Calibre Press (3 days, Honolulu (1999)

     *       **"Leadership in the 21st Century,"** presented by the University of California at Los Angeles, the University of Southern California, Pepperdine University, and Claremont University (12 days, 1999 – 2003)


**NON-LAPD
EXPERT
ACTIVITIES:**    Presented multi-media lectures on use-of-force policy, training, equipment, tactics, ethics, and risk-management processes:

     *    **Presenter, "Use of Force Video Issues,"** a 4-hour virtual lecture for California Department of Corrections and Rehabilitation (CDCR) on the value and limitations of video evidence and its implications for internal investigations, to an audience of CDCR attorneys, internal affairs investigators, subject matter experts, and attorneys from the Office of Inspector General (twice in August 2021, again in May 2022, again in May 2023)

     *    **Presenter, "TASER Tactics & Training Issues,"** a 1-hour live lecture for the TASERCON conference in Las Vegas ( 65 participants) (January 2023) and the POALAC "Use of Force Update" seminar (75 participants) (May 2023)

**GREG MEYER**

_____

\*    **Presenter, "The George Floyd Case Prosecutions: Beyond the Myths & Misinformation,"** a 1-hour live lecture for Force Science Institute's annual conference in Orlando (280 participants) (June 2022)

\*    **Presenter, "Use of Force Video Issues,"** a 2-hour live lecture for Americans for Effective Law Enforcement's "Use of Force" seminar in Las Vegas (80 participants) (2022)

,"

\*    "**Boxing Up CIT and UoF Concepts: Integrating Essential Concepts,"** presenter/co-facilitator, a seminar directed at use of force instructors produced by attorney Missy O'Linn (70 participants) (2019)

\*    **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues, video and body-cam issues, and TASERs, POST-certified (66 participants) (2017)

\*    **3rd Annual Law Enforcement Association Leadership Symposium (LEALS),** presenter on the PERF 30 Guiding Principles for Use of Force to police executives, attorneys and police representation unit officials (San Diego 2017)

\*    **ILEETA (International Law Enforcement Educators and Trainers Association),** presenter on the PERF 30 Guiding Principles for Use of Force at ILEETA's annual conference (St. Louis, 2017)

\*    **RLS Seminar, "Protecting Cops in the 21st Century,"** presenter on the PERF 30 Guiding Principles for Use of Force to attorneys and police representation unit officials (San Jose, 2016)

\*    **Use of Force Summit, "Policy, Implementation, and Training in a Changing World,"** presenter on nonlethal weapons policy and training issues; and critique of the PERF 30 Guiding Principles; also acted as master-of-ceremonies for the two-day event (Coral Gables, FL, September 2016)

\*    **Special Assistant to the Attorney General, California Department of Justice; and deputy to Los Angeles County Supervisor Hilda Solis**, focus on policy, training, equipment, tactics (July 2016)

\*    **Department of Homeland Security HQ, Office of Civil Rights and Civil Liberties**, focus on policy, training, equipment, tactics, case studies of DHS component agency complaints (Washington DC, May 2016)

\*    **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, LEOKA (Law Enforcement Officers Killed and Assaulted) and use of force seminar, video and body-cam issues, and TASERs  (110 participants) (March 2016)

**GREG MEYER**

_____

* **Harvard-Westlake school, criminal justice seminar**, discussed police use of force issues with students of attorney Laurie Levenson (8 participants) (March 2016)

* **Office of the District Attorney, Los Angeles County**, use of force presentation for deputy district attorneys and local law enforcement, focused on video evidence (including body cameras), use of force basics, and nonlethal weapons (500 participants) (November 2015)

* **Office of the Public Defender, Los Angeles County**, use of force presentation focused on video evidence (including body cameras), use of force basics, and nonlethal weapons (60 participants) (September 2015)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues, video and body-cam issues, and TASERs, POST-certified (55 participants) (April 2015)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, "Video Evidence Issues" seminar (October 2014)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter use of force seminar, focusing on Force Science issues, video and body-cam issues, and TASERs, POST-certified (50 participants) (April 2014)

* **Americans for Effective Law Enforcement's (AELE) Annual Lethal and Less-Lethal Weapons seminar,** Las Vegas, focused on Force Science issues (95 participants) (October 2013)

* **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** focused on TASER issues and Force Science issues, Santa Ana (CA) (10 participants) (June 2013)

* **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** focused on TASER issues and Force Science issues, Pasadena (CA) (25 participants) (June 2013)

* **Americans for Effective Law Enforcement's (AELE) Managing, Oversight and Monitoring of Use of Force,** Las Vegas, focused on TASER issues (135 participants) (April 2013)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues and TASERs, POST-certified (65 participants) (January 2013)

### GREG MEYER
_____

* **Americans for Effective Law Enforcement's (AELE) Annual Lethal and Less-Lethal Weapons seminar** Las Vegas, focused on Force Science issues (110 participants) (October 2012)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, "Critical Incidents: Lessons Learned" seminar, focusing on the BART shooting/weapons confusion case (55 participants) (July 2012)

* **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** TASER issues and Force Science issues, Santa Ana (48 participants)    (June 2012)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, "Video Evidence Issues" seminar (80 participants) (May 2012)

* **Travis County Grand Jury (Austin, TX)** to educate Grand Jury members on officer-involved shooting policy, training, tactics, and force-science issues (February 2012)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on Force Science issues and TASERs, POST-certified (55 participants) (February 2012)

* **Labor Relations Information System (LRIS) annual Internal Affairs and Critical Incidents seminar,** focus on arrest-related deaths, use-of-force policy, police trainers, involuntary firearms discharges, Las Vegas (110 participants) (November 2011)

* **Scottsdale (AZ) Police Department supervisors,** focus on TASER issues for supervisors, trainers, and SWAT personnel (25 participants) (June 2011)

* **Public Safety Training Institute (PSTI),** for various "East Bay" (Northern California) law enforcement agencies, 240 participants (two, 4-hour seminars) (July 2011)

* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on TASER issues, Glendale, CA, 50 participants, POST-certified (June 2011)

* **Independent Cities Risk Management Association (ICRMA)**, representing 22 cities in the greater Los Angeles Area, 50 participants (May 2011)

## GREG MEYER

_____

\* **Peace Officers Association of Los Angeles County (POALAC)**, producer and presenter, use of force seminar, focusing on TASER issues, Long Beach, CA, 45 participants, POST-certified (November 2010)

\* **Institute for Law Enforcement Administration (ILEA) Use of Force and Sudden In-Custody Death Seminar**, Plano (TX), 75 participants (September 2010)

\* **Arroyo Grande (CA) Police Department** (with guests from various Central California Agencies), 40 participants (September 2010)

\* **Americans for Effective Law Enforcement's (AELE) Annual Lethal and Less-Lethal Weapons seminar (formerly: Critical Incident Response Management Seminar)**, Las Vegas (60-275 participants), usually twice per year (2002 – 2010)

\* **Peace Officers Association of Los Angeles County (POALAC)**, use of force seminar, focusing on TASER and nonlethal weapons issues, 70 participants, POST-certified, Torrance, CA (October 2009)

\* **Lorman seminar for plaintiff and defense attorneys and law enforcement management, "Police Liability in California,"** Santa Ana (February 2009)

\* **Penn State University's Center for Community and Public Safety's annual seminar for Pennsylvania constables**, presenting on the subject of sudden in-custody death, 150 participants including police training personnel, attorneys, and judges (November 2008)

\* **Institute for Law Enforcement Administration (ILEA) Use of Force and Sudden In-Custody Death Seminar**, 150 participants, Plano (TX) (2008)

\* **Annual TASER Instructor Conference**, 280 participants, Chicago (2007)

\* **Beverly Hills Rotary Club**, lunch speaker, police use of force,        120 participants (2007)

\* **Presenter, Pepperdine University public-policy graduate seminar**, 20 graduate students, requested by former Los Angeles Police Commissioner Racquelle de la Rocha (2006)

\* **Presenter and panelist on Tasers and excited delirium**, 30 law enforcement executives and ACLU members, presented by the New York Civil Liberties Union (Albany) (2006)

\* **Performance Institute's 2005 Use of Force Seminar**, 30 participants, Arlington VA (2006)

# GREG MEYER

---

* **TASER International's Executive Course**, 150 participants, Scottsdale (2005)

* **TASER International's Annual Instructor Seminar**, Las Vegas (150 participants) (2002)

* **Defensive Tactics Newsletter's Annual Training Seminar**, Tallahassee, Florida (25 participants) (2002)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Anchorage, AK (100 participants) (2002)

* **Los Angeles County Sheriff's Department** training day for 1,200 deputies, West Covina, California (2002)

* **The Urban Alliance on Race Relations** conference, "Alternatives to the Use of Lethal Force by Police," Ontario, Canada (2000)

* **California Association of Police Training Officers (CAPTO)**, Norwalk, California; team-teach use-of-force issues with police defense attorney Michael P. Stone; and panelist with Assistant U.S. Attorney Michael Gennaco and plaintiff's attorney Stephen Yagman (160 participants) (2000) (8-hour POST certified)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Richmond, VA (200 participants) (2000)

* **American Society for Law Enforcement Training (ASLET)**, Regional Use of Force Seminar, Ontario, California (50 participants) (1999)

* **American Society for Law Enforcement Training (ASLET)**, Regional Use of Force Seminar, Los Angeles, California (50 participants) (1997)

* **Sudden In-Custody Death Seminar** (presenter and panelist), Washington State Criminal Justice Training Commission (200 participants) (1997)

* **California Association of Police Training Officers (CAPTO)**, Regional Seminar, Fresno, CA (50 participants) (1996) (8-hour POST-certified)

* **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Grapevine, TX (100 participants) (1996)

* **California Association of Police Training Officers (CAPTO)**, Annual Seminar Bakersfield, California (80 participants) (1995)

* **American Society for Law Enforcement Training (ASLET)**, Regional Use of Force Seminar, Albuquerque, New Mexico (50 participants) (1995)

**GREG MEYER**
_____

    *    **South East (Los Angeles County) Training Association**, at the University of Southern California (80 participants) (1995)

    *    **American Society for Law Enforcement Training (ASLET)**, International Training Seminar, Anchorage, Alaska (100 participants) (1995)

    *    **Los Angeles Sheriff's Academy, for the California Association of Force Instructors (CAFI)** (35 participants) (1994)

    *    **Central Florida Criminal Justice Institute at Orlando** (20 participants) (1994)

    *    **Orange County Traffic Officers' Association** (75 participants) (1994)

    *    **Wisconsin Chiefs' Training Seminar** (200 participants), Milwaukee (1993)

    *    **Wisconsin Department of Justice Round Table** (35 chiefs and sheriffs), Osh Kosh (1992)

    *    **Americans for Effective Law Enforcement (AELE) workshop on Critical Liability Issues (**100+ participants), Las Vegas (1991, 1996, 2000)

    *    **Trained and certified more than 375 TASER instructors** for dozens of law enforcement and corrections agencies, for Tasertron (1991 – 1999)

    *    **State-licensed chemical spray trainer**, trained hundreds of civilians (1981)

    *    **Trained more than 20 TASER users**, Inglewood Police Department (1981)

**OTHER EXPERT ACTIVITIES:**

    *    **Expert witness and consultant on police procedure and use-of-force issues** (1989 – present)

    *    **Participant, "Cops Charged Criminally: Why Don't the Graham Standard & Qualified Immunity Apply? A Legal Analysis,"** webinar by Calibre Press (November 2023)

    *    **Producer/presenter, "Use of Force Update,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC) (75 participants) (May 2023)

**GREG MEYER**

---

\*        **Participant, "Using Human Performance Science to Inform Police Training and Improve Decision Making,"** webinar by Lexipol (May 2023)

\*        **Participant, webinar by Dr. Melis Baban, Stanford University, re "Neurosmart," research re officer performance under stress,** California Force Instructors Association (May 2023)

\*        **Panelist, expert discussion of the Memphis arrest-related death,** International Law Enforcement Training Network (ILET) (January 2023)

\*        **Participant, Force Science Institute's 2022 Conference** (June 2022)

\*        **Participant, RLS seminar, "Use of Force"** (June 2022)

\*        **Participant, "Investigations of Fatal Shootings of Unarmed Civilians by State Department of Justice (AB 1506) (CA Gov. Code 12525.3),"** webinar by RLS (February 2022)

\*        **Subject-matter expert, California POST** member of a work group to develop a micro-course entitled, "Legal Update: Positional Asphyxia" (January 2022)

\*        **Participant, "Emerging Trends in Video Evidence,"** webinar by INPUT-ACE (July 2021)

\*        **Participant, "What the Research Says about Use-of-Force Data" and "Analyzing Use of Force Data",** webinars by the Police Executive Research Forum (March 2021)

\*        **Participant, "Use of Force Investigations under 835a PC,"** webinar by RLS attorneys (December 2020)

\*        **Participant, "Duty to Intercede – Conceptual, Cultural, Legal Aspects,"** webinar by Lexipol (November 2020)

\*        **Participant, Police Executive Research Forum town hall meeting,** focused on lessons learned and civil disturbance/riot control strategies, featuring a variety of police chiefs across the country (October 2020)

\*        **Participant, "Defunding"/Reforming Police,"** webinar by the Beverly Hills Bar Association (July 2020)

\*        **Participant, "Use of Force Continuum – Seriously?,** webinar by attorney Eric Daigle (June 2020)

\*        **Participant, "Prone Restraint,"** webinar by Dr. Darrell Ross (June 2020)

# GREG MEYER

_____

\*        **Participant, "Excited Delirium: 8 Key Law Enforcement Takeaways,"** webinar presented by Lexipol (2019)

\*        **Participant, Americans for Effective Law Enforcement (AELE) webinar** on prone restraint issues (June 2020)

\*        **Participant, Police Executive Research Forum (PERF) virtual town hall** meeting regarding use of force issues (June 2020)

\*        **Consultant to Dr. Lorie Fridell, University of South Florida,** re revision of State of Florida use of force policy (June 2020)

\*        **Participant, "Critical Issues Review" seminar**, 4 hours, hosted by San Bernardino Sheriff's Department (March 2020)

\*        **Producer/presenter, "Blue Lives in Jeopardy: Surviving Your Attacker,"** a seminar  for the Peace Officers Association of Los Angeles County (POALAC) (40 participants) (January 2020)

\*        **Manuscript reviewer, "Police Deadly Force Encounters: What the Science Tells Us,"** for "The Police Chief," monthly publication of the International Association of Chiefs of Police (IACP) (December 2019)

\*        **Participant, Annual Sudden and In-Custody Death Conference**, presented by the Institute for Prevention of In-Custody Death, Las Vegas (October 2019)

\*        **Producer/presenter, "Police Video Issues,"** a seminar  for the Peace Officers Association of Los Angeles   County (POALAC) (80 participants) (2019)

\*        **Keynote speaker, "Blue Lives in Jeopardy: When the Badge Becomes the Target"** book signing event by author Hon. Steve Cooley, retired   Los Angeles County District Attorney (2019)

\*        **Producer, "Active Shooter and Mass Casualty Events: Prevention, Response & Lessons Learned,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC)  (280 participants) (2019)

\*        **Participant, PERF/LAPD Less-Lethal Force Options Symposium** (Los Angeles) (March 2019)

\*        **RLS Seminar, "Protecting Cops in the 21st Century,"** panelist for use of force and the mentally ill (Costa Mesa, CA) (June 2018)

\*        **Participant, Axon Accelerate Conference** (Scottsdale) (June 2018)

# GREG MEYER
_____

\*     **Producer, "Search and Seizure, Search Warrants, and Interviews & Interrogation,"** two seminar sessions for the Peace Officers Association of Los Angeles County (POALAC) (August & October 2018)

\*     **Producer, "Officer-Involved Shootings and Internal Affairs Investigations: Getting It Right,"** for the Peace Officers Association of Los Angeles County (POALAC) (June 2018)

\*     **Participant, The Fidler Institute, Loyola Law School,** presentations on sexual assaults prosecutions and "Me Too," the Mueller investigation, new marijuana laws, new parole procedures (April 2018)

\*     **Producer, "Surviving Your Attacker: Law Enforcement Officers Killed and Assaulted,"** for the Peace Officers Association of Los Angeles County (POALAC) (May 2018)

\*     **Producer, "Media Relations and Social Media Strategies for Law Enforcement,"** seminar for the Peace Officers Association of Los Angeles County (POALAC) (March 2018)

\*     **Conference Chair and Moderator of the Keynote Panel, 2nd Annual Body-Worn Camera Winter Forum: Strategies for Implementation, Operations, and Policy** (two days, San Diego, February 2018)

\*     **Participant, Annual Sudden and In-Custody Death Conference**, presented by the Institute for Prevention of In-Custody Death, Las Vegas (November 2017)

\*     **Assisted with the development of TASER policy for the U.S. Immigration and Customs Enforcement**, consulted by Rains, Lucia, Stern law firm in support of the American Federation of Government Employees (October 2017)

\*     **Appointed as the Law Enforcement and Policing Practices Subject Matter Expert in support of the US Department of Homeland Security Headquarters – Office for Civil Rights and Civil Liberties**, to conduct independent reviews of selected public complaint and use of force incidents by the Border Patrol, ICE, TSA, Secret Service, and other DHS components; rewrite use of force policy; 2016 presentation to DHS headquarters management on use-of-force issues. (2015-2017)

\*     **Conference Chair and Moderator of the Keynote Panel, Body-Worn Camera Summit**, focused on lessons learned from the early adopters of the technology (two days, San Diego, February 2017)

\*     **Participant, Town Hall Meeting, Police Executive Research Forum (PERF),** focused on rollout of PERF's ICAT training program (Integrating Communications, Assessment, and Tactics) related to the PERF 30

# GREG MEYER

---

Guiding Principles for use-of-force policy and training (San Diego, October 2016)

\*      **Editor and contributor re tactical lessons learned, <u>Blue Lives Matter: In the Line of Duty</u>, <u>Blue Lives in Jeopardy: When the Badge Becomes the Target</u>, and <u>Blue Lives Under Fire: Shootouts</u>,** three books documenting murders of police officers in Los Angeles County, by former Los Angeles County District Attorney Steve Cooley and retired Supervising Deputy District Attorney Robert Schirn (Book 1 published in 2017; Book 2 in 2019; Book 3 pending publication)

\*      **Panelist, "Journalist Law School," Loyola Law School,** seminar on how to fairly and accurately investigate allegations of excessive force or other misconduct, for prominent television and print media from around the country (35 participants) (June 2016)

\*      **Participant, The Fidler Institute, Loyola Law School,** presentations on access to justice, terrorism and cyberterrorism, technology innovations in probation and parole, and workplace and consumer protection crimes (April 2016)

\*      **Producer, "Active Shooter Incidents in Southern California,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC)  (150 participants) (April 2016)

\*      **Guest speaker, University of Southern California (USC) Journalism School**, re police use of force issues (March 2016)

\*      **Producer, "Active Shooter Incidents in Southern California,"** a seminar for the Peace Officers Association of Los Angeles County (POALAC)  (375 participants) (November 2015)

\*      **Participant, Town Hall Meeting, Police Executive Research Forum (PERF),** focused on officer-involved shooting investigations, use-of-force policy and training (Phoenix, June 2015)

\*      **Independent review of the death of Nicholas Covelli** (occurred 2003 in Frazier Park, CA), involving bizarre behavior and an officer-involved shooting.  (2015)

\*      **Interviewed by KCRW radio** re TASER history and issues (2015)

\*      **Participant, The Fidler Institute, Loyola Law School,** presentations on police body-cams, line-up identifications, and grand jury processes (2015)

\*      **Interviewed as a Subject Matter Expert** on a Los Angeles Police Department, Training Division project to integrate four California POST perishable-skills training subjects into a training course that mirrors actual field situations (2015)

# GREG MEYER

_____

\*      **Provided input** for the Police Executive Research Forum (PERF) conference (Washington DC, May 2015) **"Re-Engineering Use-of-Force Policies, Training and Supervision"**

\*      **Consultant**, final draft of **The Law of Self-Defense and The Use of Force in California**, publication produced by Michel and Associates, PC

\*      **Participant, Internal Affairs and Discipline Seminar**, presented by Americans for Effective Law Enforcement (AELE), Las Vegas (2014)

\*      **Guest on PBS "The News Hour" and NPR Radio** in the wake of controversial use of force incidents in New York and Missouri (August 2014)

\*      **JPX Pepper Gun**, handled and test-fired at the Los Angeles Police Department Academy (August 2014)

\*      **Panelist, "Journalist Law School," Loyola Law School,** seminar on how to fairly and accurately investigate allegations of excessive force or other misconduct, for prominent television and print media from around the country (40 participants) (May 2014)

\*      **Independent Expert Reviewer, Office of the Inspector General, Oakland (CA) Police Department,** to review and report on selected OPD use of force cases during internal adjudication and testify at administrative hearings (2014)

\*      **Contributing editor, Electronic Control Weapons samples policies,** LAAW International, LLC (2014)

\*      **Participant, The Fidler Institute, Loyola Law School,** presentations on homicide investigations, sexual assault investigations, police misconduct investigations (2014)

\*      **Outside Independent Expert Advisor, Long Beach (CA) Police Chief's Community Use of Force Advisory Committee** (2013 – 2014)

\*      **Edited article on OC (Pepper Spray) issues** for Americans for Effective Law Enforcement's monthly law journal (April 2014)

\*      **Participant, Annual Sudden and In-Custody Death Conference**, presented by the Institute for Prevention of In-Custody Death, Las Vegas (each November 2005-2013)

\*      **Participant, National Conference on Body Cameras,** Police Executive Research Forum (PERF) conference, Washington DC (September 2013)

# GREG MEYER

_____

\*      **Donor, Smithsonian National Museum of American History, "The Greg Meyer Taser Collection,"** a collection of artifacts and files from TASER inventor Jack Cover and my personal equipment and files (2013)

\*      **Reviewer, United States Environmental Protection Agency (EPA)/Criminal Investigation Division (CID) shooting incident** (2013) Conducted independent external review for the EPA Inspector General re a shooting involving EPA/CID personnel in Florida (2013)

\*      **Consultant, California Peace Officer Standards and Training (POST)**, re development of their lesson plan for the officer-involved shooting investigations course (July 2012)

\*      **Reviewer, two draft National Institute of Justice reports,** "Evaluation of Less Lethal Beanbag Munitions and Launchers" and "Evaluation of Taser X2," (June 2012)

\*      **Contributing editor, "Weapons Confusion and Civil Liability" article,** for Monthly Law Journal of American's for Effective Law Enforcement (AELE) (May 2012)

\*      **Participant, Critical Issues in Policing Series: An Integrated Approach to De-Escalation and Minimizing Use of Force,** Police Executive Research Forum (PERF) conference (Washington DC, February 2012)

\*      **Interviewed by TV Channel11 (Los Angeles)** re the value of videotape evidence; and whether to show it to involved officers before or after interview; live television, "Studio 11 LA" (January 2012)

\*      **Participant, Use of Force, Electronic Control Devices, and In-Custody Death—Formulating a Plan,** South Bay Training Committee (Redondo Beach, CA, January 2012)

\*      **Participant, Use of Force Investigation and Risk Management lecture** by attorney Randy Means, Labor Relations Information System (LRIS) seminar (2011)

\*      **Interviewed by Tammi Downey, producer for Discovery Channel Canada,** re forthcoming documentary on electronic control weapons (2011)

\*      **Reviewer, Oakland (CA) use-of-force incident** Conducted independent external review for the chief of police re a use-of-force incident involving TASER, pepper spray, and baton (2010)

\*      **Participant, Police Executive Research Forum (PERF) meeting to revise Conducted Energy Device Guidelines** and contributor to the final editing process (Philadelphia) (August  2010)

**GREG MEYER**

_____

\*     **Edited Force Science News article re the Oakland BART Murder trial** (2010)

\*     **Conducted internal affairs investigation** for a local police agency to determine propriety of a TASER use in a street confrontation between an officer and a subject (2010)

\*     **Producer, "The Deadly Mix: 20 Years of Officer Survival Research,"** 8-hour class by former FBI staff who authored "In the Line of Duty," "In the Line of Fire," and "Violent Encounters" (2010)

\*     **Interviewed by Karyn MacEwan, producer for Discovery Channel,** re documentary on TASER inventor Jack Cover (2010)

\*     **Participant, Internal Affairs and Discipline Seminar**, presented by Americans for Effective Law Enforcement (AELE), Las Vegas (2009)

\*     **Participant, New Product Advisory Meeting,** TASER International Headquarters, Scottsdale (2009)

\*     **Interviewed by Hannah Simon, PoliceOne.com**, for an article relating to TASER International's new guidelines for probe target areas (2009)

\*     **Interviewed by Nick Berardini, for a feature-length documentary film on TASERs** (2009)

\*     **Interviewed by Bill Kidd, "Law Enforcement Management Bulletin,"** re TASER policy and training issues for law enforcement executives and supervisors (2009)

\*     **Interviewed by Chuck Remsberg, "Force Sciences News,"** re TASER recommendations from the Braidwood report in British Columbia (2009)

\*     **Advisor, "Research roundup: Latest on Tasers, arrest-related deaths, excited delirium,"** Force Science News Bulletin #127 (2009)

\*     **Co-author, "Electronic Control Weapons Model Policy,"** International Association of Chiefs of Police (IACP), 2010 revision

\*     **Participant, TASER Annual Instructor Conference,** including rollout of the TASER X3 model, Ft. McDowell (AZ) (2009)

\*     **External reviewer, TASER International's revision of "Product Warnings: Law Enforcement"** (July, 2009)

\*     **Participant, TASER International's new product line demonstration** including X-REP shotgun (fired it), Shockwave, and AXON, Los Angeles Sheriff's Academy (2009)

**GREG MEYER**

_____

\*      **Certified instructor, TASER X-26** (2005, 2009)

\*      **Certified instructor, TASER M-26** (2001, 2003, 2005, 2009)

\*      **Participant, TASER Executive Conference**, Los Angeles Sheriff's Academy (March 2009)

\*      **Co-producer and presenter, Institute for Law Enforcement Administration (ILEA) use of force and sudden in-custody death seminar,** Texas (2008)

\*      **External reviewer, TASER International's revision of "Product Warnings: Law Enforcement" document** (January & April 2008)

\*      **Participant, Jail and Prison Legal Issues Seminar**, presented by Americans for Effective Law Enforcement, Las Vegas (2008)

\*      **Guest, TASER Scientific and Medical Advisory Board Meeting** (Las Vegas); participated in discussions of current issues (2007)

\*      **Monitored TASER user training for 60 LAPD officers at the Los Angeles Police Academy,** including viewing all officers receive TASER exposures for training purposes (September 18, 2007)

\*      **Edited three articles on Electronic Control Weapons issues** for Americans for Effective Law Enforcement monthly law journals (2007)

\*      **Peer Reviewer, US Department of Homeland Security's FY 2005 Commercial Equipment Direct Assistance Program** (2006)

\*      **Interviewed by Court-TV for a half-hour program on TASERs** (2006)

\*      **Participant, International Association of Chiefs of Police (IACP)** annual conference, attended use of force seminars, Boston (2006)

\*      **Reviewer, Police Executive Research Forum national survey on Officer Safety/Body Armor**, sponsored by United States Department of Justice, Bureau of Justice Assistance (2006)

\*      **Radio talk show guest, debating Amnesty International on stun-gun issues,** Station WWRL (New York) (2006)

\*      **Participant, TASER Annual Instructor Conference,** Las Vegas (2006)

\*      **Participant, Internal Affairs and Discipline Seminar**, presented by Americans for Effective Law Enforcement (AELE), Las Vegas (2005)

\*      **Consultant, TASER issues for Vista Research** (2005 - 2008)

## GREG MEYER

_____

\* **Presenter and panelist on the state and future of law enforcement training,** Academy of Criminal Justice Sciences (ACJS), Las Vegas (2004)

\* **Academic Committee member, Americans for Effective Law Enforcement's "Certified Litigation Specialist" program** (2002 – present)

\* **Presenter, "Rafael Perez and the LAPD Rampart Corruption Game,"** American Society for Law Enforcement Training, Orlando (2001).

\* **Editor, POST instructor-course proposal** "**Weaponless Defense Against Contact Weapons**" for Steve Tarani, Edge Defense (2000)

\* **Panelist, "Mass Violence in America: The Law Enforcement Response," pertaining to Rapid-Response/Active Shooter** tactics for situations like the Columbine school shooting and other in-progress major incidents, for the American Society for Law Enforcement Training (ASLET), Richmond, Virginia (2000).

\* **Reviewer and editor** for police attorney Michael P. Stone's article, "Lethal Force and Law Enforcement Activity-Related Deaths—A Suggested Protocol for Investigation" (1999)

\* **Peer review panel member**, National Institute of Justice, for federal grant proposals relating to the Impact of Technology on Policing, Washington, D.C. (1998)

\* **Presenter, custody-death issues** re _Price v. San Diego_ to the California Association of Force Instructors (CAFI), Los Angeles (1998)

\* **Co-presenter, "The Value of Videotaped Evidence,"** American Society for Law Enforcement Training (ASLET), Los Angeles (1997)

\* **Presenter, causes and prevention of sudden in-custody death**, to the California Association of Force Instructors (CAFI), Beverly Hills, California (1997)

\* **Met with the Director, Science and Technology Division, National Institute of Justice**, on concepts and issues surrounding development of improved nonlethal weapons policy and technology (1994)

\* **Participant in the RAND Corporation's meeting on transfer of less-than-lethal military technology to civilian law enforcement arena**; and attended the House Armed Services Committee, Research and Technology Subcommittee hearing on that subject (1994)

**GREG MEYER**

_____

\*       **Consultant to California Peace Officer Association, Standards and Ethics Committee** on nonlethal weapons policy, tactics and training issues (1993)

\*       **Consultant to California Peace Officer Standards and Training Commission's round table on pepper spray policy and training standards** (1993)

\*       **Quoted extensively** in <u>**Deadly Force: What We Know**</u>, book by William A. Geller and Michael S. Scott, Police Executive Research Forum (1992)

\*       **Conducted nonlethal weapons demonstrations and presentations** to the following during 1980-81:

> \*    California Peace Officers Association, Administrative Institutes
> \*    California Highway Patrol Academy, including numerous law enforcement agency and media representatives from the Sacramento area
> \*    California Department of Corrections, Sacramento
> \*    California Specialized Training Institute, San Luis Obispo
> \*    Rio Hondo Police Academy, Whittier
> \*    Redondo Beach Police Department
> \*    Chief of Police, Oakland
> \*    Chief of Police, San Francisco
> \*    Chief of Police, Los Angeles

**LAPD ASSIGNMENT HISTORY:**

**2013 - 2020**    **Specialist Volunteer, LAPD Training Group**
Consultant to the Commanding Officer, Police Science and Training Bureau, regarding police training issues

**2006 - 2012**    **Reserve Officer, Los Angeles Police Department**
Consultant to the Chief of Police re use of force issues; consultant to the Director, Police Training and Education re training issues; expert resource for LAPD Media Relations and Professional Standards Bureau re use-of-force issues.

**2004 – 2006**    **Captain, Training Division** (Captain II)
Line command in partnership with one other captain, more than 300 employees assigned to the three major facilities of the Los Angeles Police Academy, including nonlethal weapons, tactics, firearms, pursuit driving, curriculum development, recruit coordination (est. 600+ recruits annually), in-service course coordination (more than 80 courses annually), e-learning development and implementation. Chairman, Tactics Training Review Committee. Manage the training of Department

## GREG MEYER

_____

employees and perform a variety of administrative and
coordination functions.  Review/adjudicate police pursuits,
employee-involved traffic collisions, use of force and internal
affairs cases.  Serve as chairman or associate member of
numerous Boards of Rights (internal discipline tribunals to conduct
*de novo* hearings of internal affairs cases). Speaker at supervisor,
detective, leadership and other schools at the Police Academy.
Work closely with the Police Commission, the Chief of Police and
other high-ranking officials on use-of-force policy, training,
equipment, tactics and post-incident procedures, including policy
and training changes for use of the flashlight as an impact device,
and shoot/don't shoot at moving vehicles, PIT maneuvers and
spike strips. Manage the 2005 re-write of the LAPD Use of Force
Sourcebook. Manage the Revolving Training Fund ($1.5 million
annually).  Manage the Police Academy's relationship with the
College of Canyons.  Manage the Police Academy's relationship
with the California Peace Officers Standards and Training
Commission (POST) and attend numerous POST Commission
meetings.  Manage the LAPD/West Point Leadership Program.
Manage the LAPD Personal Protection Equipment and Weapons
of Mass Destruction (PPE/WMD) training program, including
liaison with the Los Angeles County Sheriff's Department and the
California Specialized Training Institute (CSTI).
(Retired from active service May 31, 2006)

1999 – 2004      **Commanding Officer, Valley Traffic Division** (Captain II)
Line command of more than 200 employees assigned to enforce
the traffic laws, investigate traffic collisions, conduct follow-up
investigations of major injury and fatal collisions, hit/run collisions,
and arrests, and educate the public about traffic collision
prevention issues.  Review/adjudicate police pursuits, employee-
involved traffic collisions, use of force and internal affairs cases.
Expert resource for LAPD on pursuit reviews.  Serve as chairman
or associate member of numerous Boards of Rights (internal
discipline tribunals to conduct *de novo* hearings of internal affairs
cases). Review and approve probationary officer rating reports.
Liaise with community groups, politicians, the insurance industry,
transportation engineers, surrounding police agencies, and others
to reduce deaths and injuries on our highways.  Deploy field
forces to perform the traffic safety, enforcement and collision
investigation mission in a manner that simultaneously assists
patrol divisions with their crime control activities.  Coordinated
operations of  LAPD/CHP sobriety checkpoints.  Task Force
coordinator for crime-suppression operations throughout the San
Fernando Valley (2002-2004).

# GREG MEYER

_____

| | |
|---|---|
| 1998 – 1999 | **Commanding Officer, North Hollywood Operations Support Division** (Captain I)<br>Line command of 95 employees assigned to detectives (including homicide, crimes against persons, sexual assaults, suspected child abuse reports, robbery, burglary, auto theft), vice, CRASH [the gang detail], bike/hype detail, career criminal apprehension, in-service training coordination, probationary officer training coordination including approval of probationary rating reports and counseling unsatisfactory probationary officers, personnel investigations, and crime analysis. Review/adjudicate pursuits, employee-involved traffic collisions, use of force, and internal affairs cases. Serve as chairman or associate member of numerous Boards of Rights (internal discipline tribunals to conduct *de novo* hearings of internal affairs cases). Area liaison to the North Hollywood business and security communities. Act for the Area Commanding Officer in his absence. Creator of the *"Spike Busters!"* crime-control program in support of the FASTRAC command-accountability process. Act for the Area commanding officer in his absence. |
| 1996 - 1998 | **Watch Commander, West Traffic Division** (Lieutenant)<br>Line supervision of 90 employees, including 10 sergeants assigned to collision investigation, traffic enforcement, community traffic services. Act for the commanding officer in his absence. Oversee implementation and effectiveness of goals and expectations for employee productivity and work quality. Review/adjudicate employee-involved traffic collisions, use of force, and internal affairs cases. Monitor and rate the work of supervisory employees. Instrumental in development and implementation of the division's Vision and Mission Statements, and the Strategic Plan. Act for the commanding officer in his absence. |
| 1994 - 1996 | **Assistant Commanding Officer, Wilshire Detective Division** (Lieutenant)<br>Line supervision of 90 employees, and coordination responsibilities for follow-up investigations including murder, manslaughter, rape/sexual assaults, child abuse, robbery, aggravated assault, burglary, auto theft, juvenile matters, and other crimes. Act for the commanding officer in his absence. Monitor and evaluate the work of supervisory employees. Leader of the Operations-West Bureau Detective Mobile Field Force during emergency operations. Review/adjudicate pursuits, employee-involved traffic collisions, use of force, and internal affairs cases. Co-creator, "Predators to Prison" program targeting parolees-at-large. Act for the commanding officer in his absence. |

## GREG MEYER

_____

1993 - 1994     **Patrol Watch Commander, Wilshire Area** (Lieutenant)
Line supervision for patrol sergeants and officers responding to emergencies and handling basic calls for service. Take field command of major tactical incidents. Supervise the division's probationary officer training coordinator, approve probationary rating reports and conduct feedback and counseling to satisfactory and unsatisfactory probationary officers. Monitor and rate the work of supervisory employees. Review/adjudicate pursuits, employee-involved traffic collisions, use of force, and internal affairs cases. Act for the commanding officer in his/her absence.

1991 - 1993     **Adjutant/Aide to the Commanding Officer and the Assistant Commanding Officer, Operations-Headquarters Bureau** (Senior Sergeant)
Perform administrative functions (including review of internal affairs, use of force, and pursuit investigations) for the command that includes specialized detective functions, narcotics, SWAT, Metropolitan Division, Air Support Division, Tactical Planning Section, and Traffic Coordination Section. Reviewer of officer-involved shootings and other major use-of-force incidents for the deputy chief who was a member of the LAPD Use of Force Review Board.

1989 – 1991     **Adjutant to the Commanding Officer, Detective Support Division** (Senior Detective)
Perform administrative functions (including review of internal affairs and use of force investigations) for the command that includes Special Investigation Section, Criminal Conspiracy Section, Gang Information Section, Fugitive/Warrant Section, and Asian Crime Investigation Section.

1988 - 1989     **Field Detective, Hollywood Area** (Detective)
Conduct follow-up investigations on reports of crime; write and serve search and arrests warrants; make arrests; testify in court.

1986 - 1988     **Assistant Officer-in-Charge, Traffic Coordination Section** (Senior Sergeant)
Line supervision for the Traffic Legislation and Special Projects Unit. Act for the officer-in-charge in his absence. Monitor and rate the work of supervisory employees; supervised work on LAPD pursuit policy revisions supervised the Specialized Collision Investigation Detail (SCID) re major accidents involving the Police and Fire Departments, including pursuits; City-wide coordination of review of police pursuits and employee-involved traffic collisions; wrote policy change to accommodate California Supreme Court ruling that established standards for operating sobriety checkpoints; coordinated planning and operations of LAPD/CHP sobriety checkpoints; authored the Office of

## GREG MEYER

_____

Operations Management Paper, "1987—The Year of Traffic Enforcement" and several articles for the Chief of Police.

1985 - 1986     **Officer-in-Charge, Prostitution Enforcement Detail, Hollywood Vice** (Sergeant)
Line supervision and performance evaluation for personnel assigned to suppress street prostitution in Hollywood Area.

1984 - 1985     **Officer-in-Charge, Hollenbeck Footbeats; and Patrol Supervisor** (Sergeant)
Line supervision and performance evaluation for uniformed personnel assigned to footbeat patrols in several housing projects and business districts; and perform general patrol supervision. Officer-in-charge of field transportation detail in the Coliseum/USC/Exposition Park venue during the 1984 Olympic Games.

1982 - 1984     **Detective, Hollywood Area** (Police Officer III)
Conduct follow-up investigations on reports of crime (robberies, sexual assaults, auto-related crimes, burglaries and thefts, juvenile). Write and search and arrest warrants, make arrests, testify in court. Honored as the 1983 Hollywood Detective of the Year.

1981 - 1982     **Researcher, Tactical Planning Section** (Police Officer III)
Author of LAPD's Watch Commander's Guide for Control of Disasters and Other Emergencies, as well as numerous other staff research projects. Field command post equipment driver.

1980 - 1981     **Field Training Officer, Venice Area** (Police Officer III)
Train, evaluate and document the performance of probationary police officers, respond to calls for service and conduct general patrol functions, make arrests, testify in court.

1979 - 1980     **Staff Researcher/Adjutant, Planning and Research Division** (Police Officer II and III)
**Primary researcher and field-test coordinator, LAPD's nonlethal weapons program including TASER, teargas sprays, other devices.** Demonstrate these devices to police managers, political officials, and the media. Write LAPD policy and training material on nonlethal weapons. Train police academy staff and front-line supervisors as users of these devices. Author of numerous other staff projects. Perform administrative functions for the commanding officer including review of proposed LAPD policy changes.

1978 - 1979     **Patrol Officer, Southwest Area** (Police Officer I and II)
Respond to calls for service and conduct general patrol functions, make arrests, testify in court.

**GREG MEYER**
_____

1978                 **Recruit Officer** (Police Officer I)
                     In training at the Academy.

1977 - 1978          **Patrol Officer, Long Beach Police Department** (Police Officer);
                     Respond to calls for service and conduct general patrol functions,
                     make arrests, testify in court.

1976 - 1977          **Reserve Police Officer, Wilshire Area** (Line Reserve Officer)
                     Respond to calls for service and conduct general patrol functions,
                     make arrests, testify in court.

**GREG MEYER**

_____

\*      **Interviewed by local and national media** (1980 - present):

| | |
|---|---|
| o   Time | \* US News & World Report |
| o   Police Chief (IACP) | \* Longview News-Journal (TX) |
| o   Los Angeles Times | \* Fox News 11, "Studio 11 LA" |
| o   Los Angeles Herald Examiner | \* Associated Press (AP) |
| o   Los Angeles Daily News | \* Money Magazine |
| o   Good Housekeeping | \* Grand Junction (CO) Sentinel |
| o   Aspen Daily News | \* Miami Daily Business Review |
| o   The Mountain Enterprise | \* Court-TV |
| o   FOX News  (Tampa, FL) | \* POLICE Magazine (multiple occasions) |
| o   San Francisco Chronicle | \* National Public Radio (NPR) |
| o   Austin American-Statesman | \* Charlotte (NC) Observer |
| o   Police & Security News | \* Force Science News (multiple occasions) |
| o   Law Enforcement Management Bulletin | \* Long Beach (CA) Register |
| o   Nick Berardini (documentary on TASERs) | \* RT.com |
| o   PoliceOne.com | \* Discovery Channel |
| o   KNBC-TV, KABC-TV, KCBS-TV, | \* Kansas City Star |
| o   KTLA-TV, KTTV-TV | \* Las Vegas Sun Times |
| o   The Capital (Anne Arundel, MD) | \* Oakland Tribune |
| o   WNYC Radio (New York) | \* San Francisco Examiner |
| o   Slate | \* Las Vegas Review Journal |
| o   Discovery Channel Canada | \* St. Petersburg Times |
| o   KLAS-TV Channel 8 (Las Vegas) | \* Acadiana Advocate |
| o   The Daily (New York) | \* KPCC Public Radio |
| o   Tampa Bay Times | \* KCRW Radio |
| o   Columbus (GA) Ledger-Enquirer | \* Washington Post |
| o   Salt Lake Tribune | \* Scripps Television |
| o   Baltimore Sun | \* BBC |
| o   The Daily Breeze (CA) | \* CNN Digital |
| o   Tallahassee Democrat | \* KCBS Radio (San Francisco) |
| o   The Today Show (NBC) | \* Daily Mirror (London, UK) |
| o   The News Hour (PBS) | \* Boston Herald |
| o   Hawaiian News Now | \* Forbes |
| o   USA Today | \* KUOW Radio-Seattle |
| o   Harvard-Westlake Chronicle | \* TheInfluence.org |
| o   Reuters | \* New York Times |
| o   The Independent (Colorado Springs) | \* Bucks County Courier Times |
| o   Viewpoints Radio | \* Los Angeles Magazine |
| o   Spectrum News | \* The Oregonian |
| o   The California Newsroom | |

**GREG MEYER**

_____

**PARTIAL
BIBLIOGRAPHY:**    <u>PAST 10 YEARS</u>

**"Rodney King: 30 Years Later,"** op-ed article for the Los Angeles Daily Journal on the 30th anniversary of the incident (March 3, 2021)

**"How Do We Save More Blue Lives from Being Murdered?"** article for PoliceOne.com (2020)

**"Tactics and Training: A Half-Century of Change—where we've been, where we're at, where we're going,"** three-part article series for POLICE magazine (2019)

**"Will the New Year Be Safer for You?,"** guest editorial, POLICE Magazine (January 2018)

**"LAPD's Use of Force Policy Revision,"** article, POLICE magazine online (April 2017)

"**A Revolution in Use-of-Force Policy and Training?"** article, POLICE magazine (March 2016)

**"Nonlethal weapons revisited: A tactical update,"** article, PoliceOne.com (September 2015)

"**Improving ECW Tactics and Policies,"** article, POLICE magazine (August 2015)

**"Body Cameras –Keep It Real,"** guest editorial, POLICE magazine (June 2015)

**"Drafting Your Agency's Body-Worn Camera Policy,"** lead article, POLICE magazine body-camera supplement (June 2015)

"**Digital Video: Working Under the Microscope,**" article, POLICE magazine online edition (June 2015)

**"Unarmed Suspects and 'Un-brained Media,"** guest editorial, POLICE magazine (October 2014)

**GREG MEYER**

_____


**LITIGATION
and CASE REVIEW
ACTIVITIES:**    <u>1989-PRESENT:  CASES: 448     DEPOSED: 86     TESTIFIED: 70</u>


**Cases are organized by:**
- **Police defense cases (civil)**
- **Plaintiff cases against police (civil)**
- **Police defense cases (criminal)**
- **Police prosecution cases (criminal)**
- **Arbitrations, administrative appeals for officers**
- **Arbitrations, administrative appeals against officers**
- **Other matters**
- **Independent case reviews for prosecutors**
- **Independent case reviews for law enforcement agencies**


## <u>PAST 4 YEARS OF TESTIMONY</u>

<u>**Police defense cases (civil)**</u>

**Hereford v. City of Hemet** (CA) (2023) (Federal)
Expert witness for the defense, civil suit alleging excessive force, false arrest (Deposed)

**Nguyen v. City of Garden Grove** (CA) (2023) (Federal)
Expert witness for the defense, civil suit alleging wrongful conviction, detective negligence (Deposed)

**Lennox v. City of Sacramento** (CA) (2023) (Federal)
Expert witness for the defense, civil suit alleging excessive force, officer-involved shooting, TASER involved (Deposed)

**Pineda v. Officer Manzano** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging false arrest, excessive force (Testified)

**Soliz v. CHP** (CA) (2022)
Expert witness for the defense, civil suit alleging negligence regarding provision of medical care during arrest (Testified)

**Valdez v. Roberts** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging excessive force, negligence (Deposed; Testified)

**Lorenz and Popat v. County of San Bernardino** (CA) (2022) (Federal)
Expert witness for the defense, civil suit alleging false arrest, excessive force (Deposed)

## GREG MEYER

_____

**Maroney v. County of Riverside** (CA) (2022) (Federal)
> Expert witness for the defense, civil suit alleging false arrest, excessive force (Deposed)

**KJP v. County of San Diego (re-trial)** (CA) (2022) (Federal)
> Expert witness for the defense, civil suit alleging excessive force, arrest-related death TASER issues (Testified)

**Costa v. State of California** (CA) (2022)
> Expert witness for the defense, civil suit alleging excessive force, arrest-related death (Deposed)

**Almahmodi v. City of La Mesa** (CA) (2021) (Federal)
> Expert witness for the defense, civil suit alleging battery, unnecessary handcuffing, failure to intervene, ADA violations, Monell (Deposed)

**J.A., Ruiz v. County of San Bernardino** (CA) (2021) (Federal)
> Expert witness for the defense, civil suit alleging excessive force, wrongful death, officer-involved shooting (Deposed)

**Skommesa v. City of Murrieta** (CA) (2021) (Federal)
> Expert witness for the defense, civil suit alleging excessive force (Deposed)

**Arlington v. County of Santa Barbara** (CA) (2021)
> Expert witness for the defense, civil suit alleging excessive force (Deposed; testified)

**Mendez v. City of Chicago** (IL) (2021) (Federal)
> Expert witness for the defense, civil suit alleging negligence during search warrant service (Deposed)

**Gonzalez v. State of California** (CA) (2021) (Federal)
> Expert witness for the defense, civil suit alleging excessive force, arrest-related death, TASER and OC pepper spray involved (Deposed)

**Anumudu v. Salvador** (CA) (2020) (Federal)
> Expert witness for the defense, civil suit alleging false arrest (Deposed)

**Lacy v. County of San Diego** (CA) (2019)
> Expert witness for the defense, civil suit alleging excessive force, deputy-involved shooting (Deposed; testified)

**Barron v. State of California (CHP)** (CA) (2018) (Federal)
> Expert witness for the defense, civil suit alleging excessive force, fatal officer-involved shooting, TASER issues (Deposed; testified)


**Plaintiff cases against police (civil)**

**Ratlieff v. City of Ft. Lauderdale** (FL) (2023) (Federal)
> Expert witness for the plaintiff, civil suit alleging violation of First Amendment rights, excessive force at a demonstration (Deposed)

## GREG MEYER

_____

**Gray v. City of St. Louis**  (MO) (2022) (Federal)
    Expert witness for the plaintiff, civil suit alleging false arrest, excessive force (TASER, pepper spray, physical force) (Deposed)

**Cardenas v. Saladen** (AZ) (2019) (Federal)
    Expert witness for the plaintiff, civil suit alleging unlawful entry, false arrest, excessive force, TASER related (Deposed)

### Police defense cases (criminal)

**People v. Captain Taylor and Officer Dingman** (OK) (2021)
    Expert witness for the criminal defense, officers accused of murder, TASER involved (Testified)

### Police prosecution cases (criminal)

**State of California v. Deputy Luke Liu** (2019) (California)
    Expert witness for the prosecution, deputy accused of excessive force, deputy involved shooting (Testified)

### Arbitrations, administrative appeals for officers

**Officer Alatorre admin appeal** (CA) (2021)
    Expert witness for the officer in an administrative hearing related to discipline resulting from use of an impact weapon (flashlight) to suspect's head (Testified)

### Arbitrations, administrative appeals against officers

**Sivilay v. Riverside County** (CA) (2022)
    Expert witness for the agency; appeal of termination regarding excessive force (Testified)

### Other matters

**People v. David Monzon** (CA) (2023)
    Expert witness for the prosecution, criminal case for 69PC (resisting by threat or violence), TASER and takedown issues during active resistance and assaultive behavior by the suspect (Testified)

### Independent case reviews for prosecutors

**re El Centro Police** (CA) (2023)
    Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**GREG MEYER**

_____

**re Bakersfield Police** (CA) (2023)
    Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Tustin Police** (CA) (2023)
    Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Los Angeles Police** (CA) (2022)
    Non-testifying expert consultant for the State Attorney General; retained to conduct an independent review of a fatal officer-involved shooting, with potential criminal charges (Pending)

**re Santa Paula Police** (CA) 2020
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Santa Paula Police** (CA) 2020
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Santa Paula Police** (CA) 2020
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Santa Paula Police** (CA) 2020
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty police officer, with potential criminal charges (Work completed)

**re Ventura County Sheriff** (CA) 2020
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use-of-force incident by an on-duty deputy in a jail setting, with potential criminal charges (Work completed)

**re Los Angeles Sheriff** (CA) 2018
    Expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Long Beach Police** (CA) 2018
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Tehachapi Police** (CA) 2018
    Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer with potential criminal charges (Work completed)

**GREG MEYER**

_____

**re Sacramento County Sheriff** (CA) (2017)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Los Angeles Police** (CA) (2017)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by an on-duty law enforcement officer, with potential criminal charges (Work completed)

**re Long Beach Police** (CA) (2016)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of an officer-involved shooting incident by on-duty law enforcement officers ,with potential criminal charges (Work completed)

**re Montebello Police** (CA) (2015)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use of force incident by on-duty law enforcement officers with potential criminal charges (Work completed)

**re California Highway Patrol** (CA) (2015)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a use of force incident by an on-duty law enforcement officer with potential criminal charges (Work completed)

**re Gardena Police** (CA) (2014)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a fatal shooting by on-duty law enforcement officers with potential criminal charges (Work completed)

**re Deputy US Marshal** (CA) (2009)
> Non-testifying expert consultant for a District Attorney's office; retained to conduct an independent review of a fatal shooting by an off-duty law enforcement officer, with potential criminal charges (Work completed)

**United States v. Thompson** (WA) (2009) (Federal)
> Non-testifying expert consultant for an Assistant United States Attorney, retained to conduct an independent review of use of force issues for a federal civil rights prosecution of a local police officer, including TASER issues. (Work completed)

**Independent case reviews for law enforcement agencies**

**[caption confidential]** (FL) (2022) (Jones)
> Non-testifying expert consultant for a local police agency, to conduct an independent review of a use-of-force incident by a patrol officer, TASER involved, for internal affairs purposes (Work completed)

**[caption confidential] CDCR Incident** (CA) (2022) **(**Bravo)
> Non-testifying expert consultant for the agency, to conduct an independent review of a use of physical force by a corrections officer, for internal affairs purposes. (Work completed)

**GREG MEYER**

_____

**[caption confidential] Patrol UOF Incident** (MT) (2022) (Hardin)
   Non-testifying expert consultant for a police chief, to conduct an independent
   review of a fatal officer-involved shooting by an on-duty patrol officer, TASER
   involved, for internal affairs purposes. (Work completed)

**[caption confidential]  Patrol OIS Incident** (CA) (2021)(Indio)
   Non-testifying expert consultant for a police chief, to conduct an independent
   review of a fatal officer-involved shooting by an on-duty patrol officer, for internal
   affairs purposes. (Work completed)

**[caption confidential] Patrol UOF Incident** (CA) (2019) [KC file ending in 2469]
   Non-testifying expert consultant for a law enforcement agency; retained to
   conduct an independent review of a use of force incident by an on-duty patrol
   sergeant for internal affairs purposes. (Work completed)

**[caption confidential] Jail UOF Incident** (CA) (2018) [KC file ending in 9860]
   Non-testifying expert consultant for a law enforcement agency; retained to
   conduct an independent review of a use of force incident by an on-duty custody
   deputy for internal affairs purposes. (Work completed)

**[caption confidential]  Patrol OIS Incident** (CA) (2018) [SB file ending in 7369]
   Non-testifying expert consultant for a law enforcement agency; retained to
   conduct an independent review of a fatal officer-involved shooting by an on-duty
   patrol deputy for internal affairs purposes. (Work completed)