UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 5:23-cv-00515-HDV-JPR | Date | December 27, 2024 |
|---|---|---|---|
| Title | *Edgar Solis v. County of Riverside, et al.* | | |

Present: The Honorable    Hernán D. Vera, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):     Attorney(s) Present for Defendant(s):

None Present     None Present

**Proceedings:    IN CHAMBERS—ORDERS RE PARTIES' MOTIONS IN LIMINE [DKT. NOS. 53, 54, 55, 56, 57, 65, 71]**

## I.    INTRODUCTION

Plaintiff Edgar Solis brings this Section 1983 action against Defendants, the State of California and California Highway Patrol Officer, Michael Bell, for excessive force and related claims arising from an officer-involved shooting. Mr. Solis was shot multiple times by Officer Bell and one of his partners, Deputy Salvador Waltermire, during his arrest.[1]

The relevant facts alleged are essentially as follows. On March 2, 2022, Hemet Police Department received a "Be on the Lookout" ("BOLO") report for Solis. The BOLO stated that Solis had felony warrants for carjacking and robbery and was possibly armed. Officers responded to the BOLO. After Solis' vehicle was located and stopped, Solis was asked to exit his vehicle. Solis did not comply, however. Instead, he drove in reverse to the end of a cul-de-sac, exited his vehicle, and proceeded on foot. The officers chased Solis through a residential neighborhood and, when Solis ran into the backyard of a private residence, fired multiple times striking Solis.

Before this Court are seven motions *in limine* ("MILs")—five from Solis and two from Defendants—that seek to exclude certain evidence from being introduced at the upcoming trial. On October 1, 2024, the Court heard oral argument on the MILs and took the motions under

---

[1] Deputy Waltermire has settled his claims with Plaintiff and is no longer a party to this suit.

submission. [Dkt. No. 90]. Having considered the parties' MILs, supporting declarations, oppositions, and oral arguments, the Court rules as follows.

## II. PLAINTIFFS MOTIONS IN LIMINE

### A. Plaintiff's MIL #1 [Dkt. No. 53]

Plaintiff's first MIL seeks to exclude all evidence that was unknown to Officer Bell, the arresting officer, at the time of the shooting. This evidence includes Solis' history of substance use, criminal history, speculative statements of Solis' intent and thoughts, evidence of "bad acts," and other information that was later acquired through investigatory reports. [Dkt. No. 53]. Courts in this district have held that "[i]n an excessive force case such as this, the relevant inquiry is 'whether the officers' actions are 'objectively reasonable' *in light of the facts and circumstances confronting them*, without regard to . . . underlying intent or motivation.'" *Valtierra v. City of L.A.*, 99 F. Supp. 3d 1190, 1193 (C.D. Cal. 2015) (emphasis in original).

Applying this standard, the Court concludes that while the facts in the BOLO are admissible—including the statement that Solis may be armed, and his warrants for robbery and carjacking—his history of substance abuse, prior "bad acts", and other criminal history are not. This other evidence was not included in the BOLO and was therefore not information that Officer Bell had at the time of the shooting. Under Fed. R. Evid. 403, the probative value of this evidence is minimal (if any) and is substantially outweighed by the serious prejudice to Plaintiff.

Plaintiff's first MIL is therefore granted.

### B. Plaintiff's MIL #2 [Dkt. No. 54]

Plaintiff's second MIL seeks to exclude four categories of evidence that Plaintiff contends are speculative and unfairly prejudicial. Specifically, Solis requests that the Court find inadmissible: (1) evidence of any inference that Plaintiff shot at Officer Bell, (2) Opinion #9 from Defendants' video expert Parris Ward, (3) Gang Task Force information, and (4) unrelated use of force incidents where officers were shot.

As to the first category, the Court agrees. There is no plausible evidence that Solis fired a weapon at the officers during the incident. To the contrary, during Officer Bell's initial interview after the shooting, he did *not* say that Plaintiff shot at him. There was also no investigation as to whether Plaintiff shot at Officer Bell. During Officer Bell's deposition, he stated that he did not see Plaintiff pull the trigger of a gun, did not hear a gunshot come from Plaintiff's direction, and did not see Plaintiff fire a weapon. See Declaration of Marcel F. Cincich ("Cincich Decl."), Exhibit A at 14:12-25–15:1-10 [Dkt. No. 62-1]. While Defendants are certainly within their rights to testify that he was "lying in wait", to allow the inference that Solis possibly fired his weapon is inconsistent with the record and unfairly prejudicial under Rule 403.

Similarly, the opinion of Defendants' expert, Parris Ward, that it *may* be possible that Solis fired a shot is also inadmissible. Mr. Ward opines that it is possible that Mr. Solis fired the gun at the same time as Officer Bell or Deputy Waltermire. Pl.'s MIL #2 at 2. He bases this

opinion on his analysis of the audio recording, concluding that it is possible that the rounds were filed simultaneously. He also notes that there was an empty chamber in the gun. Cincich Decl., Ex. H at 13.[2]

Federal Rule of Evidence 702 allows an expert witness to testify so long as "the proponent demonstrates to the court that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702. Rule 702 aims to ensure an expert is qualified and their testimony is relevant and reliable. Whether the testimony helps the trier of fact "goes primarily to relevance." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)). To assess whether the testimony is reliable, "the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance," though the reliability test is "flexible" and the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Primiano*, 598 F.3d at 564 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). A "trial court has broad latitude not only in determining whether an expert's testi mony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Defendants fail to satisfy this standard as to the testimony of Mr. Ward. Mr. Ward's opinion (Ex. H at 13) that a gunshot is "possible" based on the sound recording is based on insufficient data (one recording), is of minimal relevance, and does not reflect a reliable application of scientific principles to the instant case. Mr. Ward simply opines about a mere possibility, but this opinion is pure conjecture and is not corroborated by any other physical evidence. Most notably, Officer Bell did not hear any gunshots coming from Mr. Solis' direction, and there was no evidence of any gun residue to indicate that the gun was used at the scene. His testimony will be excluded.

As to the third category—regarding Officer Bell's involvement in the Gang Task Force Unit—the Court concludes that this evidence is admissible as relevant background. Officer Bell will be allowed to discuss generally his training and experience as an officer in the Gang Task Force unit, but *not* to discuss Plaintiff's possible involvement in any gang activity. Defendants also seek to introduce evidence of other incidents (not involving Plaintiff) where officers were

---

[2] The Court gives no weight to the expended round since that chamber was in the **opposite** direction to the rotation direction of the barrel—thus effectively establishing that the gun could not have been used. Pl.'s MIL #2 at 8–9. Defendants provide no explanation for the location of the expended round.

shot. The Court finds that the minimal probative value of this evidence is substantially outweighed by its undue prejudice to the Plaintiff, and therefore excludes it under Rule 403.

### C. Plaintiff's MIL #3 [Dkt. No. 55]

Plaintiff's third MIL seeks to exclude any testimony of Officer Bell's beliefs and subjective fears about whether the Plaintiff was fleeing from a felony that threatened death or serious bodily injury *and* whether some unknown bystander would potentially be threatened by Mr. Solis.

The motion is denied. At the time of the incident, Officer Bell was aware that Plaintiff had outstanding warrants for carjacking and robbery, as described in the BOLO. And it is probable that Officer Bell believed that Plaintiff ran from the officers because of Plaintiff's warrants and imminent arrest. Officer Bell's beliefs are therefore relevant to the extent that they provide context about his motivation and state of mind in exiting the vehicle and chasing Plaintiff. Officer Bell's purported beliefs about the safety of bystanders are relevant for the same reasons. Neither form of evidence is unduly prejudicial under Rule 403.

### D. Plaintiff's MIL #4 [Dkt. No 56]

Plaintiffs fourth MIL seeks to exclude evidence of Defendants' toxicology expert, Dr. Ritter. Defendants intend to elicit expert testimony from Dr. Ritter concerning Plaintiff's toxicology report (which shows that Mr. Solis was positive for PCP and methamphetamine) as well as testimony that the drugs in his system played a role in the pain that he would have felt, and the number of shots required to immobilize Mr. Solis. Cincich Decl., Ex. J 42:1–11.

The Court grants the motion, in part, and denies it in part. Dr. Ritter is an experienced emergency room physician who is qualified to opine on the toxicology reports. To the extent that Plaintiff seeks emotional distress damages concerning the incident, his toxicology report is therefore relevant to what he experienced on that day. And Dr. Ritter is more than qualified to testify about how those levels of drugs could affect the pain levels experienced by the Plaintiff. To that limited extent, Dr. Ritter's testimony will be allowed.

But Dr. Ritter is **not** qualified to testify on the effects of methamphetamine and PCP on Mr. Solis' behavior during the incident. Dr. Ritter has no knowledge of Mr. Solis' prior drug use or his habituation levels, so he cannot opine on the effects that methamphetamine and PCP had on Mr. Solis' physical impairment. *See, e.g., Castro v. Cnty. of L.A.*, No. 2:13-CV-06631-CAS-SSX, 2015 WL 4694070 at *9 (C.D. Cal. Aug. 3, 2015) (finding that a licensed physician who directs a toxicology laboratory may not opine on the effects of drugs on the decedent's mental state and behavior *during* the incident with police officer without knowledge of the decedent's prior drug use or habituation levels). And although Dr. Ritter has undoubtedly seen many gunshot wounds in the ER, he absolutely has no expertise or experience relevant to how an individual in a police chase would physically react in the moment to multiple gunshot wounds, and no background in ballistics or police practices to speculate on how many rounds of that specific gun caliber it would require to incapacitate the Plaintiff. His testimony is therefore excluded under Rule 702.

**E. Plaintiff's MIL #5 [Dkt. No. 57]**

Plaintiff's MIL #5 seeks to exclude the opinions of Defendants' expert, Greg Meyer. The Court addresses each separately.

1. <u>Opinion 1</u>: <u>Officer Bell's use of deadly force conformed to contemporary law enforcement training and procedures</u>.

Mr. Meyer's principal opinion is the following:

> "Based on my training and experience along with my review of the evidence in this case, if under the totality of the circumstances CHP Officer Bell reasonably perceived that the actions of Plaintiff Solis created an imminent/immediate danger of death or serious bodily injury to Officer Bell or others, then Officer Bell's use of deadly force conformed with contemporary law enforcement training and procedures, and any reasonable officer could have done the same thing."

[Dkt. No. 86-1 at 7]. In coming to his conclusion, Mr. Meyer analyzes and discusses the video evidence, various deposition transcripts, the toxicology report, and analyzes the Graham factors. *Id*. at 16-17.

Plaintiff moves to exclude Mr. Meyer's main opinion on the grounds that he has no "reliable methodology" for rendering an opinion about whether Officer Bell's acts conformed to accepted law enforcement practices. *See* Plaintiff's MIL #5. Plaintiff also contends that Mr. Meyer's opinion is based on evidence outside of what Mr. Bell knew at the time, and that various subsidiary opinions are outside of his area of expertise. *Id.*

As to the principal opinion described above, the motion to exclude is denied. Mr. Meyer has over 50 years of law enforcement experience, and his significant expertise in "force reviews." *See* Meyer CV. [Dkt. No. 86-1 at 35-116]. Whether Defendants used excessive force is one of the central issues in this case, and Mr. Meyer has the requisite experience and training under Rule 702 to opine on this issue. His opinion also relies on and applies the appropriate Graham factors, which essentially lays out the "methodology" for the analysis. In short, Mr. Meyer's opinions about best practices and how Officer Bell's actions did (or did not) conform to those accepted practices will be allowed.

At the same time, Plaintiff is correct that Mr. Meyer's report goes beyond his expertise in certain respects. He is not an expert on sound processing of any kind, and therefore has no basis to opine about "auditory exclusion." That aspect of his opinion is inadmissible. Similarly, he has no basis to give opinions on the toxicology report because that information was not known to Officer Bell at the time of the relevant incident. That portion of his opinion is also excluded, including any other information that was not contemporaneously available to the officers. Finally, the Court excludes various other subsidiary opinions—including his speculation that Plaintiff may have fired a weapon and the possible effects of meth and PCP on the Plaintiff. All of these are beyond the scope of his expertise and are therefore excluded.

    2. <u>Opinion 2</u>: "Mr. Solis set in motion a series of events that resulted in the shooting."[3]

Mr. Meyer's second opinion is the statement: "Had Mr. Solis merely obeyed the law and surrendered when Officer Bell attempted to detain and arrest him, the shooting incident would not have occurred." *See* Meyer Report at 33. This purported opinion is excluded for two reasons. First, it goes to an ultimate fact (causation) and therefore invades the province of jury. And second, it is improper expert opinion testimony under Rule 702 because it does not depend on any specialized knowledge. The purported opinion is merely a tautology, and this type of inference is one that the jury can make on its own. Nothing in Mr. Meyer's report makes this conclusory statement helpful to a jury. It is excluded.

## III.   DEFENDANTS' MOTIONS IN LIMINE

### A.   Defendants' MIL #1 [Dkt. No. 65]

Defendants' first MIL seeks to exclude as irrelevant any evidence of the personnel records of the police officers who were involved in Plaintiff's arrest. Specifically, Defendants seek to exclude any questioning or testimony regarding the officers' personnel matters such as prior complaints concerning job performance, investigations of complaints, and prior disciplinary actions. Plaintiff maintains that he does not intend to introduce the personnel records unless Defendants open the door. Defendants' motion is granted, with the qualification that the Court may allow these records to be used for impeachment purposes if directly relevant to an issue covered by direct testimony.

### B.   Defendants' MIL #2 [Dkt. No. 71]

Defendants move to exclude Plaintiff's testimony relating to topics on which he invoked his Fifth Amendment privilege at his first deposition. However, as Plaintiff is now prepared to waive his Fifth Amendment right and provide further testimony at a second deposition, this MIL is moot. The Court will permit Plaintiff to testify at trial on topics he testifies to during his continued deposition.

## IV.   CONCLUSION

Based on the foregoing, the Court grants Plaintiff's MIL #1, MIL #2, and MIL #5. Plaintiff's MIL #4 is granted in part and denied in part. And Plaintiff's MIL #3 is denied. Defendants' MIL #1 is granted, and Defendants' MIL #2 is denied, as moot.

**IT IS SO ORDERED.**

---

[3] Mr. Meyer's report erroneously identifies this opinion as "Opinion No. 3." *See* Meyer Report at 33.