1   ROB BONTA
    Attorney General of California
2   DONNA M. DEAN
    Supervising Deputy Attorney General
3   DAVID KLEHM
    Deputy Attorney General
4   State Bar No. 165302
    TAMMY KIM
5   Deputy Attorney General
    State Bar No. 262510
6    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
7    Telephone:  (213) 269-6182
     Fax:  (916) 731-2119
8    E-mail:  Tammy.Kim@doj.ca.gov
    *Attorneys for Defendants State of California,*
9   *acting by and through the California Highway*
    *Patrol (erroneously sued as "State of California")*
10  *and Michael Bell*

11

12              IN THE UNITED STATES DISTRICT COURT

13           FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15

16  **EDGAR SOLIS,**                      5:23-cv-00515-HDV-JPR

17                      Plaintiff,        **DEFENDANTS' NOTICE OF
                                          MOTION AND MOTION FOR
18          v.                            JUDGMENT AS A MATTER OF
                                          LAW; MEMORANDUM OF
19  **COUNTY OF RIVERSIDE; STATE          POINTS AND AUTHORITIES**
    OF CALIFORNIA; SALVADOR
20  WALTERMIRE; and DOES 1-10,**          [Fed. R. Civ. P. 50(a)(1)(B)]
    **inclusive,**
21                                        Courtroom:  5B
                        Defendants.       Judge:      The Honorable Hernan
22                                                     D. Vera
                                          Trial Date: 2/18/2025
23                                        Action Filed: 2/02/2023

24  TO PLAINTIFF AND HIS COUNSEL OF RECORD:

25          PLEASE TAKE NOTICE that defendants State of California, acting by and

26  through the California Highway Patrol (erroneously sued as "State of California")

27  and Michael Bell hereby move for judgment as a matter of law pursuant to Federal

28  Rule of Civil Procedure 50(a)(1)(B).

                                1

Plaintiff has failed to prove a 42 U.S.C. § 1983 violation based on the Fourth
Amendment against Defendant Bell for the following reasons:

1. Plaintiff has failed to prove that Defendant Bell used unreasonable force.

2. Qualified immunity bars Plaintiff's claim.

Plaintiff has failed to prove his state law claims for battery and negligence
against both Defendants for the following reasons:

1. Plaintiff has failed to prove battery, negligence and Bane Act claims for the
same reason as he lack of evidence on his Fourth Amendment claim;

2. Plaintiff has failed to prove his Bane Act claim for the additional reason
that he failed to prove that Officer Bell acted with the specific intent to
violate his constitutional rights;

3. Defendant Bell acted in self-defense;

4. California Government Code sections 820.2 and 815.2 bar Plaintiff's state
law claims;

5. California Government Code sections 820.4 and 815.2 barsPlaintiff's state
law claims;

6. California Penal Code sections 835, 835a, and 196(b) and California
Government Code section 815.2 bar Plaintiff's state law claims.

Accoridngly, judgment as a matter of law as to Plaintiff's claims should be
entered in Defendants' favor.  This Motion is based on this Notice of Motion and
Motion, the Memorandum of Points and Authorities filed in support thereof, the
pleadings on file in this action, all matters of which this Court must or may take
judicial notice, and such further evidence and argument as the Court may allow.

//

//

//

1    Dated:  February 26, 2025                    Respectfully submitted,

2                                                 ROB BONTA
                                                  Attorney General of California
3                                                 DONNA M. DEAN
                                                  Supervising Deputy Attorney General
4                                                 DAVID KLEHM
                                                  Deputy Attorney General
5
                                                  /s/ Tammy Kim
6
                                                  TAMMY KIM
7                                                 Deputy Attorney General
                                                  *Attorneys for Defendants*
8                                                 *State of California, acting by and*
                                                  *through the California Highway*
9                                                 *Patrol (erroneously sued as "State of*
                                                  *California") and Michael Bell*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I.      INTRODUCTION ...............................................................................1

II.     SUMMARY OF EVIDENCE ...........................................................1

III.    STANDARD FOR JUDGMENT AS A MATTER OF LAW .....................4

IV.    ARGUMENT ........................................................................................4

      A.    Officer Bell Is Entitled to Judgment As A Matter of Law In His Favor on Plaintiff's Fourth Amendment Claim.................................4

            1.   Plaintiff Has Not Proved that the Use of Force was Unreasonable..............................................................4

            2.   Qualified Immunity Bars Plaintiff's Section 1983 Claim. ..........8

      B.    Officer Bell Is Entitled to Judgment as a Matter of Law in His Favor on Plaintiff's State Law Claims.........................................11

            1.   Plaintiff Has Not Proved That Officer Bell's Use of Force Was Unreasonable; Therefore, Bell is Entitled to Judgment On All Three State Law Claims.................................11

            2.   The Bane Act Claim Further Fails for the Additional Reason That Plaintiff Proffered No Evidence that Officer Bell *Specifically Intended* to Violate Plaintiff's Right to Be Free From Unreasonable Seizure.................................12

            3    Plaintiffs' State Law Claims Are Barred By State Law Immunities. .........................................................13

V.     CONCLUSION ................................................................................16

i

# TABLE OF AUTHORITIES

**Page**

C ASES

*Alston v. Read*
  663 F.3d 1094 (9th Cir. 2011) ................................................................. 9

*Ashcroft v. al-Kidd*
  563 U.S. 731 ......................................................................................... 9

*Bratt v. City and County of San Francisco*
  50 Cal. App.3 d 550, 553 (1975) ..................................................... 8, 14

*Brosseau v. Haugen*
  543 U.S. 194 (2004) (per curiam) ................................................... 9, 10

*Brown v. Ransweiler*
  171 Cal. App. 4th 516 (2011) ......................................................... 11, 15

*Conway v. County of Toulumne*
  231 Cal. App. 4th 1005 (2014) .............................................................. 14

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*
  348 F.3d 271 (1st Cir. 2003) ................................................................. 4

*Davis v. Scherer*
  468 U.S. 183 (1984) ............................................................................. 9

*District of Columbia v. Wesby*
  583 U.S. 48 (2018) .......................................................................... 8, 10

*Elliott v. Leavitt*
  99 F.3d 640 (4th Cir. 1996) ................................................................. 7

*George v. Morris*
  736 F.3d 829 (9th Cir. 2013) ............................................................... 8

*Gilmore v. Superior Court*
  230 Cal. App. 3d 416 .......................................................................... 15

*Glenn v. Washington County*
  673 F.3d 864 (9th Cir. 2011) ............................................................... 6

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Graham v. Connor*
    490 U.S. 386 (1989) ..................................................................... 5, 6, 11

5

6

*Hayes v. County of San Diego*
    57 Cal.4th 622 (2013) ....................................................................... 12

7

8

*Hayes v. Cty. of San Diego*
    736 F.3d 1223 (9th Cir. 2013) ............................................................. 7

9

10

*Hernandez v. City of Pomona*
    46 Cal. 4th 501 (2009) ............................................................. 11, 12, 13

11

*Hopson v. Alexander*
    71 F.4th 692 (9th Cir. 2023) .......................................................... 8, 9, 10

12

13

*Kisela v. Hughes*
    584 U.S. 100 (2018) ............................................................................. 5

14

15

*Koussaya v. City of Stockton*
    54 Cal.App. ............................................................................... 12, 15

16

17

*Lal v. State of California*
    746 F.3d 1112 (9th Cir. 2014) ............................................................. 9

18

19

*M.J.L.H. v. City of Pasadena*
    No. CV 18-3249-JFW(SSX), 2019 WL 2249545 (C.D. Cal. May
    24, 2019) .......................................................................................... 11

20

21

*Malley v. Briggs*
    475 U. S. 335 (1986) .......................................................................... 9

22

23

*McCarthy v. Frost*
    33 Cal. App. 3d 872 (1973) ............................................................. 14

24

25

*McCorkle v. City of Los Angeles*
    70 Cal. 2d 252 (1969) ...................................................................... 14

26

*Michenfelder v. City of Torrance*
    28 Cal. App. 3d 202 (1972) ............................................................. 14

27

28

iii

1
2

## TABLE OF AUTHORITIES
### (continued)

Page

3
4
*Mitchell v. Forsyth*
    472 U.S. 511 (1985) ............................................................... 9

5
6
*Mullenix v. Luna*
    577 U.S. 7 (2015) ................................................................ 10

7
8
*Munoz v. City of Union City*
    120 Cal.App.4th 1077 (2004) ................................................ 12

9
*Munoz v. Olin*
    24 Cal.3d 629 (1979) ........................................................... 12

10
11
*Orn v. City of Tacoma*
    949 F.3d 1167 (9th Cir. 2020) ................................................ 9

12
13
14
*Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial
    Services, Inc.*
    537 F.3d 1184 (10th Cir. 2008) ............................................... 4

15
16
*Pearson v. Callahan*
    555 U.S. 223 (2009) .............................................................. 9

17
18
*Peck v. Montoya*, 51 F.4th 877, 888 (9th Cir. 2022), quoting *George v.
    Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ............................... 8

19
*Plumhoff v. Rickard*
    572 U.S. 765 (2014) .............................................................. 8

20
21
*Reese v. County of Sacramento*
    888 F.3d 1030 ............................................................. 12, 13

22
23
*Reichle v. Howards*
    566 U.S. 658 (2012) .............................................................. 9

24
25
*Reynolds v. County of San Diego*
    858 F.Supp. 1064 (S.D. Cal. 1994) ......................................... 15

26
27
*Ryburn v. Huff*
    565 U.S. 469 (2012) .............................................................. 6

28

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*S.B. v. County of San Diego*
    864 F.3d 1010 (9th Cir. 2017).............................................................5

*Shafer v. County of Santa Barbara*
    868 F.3d 1110 (9th Cir. 2017).............................................................9

*Smith v. Agdeppa*
    81 F.4th 994 (9th Cir. 2023).............................................................9

*Smith v. City of Hemet*
    394 F.3d 689 (9th Cir. 2005).............................................................5

*Tennessee v. Garner*
    471 U.S. 1 (1985).............................................................7

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010).............................................................6

*Williams v. City of Sparks*
    112 F.4th 635 (9th Cir. 2024).............................................................5

STATUTES

Bane Act .............................................................12

California Goverment Code
    § 815.2(b).............................................................15
    § 835a, subd. (d).............................................................15
    § 815.2(a).............................................................15
    § 820.2.............................................................13, 14
    § 820.4.............................................................14
    § 845.8(b)(3).............................................................15

Penal Code
    § 835 .............................................................15
    § 835a.............................................................15
    §196(b).............................................................15
    § 835a.............................................................15

CONSTITUTIONAL PROVISIONS

Fourth Amendment.............................................................4, 7, 10, 11

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

## COURT RULES

Fed. R. Civ. P. 50(a)(2)...............................................................................................4

Rule 50 ........................................................................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This lawsuit arises out of the non-fatal shooting of plaintiff Edgar Solis ("Solis") by California Highway Patrol Officer Michael Bell ("Officer Bell").  The shooting occurred after Solis fled from Officer Bell and other members of a Gang Task Force through two residential neighborhoods and three private residences—first, in his Mustang and then on foot—while armed with a gun and wanted on multiple felony arrest warrants for violent crimes, including robbery, carjacking, and illegal possession of a firearm by a felon.

## II.    SUMMARY OF EVIDENCE

On March 2, 2022, Officer Bell and his partner, Officer Sobaszek of the Hemet Police Department, were in an unmarked City of Hemet Ford Explorer with a push bumper, search lights, and emergency lights.  They had been advised to be on the lookout (BOLO) for Solis who was wanted on felony warrants for robbery, carjacking, drug possession, and felon in possession of a firearm.  Ex. 115.  The BOLO also warned that Solis was possibly armed and advised that Solis would be driving a 2005 green Ford Mustang.  *Id*.

In broad daylight in the afternoon, Officers Bell and Sobaszek spotted the green Mustang parked on a residential street in the City of Hemet.  The Mustang was facing the wrong way, and Officer Sobaszek stopped the Explorer "nose-to-nose" with the Mustang, with the red and blue flashing lights of the Explorer activated.  (Ex. 147-3.)  Officers Bell and Sobaszek approached the Mustang, with Officer Bell on the driver's side and Officer Sobaszek on the passenger's side, with their guns drawn. Officer Bell gave orders for Solis to put his hands up, but Solis only put up his left hand slightly, with his right hand reaching underneath a towel that covered the center console. (Ex. 147-4.) Officers Bell and Sobaszek noticed that the towel seemed to cover something.

Solis then put the Mustang in reverse, backed down the street, and then

accelerated forward—with tires screeching—into a yard.  (Exs. 122.)  In this

process, Solis crashed his Mustang into the carport and short brick wall of the

home.  (Exs. 146-1, 146-4.) The Mustang got stuck in the sand of that backyard

(Ex. 147-1), and Solis then fled on foot.  By at least this point in time, even

according to Solis's own testimony, Solis was aware that he was being pursued by a

police officer.  Officer Bell chased the Mustang on foot and then chased Solis when

he started running on foot. When Officer Bell next saw Solis, he was jumping over

a block wall. (Ex. 149-5.) Officer Bell noticed that Solis was carrying a gun – he

could see it shine in the sun.  Solis then ran through a cluttered side yard of Schlig's

residence and broke through a lattice fence, jumped over the picket fence (Exs. 149-

6 – 149-10), ran down the Hillmer cul-de-sac, and into a carport to another

backyard.  As Officer Bell followed Solis, Solis turned and crouched down behind

a chain link fence with privacy slats.[1]  Officer Bell saw Solis turn toward him with

the gun in hand and began firing five shots as Solis began moving away from him

again.  Solis ran towards the other side of the backyard of the residence, towards the

direction of aside door into the residence and white fence on the north-east side of

the backyard.  As Solis ran in that direction, he turned toward Officer Bell with the

gun swinging, and Officer Bell fired two more shots.  Officer Bell can be heard on

several ring camera videos giving Solis commands to drop the weapon and warning

that he would shoot, both before the first and second volleys.[2]

---

[1] The door of that privacy slat fence equipment area was open. (Ex. 16-30; Alvarado testimony.)  Nevertheless, Plaintiff's expert, Gary Adams, testified that a gun could not be seen behind the fence, despite that he did not go to the site at the same time of day, only examined the fence with the gate door closed, and took no notice of the position of the sun (i.e., he went at 5:00 p.m. in May or June when the sun sets at around 7:30 to 8:00 p.m., but the incident occurred at 4:10 p.m. on March 2 when the sun sets at around 5:45 p.m.).  In addition, Adams's testimony was completely discredited by his own photograph where his assistant and the yellow dummy gun was visible through the privacy slats on the fence. (Ex. 23-36.)  Notably, even Adams himself conceded that the shine from a black metal gun would reflect more than a yellow plastic dummy gun.

[2] Plaintiff presented two eyewitnesses, Jaden Schlig and Marlene Biggs, who testified that they did not see a gun in Solis's hands.  But Mr. Schlig admitted that
(continued…)

After Officer Bell fired, Riverside County Sheriff's Deputy Waltermire and Hemet Police Department's Sergeant Paez approached the white fence on the north-east side of the backyard. Before Deputy Waltermire fired any of his 11 rounds, Officers Bell and Sobaszek yelled for Waltermire to "Stop!" and "Behind you!" As shown on Sergeant Paez's body worn camera and testified to by Sergeant Paez, just as Waltermire went through the fence door, and before Waltermire fired any shots, Sgt. Paez held the swinging fence door open with one hand, had his other hand with gun drawn and pointed at Solis, and said, "I got him!" Despite these multiple communications from Bell, Sobaszek and Paez, Waltermire fired 11 rounds point blank at Solis and only stopped to reload his magazine when he ran out of bullets. (Exs. 122, 123.) Even Solis's own police practices expert, Roger Clark, admitted that Waltermire's 11 shots after these communications from Paez were in disregard of his supervisor and did not comply with POST standards. Notably, Solis was shot in the leg and hand by Deputy Waltermire, as shown in the body worn cameras, and as heard by Solis complaining of his leg only after Waltermire's 11 rounds were fired.

The body worn cameras also show, immediately before and after Waltermire's shots were fired, that a gun was next to Solis on the doorstep, within clear reach of Solis. (Exs. 122 & 123.) Solis admits that he had a gun, claimed only that he does not "remember" or "does believe" he had the gun in his hands, and that it clung to his sagging waistband throughout the various physical gymnastics of his chase. Solis's contention is belied by the physical evidence (i.e., bodyworn camera footage) which shows that Solis's pants were baggy and hanging halfway down his

---

he never saw Solis's hands (he only saw his back) and watched the chase through a covered blind, and Ms. Biggs admitted that she told investigators on the day of the incident that she did not get a good look at Solis. Ms. Biggs also testified that, from her distance across the street, she clearly heard Officer Bell yelling for Solis to drop the gun. Further, Defendants presented eyewitness Trinidad Rueta, who lived on the Hillmer cul de sac and watched the chase as Solis ran towards Rueta, that Solis held a black gun in his right hand as he ran down the cul de sac towards the 614 Hillmer residence.

buttocks.  Exs. 122 & 123.  More importantly, it is contradicted by eyewitness Rueta, who saw a gun in Solis's hand as he was running on the cul-de-sac to the 614 Hillmer residence.

Immediately after the incident, Officer Bell and others began rendering first aid to Solis.

## III.  STANDARD FOR JUDGMENT AS A MATTER OF LAW

A motion for judgment as a matter of law "may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may grant judgment as a matter of law against that party as to a claim or issue. *Id*., (a)(1)(A) and (B). While the Court may not weigh witness credibility, it may "assume the veracity 'of any admissions made and stipulations entered into by the party opposing the Rule 50 motion . . . as well as any evidence derived from disinterested witnesses that has not been contradicted or impeached.'" *Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003) (citation omitted, ellipses in original). The question is whether there is evidence upon which the jury could properly find for the nonmoving party. *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.*, 537 F.3d 1184, 1191 (10th Cir. 2008).

## IV.  ARGUMENT

### A.  Officer Bell Is Entitled to Judgment As A Matter of Law In His Favor on Plaintiff's Fourth Amendment Claim.

#### 1.  Plaintiff Has Not Proved that the Use of Force was Unreasonable.

Judgment as a matter of law should be granted in favor of Officer Bell as to the Fourth Amendment claim because Plaintiff has proffered no evidence from which a reasonable jury could conclude that the use of force was unreasonable.

A claim of excessive force against a police officer is considered a seizure that is analyzed under the objective reasonableness standard of the Fourth Amendment.

4

*Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts analyze reasonableness from the perspective of a reasonable officer on the scene, and under a totality-of-circumstances analysis with the facts and circumstances that existed at the time. *Id.* at 396-397. "Graham identified several factors to consider when evaluating the strength of the government's interest in the force used: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Williams v. City of Sparks,* 112 F.4th 635, 643 (9th Cir. 2024). "The most important Graham factor is whether the suspect posed an immediate threat to anyone's safety." *Id.* (*quoting Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019); *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). The Ninth Circuit has repeatedly emphasized that, as a matter of common sense, an armed criminal suspect represents the paradigm threat to officer safety. *See, Smith v. City of Hemet,* 394 F.3d 689, 704 (9th Cir. 2005) ("[W]here a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force.")

Three key principles must be kept in mind when these competing factors are weighed. First, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of 20/20 vision of hindsight. *Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (quoting *Graham*, 490 U.S. at 396); *Williams,* 112 F.4th at 643. Second, a court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham,* 490 U.S. at 396-97 (internal quotations omitted)); *Williams*, 112 4th at 643. Third, "officers need not employ the least intrusive means available, so long as they act within a range of reasonable conduct." *Id.*

1    "[T]he critical inquiry is what [the officer] perceived." *Wilkinson v. Torres*,

2    610 F.3d 546, 551 (9th Cir. 2010). The officer's perceptions - and the reasonable

3    interpretations, inferences, and actions based on those perceptions - must be viewed

4    from the perspective of a reasonable officer on the scene and not with the luxury of

5    "20/20 vision of hindsight." *Graham*, 490 U.S. at 396; s*ee also Glenn v.*

6    *Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). The Supreme Court has

7    made it clear that "[j]udges should be cautious about second-guessing a police

8    officer's assessment, made on the scene, of the danger presented by a particular

9    situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).

10   Here, the evidence presented is that Officer Bell's use of force was

11   reasonable given the totality of the circumstances. When Officer Bell fired at Solis,

12   he posed an imminent threat of death or serious bodily injury to Officer Bell and

13   others.  Solis was a felon, wanted for violent and serious felonies, and suspected of

14   illegally possessing a firearm.  It is undisputed that Solis had a gun as he ran

15   through two neighborhoods, three residences, and crashed into and broke through

16   various private residences and property.  Despite Officer Bell's repeated and very

17   loud commands (heard by multiple residents and even partly captured on multiple

18   videos) to drop the weapon and warnings that Bell would shoot, Solis never

19   discarded the gun.  Instead, he entered the backyard of a private residence, took

20   partial concealment behind the privacy slat fence, and laid in wait for Officer Bell

21   with the gun.  As Officer Bell fired the first volley (which were aimed in a

22   downward direction and did not fire into the residence, as even expert Clark

23   conceded), Solis, who was still armed with the gun, ran towards the other side of

24   the backyard towards the other backyard entrance with the white vinyl fence and

25   next to a door that led to the inside of the dwelling.  Solis, apparently undeterred

26   even after five shots had been discharged, turned to Officer Bell with arms

27   swinging with the gun. Officer Bell, in fear that Solis would take a hostage or shoot

28   his approaching partners, fired three more shots. Solis then fell out of view, and

Officer Bell did not fire any more shots, seemingly because the threat, at that point, had been disabled.  More than 12 seconds passed between Officer Bell's last shot and the first of Deputy Waltermire's 11 rounds in the third volley. (Testimony of Ward; Ex. 101.)  Even as Deputy Waltermire and Sergeant Paez approached the white vinyl gate, just before those 12.5 seconds, Officer Bell yelled for his partners to "Stop" before Waltermire fired his volley.

An officer's use of deadly force is constitutional if the suspect threatens the officer or another person with a weapon or the officer otherwise has probable cause to believe the suspect poses a significant threat of injury or death to the officer or someone else.  *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985); *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1234 (9th Cir. 2013). Here, Officer Bell had ample probable cause that Solis posed a significant threat of injury or death – to Officer Bell, and to others.  Solis actively evaded arrest, driving the wrong way on Taschner Street, accelerating into a carport and brick wall, driving into someone's backyard, running through a private residence's side yard or patio, and breaking through their white lattice fence.  Solis then continued running into backyard of yet another private residence, never surrendering and never discarding his weapon, despite Officer Bell's clear, loud, and repeated commands.

Solis contends that he never pointed his gun at Officer Bell.  But, importantly, the Fourth Amendment does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.

Officers need not be absolutely sure, however, of the nature of the threat
or the suspect's intent to cause them harm - the Constitution does not
require that certitude precede the act of self protection.

*Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996); *see also Wilkinson*, 610 F.3d at 553 (quoting *Elliott*).  "To be sure, the Fourth Amendment does not necessarily 'require[ ] officers to delay their fire until a suspect turns his weapon on

them,' and '[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.'" *Peck v. Montoya*, 51 F.4th 877, 888 (9th Cir. 2022), quoting *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).

> It is reasonable for police to move quickly if delay "would gravely endanger their lives or the lives of others." This is true even when, judged with the benefit of hindsight, the officers may have made "some mistakes."

*City and County of San Francisco, Calif.*, 575 U.S. 600, 612 (2015) (internal citations omitted).

As for any argument that the number of rounds fired by Officer Bell was excessive, the Supreme Court and Ninth Circuit have rejected such contentions:

> [I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended. . . .

*Plumhoff v. Rickard,* 572 U.S. 765, 776 (2014); *see also, Williams,* 112 F.4th at 645 (quoting *Plumhoff*). "In other words, 'if lethal force is justified, officers are taught to keep shooting until the threat is over.'" *Id.* (*quoting Plumhoff,* 572 U.S. at 777). Even after he was initially shot at, Solis did not surrender or discard his gun and, instead, headed towards the residence door still armed with the weapon. Officer Bell reasonably fired the second round until he perceived that the threat had ended.

### 2.    Qualified Immunity Bars Plaintiff's Section 1983 Claim.

Judgment should be granted in Officer Bell's favor because the evidence and case law dictate that the claim is barred by the doctrine of qualified immunity.

Under the doctrine of qualified immunity, police officers are not liable under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards,* 566

U.S. 658, 664 (2012)); *Hopson v. Alexander,* 71 F.4th 692, 691 (9th Cir. 2023). Courts have the discretion to decide which prong of this analysis to address first under the circumstances of a particular case. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). A decision on either prong in the defendant's favor establishes qualified immunity, even without consideration of the other prong. *See Reichle,* 566 U.S. at 663; *Shafer v. County of Santa Barbara, 868* F.3d 1110, 1115 (9th Cir. 2017), citing *Pearson,* 555 U.S. at 236; *Orn v. City of Tacoma,* 949 F.3d 1167, 1174 (9th Cir. 2020) ("We have the discretion to skip the first step in certain circumstance, as when the officer is plainly entitled to prevail at the second step.").

"[Q]ualified immunity shields an officer from liability even if his or her action resulted from 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact[.]'" *Lal v. State of California,* 746 F.3d 1112, 1116 (9th Cir. 2014) (quoting *Mattos v. Agarano*, 661 F.3d 443, 440 (9th Cir. 2011) (en banc)). This is to grant officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011). Its purpose is to ensure that peace officers, in particular, will not always err on the side of caution for fear of being held liable. *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Davis v. Scherer,* 468 U.S. 183, 196 (1984); *see also, Lal,* 746 F.3d at 1116. Thus, "[w]hen properly applied, [the doctrine of qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd,* 563 U.S. at 743. *See also, Malley v. Briggs,* 475 U. S. 335, 341 (1986); *Hopson,* 71 F.4th at 697.  Indeed, even if an officer's actions fall within the "hazy border between excessive and reasonable force," the officer is entitled to qualified immunity.  *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam).

The burden of showing that the constitutional right at issue was clearly established is upon the plaintiff. *Alston v. Read,* 663 F.3d 1094 (9th Cir. 2011); *Smith v. Agdeppa,* 81 F.4th 994, 1004 fn. 4 (9th Cir. 2023) ["*Agdeppa*"]. Defendants bear no such analogous burden and are neither required to find factually

on-point cases that clearly establish the lawfulness of an officer's actions nor bring forward precedent that shows the unlawfulness of their conduct was not clearly established. *Hopson,* 71 F.4th at 708.

For a constitutional right to have been "clearly established", then-existing law must have placed the constitutionality of the officer's conduct "beyond debate," such that every reasonable official would have understood that what he is doing is unlawful. *Wesby,* 583 U.S. at 63; *Hopson,* 71 F.4th at 697 (quoting same). "[A] rule is only clearly established if it has been settled by controlling authority or a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson,* 71 F.4th at 697 (*quoting Wesby,* 583 U.S. at 63-64) (internal quotation marks omitted).

The Supreme Court has "stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context." *Wesby,* 583 U.S. at 64 (*quoting Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "The dispositive question is whether the violative nature of particular conduct is clearly established." *Mullenix,* 577 U.S. at 13 (original emphasis). The inquiry must be undertaken in light of the specific context of the case, and not as a broad general proposition. *Id.; Brosseau,* 543 U.S. at 198. "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix,* 577 U.S. at 13 (quoting *Saucier v. Katz,* 533 U.S. 194, 205 (2001)). Thus, "Plaintiffs asserting excessive force claims must … point to an existing rule that 'squarely governs' the facts at issue and that moves the officer's actions outside the 'hazy border between excessive and acceptable force.'" *Hopson,* 71 F.4th at 698 (quoting *Brosseau,* 543 U.S. at 201 and citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)).

Although defendants have no burden to find factually on-point cases, the case

1    law is settled that an officer faced with an armed and advancing suspect with no

2    reasonable means of retreat does not violate clearly established law by using deadly

3    force in self-defense and defense of others. One example is *M.J.L.H. v. City of*

4    *Pasadena*, No. CV 18-3249-JFW(SSX), 2019 WL 2249545 (C.D. Cal. May 24,

5    2019). In *M.J.L.H*, the officers knew that they would be arresting the decedent,

6    who was wanted for violent crimes and was believed to be armed and dangerous.

7    After the officers identified decedent walking in a park, they waited until he

8    returned to his parked car to approach him with lights and sirens activated,

9    positioned their vehicles to prevent his escape, identified themselves as "police,"

10    and yelled at decedent to "put your hands up" and "let me see your hands."

11    Decedent refused to comply with the officers' commands. In addition, decedent

12    immediately attempted to escape in his vehicle. Several of the officers also saw

13    decedent reaching into the middle console to obtain what they believed was a gun.

14    The officers fired, and, after the shooting, no gun was in fact found inside the

15    vehicle. Despite this, the District Court held that the officers did not violate the

16    Fourth Amendment and were entitled to qualified immunity.

17    **B.    Officer Bell Is Entitled to Judgment as a Matter of Law in His**
      **Favor on Plaintiff's State Law Claims.**
18

19    **1.    Plaintiff Has Not Proved That Officer Bell's Use of Force**
      **Was Unreasonable; Therefore, Bell is Entitled to Judgment**
      **On All Three State Law Claims.**
20

21    Because there is no evidence that Officer Bell's use of force was

22    unreasonable, Officer Bell is entitled to judgment as to the state law claims.

23    Similar to the federal excessive force claim, a state battery cause of action

24    requires proof of unreasonable force. *Brown v. Ransweiler*, 171 Cal. App. 4th 516,

25    527 (2011) ("*Ransweiler*"). The same *Graham* factors apply. *Hernandez v. City of*

26    *Pomona*, 46 Cal. 4th 501, 514 (2009). Police are not treated as ordinary battery

27    defendants, as they are charged with protecting public peace and order and use

28    force as part of their duties. *Id*. Police are therefore "entitled to the even greater use

of force than might be in the same circumstances required for self-defense." *Id*. An officer's use of force is reasonable if he "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id*. at 528 (quoting *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1103 (2004)). The reasonable analysis is "highly deferential to the police officer's need to protect himself and others." *Munoz*, 120 Cal.App.4th at 1103. "[T]here is no requirement that he or she choose the 'most reasonable' action or the conduct that is least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability…'" *Koussaya v. City of Stockton*, 54 Cal.App. th 909, 936 (2020) (quoting *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013)).

Similarly on the negligence claim, officers have a duty to use deadly force in a reasonable manner under California law. *Munoz v. Olin*, 24 Cal.3d 629, 634 (1979). But an officer will not be liable for negligence as long as his conduct falls "within the range of conduct that is reasonable under the circumstances," and officers are not required to choose "the most reasonable" action. *Hayes*, 57 Cal. 4th at 632 (quoting *Ransweiler*, 171 Cal. App. 4th at 537-538). The reasonableness of the officers' pre-shooting conduct should not be considered in isolation where the pre-shooting conduct did not cause the decedent any injury resulting from the shooting. *Id*. Rather, pre-shooting conduct should be considered, as part of the totality of circumstances, in relation to the question of whether the officers' ultimate use of deadly force was reasonable. *Id*.

Finally, if there is no violation of Solis's constitutional rights as discussed above in Section IV.A.1, then there can be no Bane Act violation.

**2.    The Bane Act Claim Further Fails for the Additional Reason That Plaintiff Proffered No Evidence that Officer Bell *Specifically Intended* to Violate Plaintiff's Right to Be Free From Unreasonable Seizure**

Plaintiff has failed to prove that Defendant Bell *specifically intended* to

violate Plaintiff's right to be free from his right to be free from unreasonable seizure, which is an essential element of his Bane Act claim. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (quoting *Cornell v. City & County of San Franciso*, 17 Cal.App.5th 766, 801-02 (2017)). A mere intention to use force that a jury may ultimately find unreasonable is insufficient. *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). Rather, a plaintiff must prove that the defendant "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id.* A reckless disregard of an individual's constitutional rights can be evidence of a specific intent to violate a constitutional right. *Reese v. County of Sacramento*, 888 F.3d at 1045. None of the evidence demonstrates a specific intent to violate Solis's rights or a reckless disregard of his rights. Rather, the evidence demonstrates that Solis escalated the situation when he failed to obey Officer Bell's commands to stop and drop his weapon, failed to heed Officer Bell's warnings that he would shoot, and instead turned toward Officer Bell with the gun in his hand thereby leaving Officer Bell with no choice but to use deadly force to stop the threat.

### a. plaintiffs' state law claims are barred by state law immunities.

1. **Self-Defense and Defense of Others** is a complete bar to all three state law claims, as the evidence shows that Officer Bell reasonably believed Solis would harm him, residents of the 614 N. Hillmer residence, and/or his partners, and Officer Bell used only the amount of force necessary to defend himself, and to defend others. J.J. v. M.F., 223 Cal.App.4th 968, 976 (2014).

2. **Government Code section 820.2** provides immunity to Officer Bell for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused. The discretionary immunity has been found to apply to many areas of police work, including the decision to pursue a fleeing vehicle, *Hernandez*, 46 Cal.

4th at 519 & fn. 13 (noting that, while long line of Court of Appeal decisions have
held that negligence liability may not be based on officer's decision to engage in
vehicle pursuit, the California Supreme Court has never ruled on the question);
*Bratt v. City and County of San Francisco*, 50 Cal. App.3 d 550, 553 (1975); (2) the
decision to investigate or not investigate a vehicle accident, *McCarthy v. Frost*, 33
Cal. App. 3d 872, 875 (1973); and, (3) the failure to make an arrest or to take some
protective action less drastic than arrest, *Michenfelder v. City of Torrance*, 28 Cal.
App. 3d 202, 206 (1972).

The immunity applies where the act in question is "discretionary", and not
"ministerial." A decision is ministerial where it amounted "only to an obedience to
orders, or the performance of a duty in which the officer is left no choice of his
own," and discretionary where it requires "personal deliberation, decision and
judgment." *See, Conway v. County of Toulumne*, 231 Cal. App. 4th 1005, 1018
(2014); *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261 (1969). The essential
requirement of section 820.2 is a causal connection between the exercise of
discretion and the injury. *Id.*

Thus, in *Conway*, the decision to deploy the SWAT team, as well as the
SWAT team's tactical decision to use tear gas in effectuating the arrest, were held
to fall under the discretionary immunity of Government Code section 820.2. 231
Cal.App.4th at 1019. In so holding, *Conway* recognized that "each decision must be
examined to determine whether it constitutes a discretionary or mistrial decision."
*Id*. There, "the decision to use tear gas resulted from choices and judgments made
in response to changing circumstances; it was not made in blind obedience to
orders."

Similarly, here, Officer Bell's decision to make contact with Solis in order to
apprehend him, to pursue him on foot, and then to use deadly force to defend
himself and others, were discretionary decisions based on the judgment of Officer
Bell in response to, and based on, rapidly changing circumstances.

**3.** **Government Code section 820.4** provides immunity to an employee for his act or omission, exercising due care, in the execution or enforcement of any law. "In actions involving claims under state law, an officer's use of deadly force is privileged as a matter of law if he reasonably fears for his safety or that of others in the area." *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1074 (S.D. Cal. 1994). Both experts Meyer and Clark agree that Officer Bell was within his legal rights to apprehend and arrest Solis. Officer Bell exercised due care in approaching Solis for the purpose of apprehending him, and exercised justified lethal force in defense of his safety and the safety of others.

**4.** **Penal Code sections 835, 835a, 196(b) and Government Code section 845.8(b)(3).** A peace officer is privileged to use reasonable force to effect an arrest, prevent escape, or overcome resistance of a person who the officer has reasonable cause to believe has committed a public offense. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of resistance or threated resistance of the suspect, nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of such reasonable force. Cal. Pen. Code § 835a, subd. (d).

A peace officer commits a justifiable homicide when the use of deadly force complies with Penal Code section 835a. *Id.* § 196(b); *Ransweiler*, 171 Cal. App. 4th at 533; *Gilmore v. Superior Court*, 230 Cal. App. 3d 416 (a justifiable homicide is a privileged act, which precludes all tort liability arising from the act). The test for whether a homicide was justifiable is whether the circumstances reasonably created a fear of death or serious bodily harm to the officer or to another. *Brown*, 171 Cal. App. 4th at 533; *Martinez*, 47 Cal. App. 4th at 349.

**5.** **Because the State Law Claims Against Officer Bell are Barred, the Claims Against the State of California Are Also Barred.** All claims against the State are made based upon the vicarious liability of Officer Bell under Government Code section 815.2(a). However, because Officer Bell is not liable for the reasons

1    discussed above, there can be no liability against the State. Cal. Gov. Code §

2    815.2(b); *Koussaya,* 54 Cal. App. 5th at 946-947. Accordingly, judgment as matter

3    of law should be granted in favor of the State against all of Plaintiffs' claims.

4    **V.    CONCLUSION**

5        For reasons stated herein, judgment as a matter of law should be granted in

6    favor of defendants.

7

8    Dated:  February 26, 2025                         Respectfully submitted,

9                                                      ROB BONTA
                                                       Attorney General of California
                                                       DONNA M. DEAN
10                                                     Supervising Deputy Attorney General
                                                       DAVID KLEHM
11                                                     Deputy Attorney General

12                                                     */s/ Tammy Kim*

13                                                     TAMMY KIM
                                                       Deputy Attorney General
14                                                     *Attorneys for Defendants*
                                                       *State of California, acting by and*
15                                                     *through the California Highway*
                                                       *Patrol (erroneously sued as "State of*
16                                                     *California") and Michael Bell*

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendants State of California, acting by and through the California Highway Patrol (erroneously sued as "State of California") and Michael Bell, certifies that this brief contains 5,495 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 26, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General

/s/ Tammy Kim

TAMMY KIM
Deputy Attorney General
*Attorneys for Defendants*
*State of California, acting by and*
*through the California Highway*
*Patrol (erroneously sued as "State of*
*California") and Michael Bell*